UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUSTAM MUSTAFIN, Individually and On Behalf of All Other Similarly Situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>GREENSKY, INC., DAVID ZALIK, ROBERT PARTLOW, JOEL BABBIT, GERALD BENJAMIN, JOHN FLYNN, GREGG FREISHTAT, NIGEL MORRIS, ROBERT SHEFT, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, SUNTRUST ROBINSON HUMPHREY, INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INC., CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, RAYMOND JAMES & ASSOCIATES, INC., GUGGENHEIM SECURITIES, LLC, SANDLER O'NEILL & PARTNERS, L.P., AND FIFTH THIRD SECURITIES, INC.,<br><br>    Defendants. | Case No.: _____<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Rustam Mustafin alleges the following based on the investigation conducted by his counsel, which included, among other things, a review of: United States Securities and Exchange Commission ("SEC") filings by GreenSky, Inc. ("GreenSky" or the "Company"); press releases and other public statements issued by GreenSky; media reports about GreenSky; and other public documents readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

14. This is a federal securities class action on behalf of individuals who purchased GreenSky Class A common stock pursuant or traceable to the Company's false and misleading registration statement and prospectus ("Offering Documents"), who were damaged thereby, and who seek to pursue remedies under the Securities Act of 1933 ("Securities Act").

**JURISDICTION AND VENUE**

15. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

16. The claims asserted arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), and 77o).

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and Section 27 of the Securities Exchange Act (15 U.S.C. §78aa(c)). GreenSky is headquartered in this District, and a significant portion of its actions and the subsequent damages took place in this District.

**PARTIES**

18. Plaintiff Rustam Mustafin purchased 1,032 shares of GreenSky Class A common stock on the day of GreenSky's initial public offering ("IPO" or "Offering") at a price of $23.00 per share, as shown in the attached certification.

19. Defendant GreenSky, Inc. is a financial technology company incorporated in Delaware.

20. Defendant David Zalik was, at all relevant times, the Chief Executive Officer of the Company and Chairman of the Board of Directors, and signed or authorized the signing of the Offering Documents.

8. Defendant Robert Partlow was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Offering Documents.

9. Defendant Joel Babbit was a Director of the Company and signed or authorized the signing of the Offering Documents.

10. Defendant Gerald Benjamin was a Director of the Company and signed or authorized the signing of the Offering Documents.

11. Defendant John Flynn was a Director of the Company and signed or authorized the signing of the Offering Documents.

12. Defendant Gregg Freishtat was a Director of the Company and signed or authorized the signing of the Offering Documents.

13. Defendant Nigel Morris was a Director of the Company and signed or authorized the signing of the Offering Documents.

14. Defendant Robert Sheft was a Director of the Company and signed or authorized the signing of the Offering Documents.

15. Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") was an underwriter for the Company's IPO. In the Offering, Goldman Sachs agreed to purchase 10,108,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

16.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") was an underwriter for the Company's IPO. In the Offering, J.P. Morgan agreed to purchase 10,108,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

17.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter for the Company's IPO. In the Offering, Morgan Stanley agreed to purchase 6,498,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

18.     Defendant Citigroup Global Markets Inc. ("Citigroup") was an underwriter for the Company's IPO. In the Offering, Citigroup agreed to purchase 2,736,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

19.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") was an underwriter for the Company's IPO. In the Offering, Credit Suisse agreed to purchase 2,736,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

20.     Defendant Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") was an underwriter for the Company's IPO. In the Offering, Merrill Lynch agreed to purchase 2,736,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

21.     Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") was an underwriter for the Company's IPO. In the Offering, SunTrust agreed to purchase 1,026,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

22.     Defendant Raymond James & Associates, Inc. ("Raymond James") was an underwriter for the Company's IPO. In the Offering, Raymond James agreed to purchase 684,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

23. Defendant Sandler O'Neill & Partners, L.P. ("Sandler O'Neill") was an underwriter for the Company's IPO. In the Offering, Sandler O'Neill agreed to purchase 684,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

24. Defendant Fifth Third Securities, Inc. ("Fifth Third") was an underwriter for the Company's IPO. In the Offering, Fifth Third agreed to purchase 342,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

25. Defendant Guggenheim Securities, LLC ("Guggenheim") was an underwriter for the Company's IPO. In the Offering, Guggenheim agreed to purchase 342,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

26. Defendants Zalik, Partlow, Babbit, Benjamin, Flynn, Freishtat, Morris, and Sheft are hereinafter collectively referred to as the "Individual Defendants."

27. Defendants Goldman Sachs, J.P. Morgan, Morgan Stanley, Citigroup, Credit Suisse, Merrill Lynch, SunTrust, Raymond James, Sandler O'Neill, Fifth Third, and Guggenheim are hereinafter collectively referred to as the "Underwriter Defendants."

28. The Individual Defendants and Underwriter Defendants together are hereinafter collectively referred to as "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    Background**

29. GreenSky is a financial technology company in Atlanta, Georgia. GreenSky operates an online platform that enables creditors to process loan applications at the point of sale. More than 10,000 businesses are active users of GreenSky's platform. Consumers who seek to make a purchase from such a business can apply for on-the-spot financing via the GreenSky mobile app.

30.     GreenSky has two principal sources of revenue. First, GreenSky receives upfront "transaction fees" when a consumer secures a loan through its platform and pays for the purchase. Second, GreenSky receives fees from banks on a recurring basis over the lives of the loans it facilitates. Transaction fees accounted for 87% of GreenSky's revenue in 2017. Transaction fees vary in accordance with the agreement between GreenSky and the relevant merchant.

31.     GreenSky has traditionally catered to home improvement and solar energy businesses. GreenSky charged its solar panel merchants substantially higher transaction fees relative to other merchants. GreenSky typically charged its solar panel merchants a 14% transaction fee, while charging other merchants a 7% transaction fee on average.

32.     GreenSky has begun to expand its reach in the elective healthcare market, in which it charges lower-than-average transaction fees. GreenSky has simultaneously begun phasing out of its relationships with solar panel merchants.

33.     In recent years prior to 2018, GreenSky derived approximately 20% of its transaction-fee revenue from solar panel merchants. Yet in 2018, GreenSky derived just 4% of its transaction-fee revenue from its solar panel business. GreenSky's transaction-fee revenue sharply declined when it moved away from the solar panel market and, absent a reversal of this strategy, is poised to remain low.

34.     GreenSky filed a registration statement on April 27, 2018 and a prospectus on May 25, 2018 (together, the "Offering Documents") in connection with its impending IPO. GreenSky's IPO closed on May 29, 2018. The Company sold 43.7 million shares of Class A common stock at $23.00 per share in its IPO, for gross proceeds of over $1 billion.

**B.     False and Misleading Statements**

35.     The Offering Documents failed to disclose the substantial change in the composition of GreenSky's merchant business mix and the resulting diminution in transaction-fee revenue.

36.     The Offering Documents characterize GreenSky's transaction-fee revenue as follows:

> We have a strong recurring revenue model built upon repeat and growing usage by merchants. We derive most of our revenue and profitability from upfront transaction fees that merchants pay us every time they facilitate a transaction using our platform. Thus, our profitability is strongly correlated with merchant transaction volume. The transaction fee rate depends on the terms of financing selected by a consumer.
>
> * * *
>
> Transaction fees. We earn a specified transaction fee in connection with each purchase made by a consumer based on a loan's terms and promotional features. Transaction fees are billed to, and collected directly from, the merchant and are considered to be earned at the time of the merchant's transaction with the consumer. We also may earn a specified interchange fee in connection with purchases where payments are processed through a credit card payment network. Transaction fees constitute the majority of our total revenues, accounting for approximately 83% of our total revenues for the three months ended March 31, 2018.

37.     The above-referenced statement is false and misleading because it characterizes GreenSky's fee revenue model as "strong" and "recurring" even as the Company was winding down its solar panel business and ramping up its activity in the elective healthcare market. It also deceptively equates profitability with "merchant transaction volume," without disclosing the effect on profitability of the significant differences in the transaction fees GreenSky charged to different classes of merchants. Finally, it suggests that the transaction fee rate "depends" on financing choices made by the consumer, again obscuring the primacy of the merchant mix as a driver of the Company's transaction-fee revenue.

38.     The Offering Documents also attempt to highlight GreenSky's purported growth over the relevant time period:

6

> We have achieved significant growth in active merchants, transaction volume, total revenue, net income and Adjusted EBITDA. Our low-cost go-to-market strategy, coupled with our recurring revenue model, has helped us generate strong margins. Transaction volume (which we define as the dollar value of loans facilitated on our platform during a given period) was $3.8 billion in 2017, representing an increase of 31% from $2.9 billion in 2016. Further, transaction volume was $1.0 billion in the three months ended March 31, 2018, representing an increase of 47% from $0.7 billion in the three months ended March 31, 2017. Active merchants (which we define as home improvement merchants and healthcare providers that have submitted at least one consumer application during the 12 months ended at the date of measurement) totaled 12,231 as of March 31, 2018, representing an increase of 52% from 8,048 as of March 31, 2017. Our total revenue grew 23% from $264 million in 2016 to $326 million in 2017, net income grew 12% from $124 million in 2016 to $139 million in 2017, and Adjusted EBITDA grew 21% from $131 million in 2016 to $159 million in 2017. For the period ended March 31, 2018, total revenue was $85 million, net income was $19 million and Adjusted EBITDA was $27 million.

39. The above-referenced statement is false and misleading because it paints a rosy picture of the Company's growth and financial performance while neglecting to mention the contemporaneous deterioration in GreenSky's transaction-fee revenue. It further omits the specific deleterious effects of the Company's changing merchant mix on EBITDA.

40. The Offering Documents indicate that GreenSky "actively reduced" solar panel transaction volume while expanding into the elective healthcare sector.

41. The Offering Documents additionally assert that the elective healthcare sector represents a growth opportunity:

> In 2016, we began expanding into elective healthcare, which, like the home improvement market, is a large, fragmented market featuring creditworthy consumers who tend to make large-ticket purchases. We believe the elective healthcare market rivals in size the home improvement market in terms of annual spending volume, based on the number and cost of annual procedures performed. Elective healthcare providers include doctors, dentists, outpatient surgery centers and clinics providing orthodontics, cosmetic and aesthetic dentistry, vision correction, bariatric surgery, cosmetic surgery, hair replacement, reproductive medicine, veterinary medicine and hearing aid devices. We believe that because of population aging, innovations in medical technology and ongoing healthcare cost inflation, we are well-positioned to increase volume in the growing elective healthcare industry vertical.

7

42. The above-referenced statement is false and misleading because it depicts the move toward healthcare as a means of increasing growth while failing to disclose the markedly lower transaction fees GreenSky charges to healthcare companies.

43. The Offering Documents were negligently prepared and contain untrue statements of material fact as well as omissions of facts necessary to render the statements made not misleading.

**C.     The Truth Emerges**

44. On August 7, 2018, GreenSky issued a release announcing its financial results for the second quarter of 2018.

45. The release indicated that the Company's transaction-fee rate was approximately 53 basis points below the rate achieved in the second quarter of 2017.

46. In an earnings call, Defendant Zalik acknowledged that this rapid reduction was attributable to the transition away from solar panel merchants and toward elective healthcare companies.

47. On November 6, 2018, GreenSky issued a release announcing its financial results for the third quarter of 2018.

48. The release indicated that the Company's transaction-fee rate was 35 basis points below the rate achieved in the third quarter of 2017.

49. In an earnings call, Defendant Zalik reiterated that the reduction in transaction fees was "entirely driven by our solar mix going from a high of almost 20% of our business in '17 to 4% of our business."

50. Further, with only one quarter left in the year, GreenSky substantially reduced its 2018 outlook for Adjusted EBITDA from growth of 20-25% to 4-10%.

51. Though the IPO took place after the strategic decision to move away from solar and focus on healthcare, the financial effects of that shift were not disclosed in the Offering Documents.

52. On November 6, 2018, GreenSky's stock price plummeted to $9.28 per share, sharply down from the IPO price of $23.00 per share and post-offering high of $26.77 per share.

53. The Board of Directors subsequently approved the repurchase of $150 million of GreenSky common stock.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

54. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all purchasers of GreenSky Class A common stock issued pursuant to and/or traceable to the Company's Offering Documents. Excluded from the Class are Defendants; the officers and directors of the Company; members of their immediate families; and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55. The members of the Class are so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to Plaintiff at this time but it is believed to be in the thousands. Members of the Class may be identified by records maintained by GreenSky or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

56. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' respective wrongful conduct in violation of the federal laws complained of herein.

57. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the federal securities laws were violated by Defendants' respective acts as alleged herein;

    b. whether the Offering Documents issued by Defendants to the investing public omitted and/or misrepresented material facts about the Company and its business; and

    c. whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

58. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violations of Section 11 of the Securities Act

### Against all Defendants

59. Plaintiff repeats and realleges each of the allegations contained above as if fully set forth herein.

60. This count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

61. GreenSky is the registrant for the IPO.

62. As the issuer of the shares, GreenSky is strictly liable for the contents of the Offering Documents.

63. The Individual Defendants are responsible for the contents of the Offering Documents based on their status as officers and directors of the Company and because they signed or authorized the signing of the Offering Documents.

64. The Underwriter Defendants are responsible for the contents of the Offering Documents based on their status as underwriters.

65. Defendants owed to the purchasers of the shares issued pursuant to and/or traceable to the Offering Documents the duty to make a reasonable and diligent investigation of the statements contained in the Offering Documents.

66. Defendants failed to make a reasonable investigation and lacked reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of material fact and were not misleading.

67. The Offering Documents were false and misleading, contained untrue statements of material fact, omitted to state other facts needed to render the statements made not misleading, and omitted to state material facts required to be stated therein.

68. Plaintiff and the Class obtained GreenSky shares pursuant and/or traceable to the Offering Documents.

69. When Plaintiff and the Class obtained their shares of GreenSky, they did so without knowledge of the misstatements and omissions alleged herein.

70. The value of GreenSky shares has declined substantially as a result of Defendants' misconduct.

71. Thus, Plaintiff and the Class have sustained damages.

72. Defendants are liable to Plaintiff and the Class for damages suffered.

73. This action is brought within one year after discovery of the untrue statements and omissions in and from the Offering Documents that should have been made and/or corrected.

## COUNT II

### For Violations of Section 12(a)(2) of the Securities Act

### Against GreenSky and the Underwriter Defendants

74. Plaintiff repeats and realleges each of the allegations contained above as if fully set forth herein.

75. This claim is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of the Class, against GreenSky and the Underwriter Defendants.

76. Defendants promoted and sold GreenSky Class A common stock to Plaintiff and other members of the Class through the Prospectus.

77. Defendants owed Plaintiff and the other members of the Class who purchased GreenSky common stock pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that the statements were true and that no material facts were omitted from the Prospectus.

78. The Prospectus contained untrue statements of material fact and/or failed to disclose material facts. Plaintiff did not know and could not have known of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired GreenSky common stock.

79. If Defendants had exercised reasonable care in the preparation and dissemination of the Prospectus, they would have known of the misstatements and omissions contained therein as set forth above.

80. Accordingly, Defendants violated Section12(a)(2) of the Securities Act.

81. Plaintiffs suffered significant damages in connection with their purchases of GreenSky stock and as a result of Defendants' misconduct.

82. Defendants are liable to Plaintiff and the Class for damages suffered.

83. This action is brought within one year of the date of the alleged violation and within three years of the date the relevant securities were first offered to the public.

## COUNT III

### For Violations of Section 15 of the Securities Act

### Against the Individual Defendants

84. Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

85. This claim is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of the Class, against the Individual Defendants.

86. This claim is asserted against the Individual Defendants, each of whom was a control person of GreenSky during the relevant time period.

87. The Individual Defendants were control persons of GreenSky by virtue of, among other things, their positions as senior officers and directors of the Company. They were in positions

13

to control, and did control, the false and misleading statements and omissions contained in the Offering Documents.

88. None of the Individual Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were accurate and complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

89. This claim was brought within one year after the discovery of the untrue statements and omissions in the Offering Documents and within three years after GreenSky common stock was sold to the Class in connection with the Offering.

90. By reason of the misconduct alleged herein, for which GreenSky is primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as GreenSky pursuant to Section 15 of the Securities Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A. Declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff, certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and designating Plaintiff's Counsel as Lead Counsel.

B. Awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, together with interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D. Awarding Plaintiff and the Class such other relief as may be deemed appropriate

by the Court.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Date: November 27, 2018

Respectfully submitted,

*/ s / Michael. B. Eisenkraft*
Michael B. Eisenkraft (SB-6974)
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine St. │ 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax.: (212) 838-7745
meisenkraft@cohenmilstein.com

Steven J. Toll
S. Douglas Bunch
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W. │ Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
dbunch@cohenmilstein.com

*Attorneys for Plaintiff Rustam Mustafin*

15