UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUSTAM MUSTAFIN, *individually and on behalf of all others similarly situated,*<br><br>        Plaintiff,<br><br>    -v-<br><br>GREENSKY, INC., et al.,<br><br>        Defendants. | 18 Civ. 11071 (PAE) |
| BRADLEY YU, *individually and on behalf of all others similarly situated,*<br><br>        Plaintiff,<br><br>    -v-<br><br>GREENSKY, INC., et al,<br><br>        Defendants. | 19 Civ. 100 (PAE)<br><br><u>OPINION & ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

  In November 2018 and January 2019, the above two putative class actions were filed under the federal securities laws on behalf of purchasers of GreenSky, Inc. ("GreenSky"), securities between May 24, 2018, and November 12, 2018. Plaintiffs in each case claim that GreenSky and the remaining defendants[1] made false and misleading statements about, and/or

---

[1] Defendants are GreenSky; David Zalik, the company's Chief Executive Officer and Chairman of the Board; Robert Partlow, the company's Chief Financial Officer; Joel Babbit, Gerald Benjamin, John Flynn, Gregg Freishtat, Nigel Morris, and Robert Sheft, who were each directors of the company and signed or authorized the signing of certain offering documents; and Goldman Sachs & Co. LLC ("Goldman Sachs"), J.P. Morgan Securities LLC ("J.P. Morgan"), Morgan Stanley & Co. LLC ("Morgan Stanley"), Citigroup Global Markets Inc. ("Citigroup"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), Suntrust Robinson Humphrey, Inc. ("SunTrust"), Raymond James &

failed to disclose, a substantial change in the composition of GreenSky's merchant business mix that caused a foreseeable drop in GreenSky's profits. As a result, when plaintiffs and members of the putative class purchased GreenSky securities, they did so without knowledge of GreenSky's financial prospects. The value of GreenSky shares later declined substantially, thereby damaging plaintiffs and members of the putative class.

Pending before the Court are two sets of motions. One is to consolidate these actions. The other consists of a motion seeking appointment as lead plaintiff and appointment of their respective attorneys as lead counsel. Nine movants initially sought appointment as lead plaintiffs.[2] Only one continues to seek appointment as lead plaintiff: A coalition of institutional investors consisting of the Northeast Carpenters Annuity Fund, the El Paso Firemen & Policemen's Pension Fund, and the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge (collectively, the "Fund Group"). The Fund Group represents that it had the largest financial interest, $799,365, see Dkt. 42-5 to 42-7, and is adequate and typical to represent the putative class under Federal Rule of Civil Procedure 23. Every movant other than the Fund Group has since filed notices of withdrawal or of non-opposition to the Fund

---

Associates, Inc. ("Raymond James"), Sandler O'Neill & Partners, L.P. ("Sandler O'Neill"), Fifth Third Securities, Inc. ("Fifth Third"), and Guggenheim Securities, LLC ("Guggenheim"), which were each underwriters for GreenSky's IPO.

[2] The nine movants consist of five individuals, three pension funds, and one consolidated group of institutional investors. The five individuals are: (1) Mitchell DeVivo, Dkt. 30; (2) Luciano Felice, Dkt. 33; (3) Jason Han, Dkt. 36; (4) Leslie Winegarden, Dkt. 43; and (5) David Passerallo, Dkt. 48. The three pension funds are: (1) the San Antonio Fire & Police Pension Fund, Dkt. 46; (2) the Police Retirement System of St. Louis, Dkt. 47; and (3) the Inter-Local Pension Fund of the Graphic Communications Conference of the International Brotherhood of Teamsters ("Inter-Local"), Dkt. 56. Finally, the Fund Group consists of: the Northeast Carpenters Annuity Fund, the El Paso Firemen & Policemen's Pension Fund, and the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge.

Group's motion.[3] For the reasons that follow, the Court (1) consolidates these two actions; (2) appoints the Fund Group as lead plaintiff; and (3) appoints as co-lead counsel the Fund Group's attorneys, Cohen Milstein Sellers & Toll PLLC and Scott+Scott Attorneys at Law LLP.

I. **Background**[4]

GreenSky is a financial technology company incorporated in Delaware and headquartered in Atlanta, Georgia. Mustafin Compl. ¶¶ 19, 29. It operates an online platform that enables creditors to process loan applications at the point of sale. *Id.* ¶ 29. Several thousand businesses use GreenSky's platforms, and consumers who seek to purchase from such a business can apply for financing via the GreenSky mobile app at the time of purchase. *Id.* Its securities are listed on the Nasdaq Global Select Market under the ticker symbol "GSKY." Yu Compl. ¶ 18.

GreenSky has two sources of revenue. First, it receives transaction fees when a consumer secures a loan through its platform to finance a purchase. Mustafin Compl. ¶ 30. Second, it receives fees from banks on a recurring basis over the lives of the loans it facilitates. *Id.* Transaction fees, which vary in accordance with the agreement between GreenSky and the relevant merchant, accounted for 87% of GreenSky's revenue in 2017. *Id.*

GreenSky has traditionally catered to home improvement and solar energy vendors, and charges solar panel merchants substantially higher transaction fees (approximately a 14% fee) as compared with other vendors (approximately a 7% fee). *Id.* ¶ 31. In recent years, GreenSky has

---

[3] *See* Notice of Non-Opposition or Withdrawal of Motion by DeVivo, Dkt. 64; Felice, Dkt. 69; Han, Dkt. 71; Winegarden, Dkt. 67; the San Antonio Fire & Police Pension Fund, Dkt. 65; the Police Retirement System of St. Louis, Dkt. 68; Passerallo, Dkt. 63; and Inter-Local, Dkt. 70.

[4] The following facts are drawn from Rustam Mustafin's Complaint ("Mustafin Compl.") (18 Civ. 11071, Dkt. 1), Bradley Yu's Complaint ("Yu Compl.") (19 Civ. 100, Dkt. 1), and the parties' submissions on the lead-plaintiff motions, as cited herein. The Court takes these facts as true solely for the purpose of resolving these motions.

sought to expand into the elective healthcare market, in which it charges lower transaction fees, and move away from the solar energy market. *Id.* ¶ 32. Before 2018, GreenSky derived approximately 20% of its transaction-fee revenue from solar panel merchants, but in 2018, it derived 4% of its revenue from solar panel merchants. *Id.* ¶ 33. As a consequence, its transaction-fee revenue sharply declined. *Id.*

On April 27, 2018, GreenSky filed a registration statement, and on May 25, 2018, it filed a prospectus (together with the registration statement, the "Offering Documents") in connection with its impending initial public offering ("IPO"). *Id.* ¶ 34. On May 29, 2018, GreenSky's IPO closed. GreenSky sold 43.7 million shares of Class A common stock at $23.00 per share, for gross proceeds in excess of $1 billion. *Id.* GreenSky represented that its transaction-fee revenue model was "strong" and "recurring." *Id.* ¶ 36. These representations, plaintiffs' complaints allege, were false and misleading because GreenSky failed to disclose that it was shifting from the solar energy market to the elective healthcare industry and that the difference in transaction fees between the two industries would foreseeably cause negative effects on GreenSky's profits. *Id.* ¶ 35; Yu Compl. ¶ 9.

On August 7, 2018, GreenSky announced its financial results for the second quarter of 2018. The release indicated that the transaction-fee rate was 53 basis points below the rate achieved in the second quarter of 2017. Mustafin Compl. ¶ 45. GreenSky officials acknowledged that the rapid drop was caused by the transition from the solar energy market to the healthcare market. *Id.* ¶ 46. On November 6, 2018, GreenSky issued a release announcing its financial results for the third quarter of 2018 and disclosed that the transaction-fee rate was 35 basis points below the rate achieved in the same quarter in 2017. *Id.* ¶¶ 47–48. As a result, GreenSky's stock price fell from an IPO price of $23.00 per share to $9.28 per share. *Id.* ¶ 52.

4

On November 27, 2018, Mustafin filed a Complaint, *see* 18 Civ. 11071, Dkt. 1, and published a notice of this action on *BusinessWire*, *see* 18 Civ. 11071, Dkt. 42, Ex. 1, a "widely circulated business-oriented wire service," 15 U.S.C. § 78u–4(a)(3)(A)(i); *see also, e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 32 (S.D.N.Y. 2012) (noting that *BusinessWire* is "a widely-circulated, national, business-orientated news reporting wire service"). On January 4, 2019, Yu filed a Complaint. *See* 19 Civ. 100, Dkt. 1. The class period is defined as the period from May 24, 2018 to November 12, 2018. Dkt. 41 at 1. Plaintiffs allege that, throughout the relevant period, GreenSky and the remaining defendants made false and misleading statements and failed to disclose material, adverse facts about GreenSky's business, operations, and prospects. Mustafin Compl. ¶¶ 59–90; Yu Compl. ¶¶ 65–87. Plaintiffs both allege violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), *codified at* 15 U.S.C. §§ 77k, 77l(a)(2), and 77o. Mustafin Compl. ¶ 16; Yu Compl. ¶ 14.

## II. Consolidation

### A. Legal Standards

Federal Rule of Civil Procedure 42(a) provides that, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."

Rule 42(a) "empowers a trial judge to consolidate actions for trial when there are common questions of law or fact" and where consolidation will avoid needless costs or delay. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *see also Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). "Typically, considerations of judicial economy favor consolidation, but 'the benefits of efficiency can never be purchased at the cost of

fairness.'" *M & T Mortg. Corp. v. White*, No. 04 Civ. 4775 (WFK) (VVP), 2012 WL 715896, at *1 (E.D.N.Y. Feb. 14, 2012) (quoting *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993)), *report and recommendation adopted*, No. 04 Civ. 4775 (WFK) (VVP), 2012 WL 954651 (E.D.N.Y. Mar. 5, 2012). Before a Court orders consolidation, it must consider several factors and determine, *inter alia*, whether the gains in efficiency and economy are outweighed by the "risks of prejudice and possible confusion." *Johnson*, 899 F.2d at 1284 (citation and internal quotation marks omitted).

### B. Analysis

Consolidation is clearly merited here. Both complaints are suing GreenSky and related defendants under identical provisions of the Securities Act "on behalf of individuals" who purchased GreenSky Class A common stock "pursuant or traceable to [GreenSky's] false and misleading registration statement and prospectus, who were damaged thereby, and who seek to pursue remedies under the Securities Act." Mustafin Compl. ¶ 14; Yu Compl. ¶ 1. Both complaints center on the same alleged facts: GreenSky's, and related defendants', false and misleading statements regarding its transaction-fee model, and their failure to disclose the fact that GreenSky was shifting from the solar energy market to the elective healthcare market. The defendants in the two suits are also identical: They include, in addition to GreenSky, GreenSky executives David Zalik, GreenSky's CEO and Chairman of the Board; Robert Partlow, GreenSky's CFO; Joel Babbit, Gerald Benjamin, John Flynn, Gregg Freishtat, Nigel Morris, and Robert Sheft, all of whom were directors who signed or authorized the signing of Offering Documents; and several financial institutions that underwrote GreenSky's IPO. Mustafin Compl. ¶¶ 19–27; Yu Compl. ¶¶ 18–39.

Courts routinely consolidate securities class actions arising from the same allegedly actionable statements. *See, e.g., Simmons v. Spencer*, No. 13 Civ. 8216 (RWS), 2014 WL 1678987, at *2 (S.D.N.Y. Apr. 25, 2014); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008). All relevant factors support consolidation here. Accordingly, the Court consolidates these actions.

### III. Selecting the Lead Plaintiff: The PSLRA Requirements

Motions for appointment of lead plaintiff and approval of lead counsel in putative class actions brought under the securities laws are governed by the Private Securities Litigation Reform Act ("PSLRA"). *See In re Millennial Media, Inc. Sec. Litig.*, No. 14 Civ. 7923 (PAE), 2015 WL 566460, at *4 (S.D.N.Y. Feb. 10, 2015); *Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *2 (S.D.N.Y. May 31, 2012). The PSLRA directs the court to appoint as lead plaintiff the party or parties "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). Under the PSLRA, there is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) has either "filed a complaint or made a motion in response to a notice," *id.* § 78u–4(a)(3)(B)(iii)(I)(aa); (2) in the determination of the Court, has the "largest financial interest in the relief sought by the class," *id.* § 78u–4(a)(3)(B)(iii)(I)(bb); and (3) satisfies all the requirements of Federal Rule of Civil Procedure 23, which governs class actions, *see id.* § 78u–4(a)(3)(B)(iii)(I)(cc).

As stated above, the Fund Group is the only entity that continues to seek appointment as lead plaintiff. All other movants have filed notices of withdrawal or non-opposition to the Fund Group's motion, which is now unopposed. Accordingly, the Court will consider only the Fund

Group's motion for appointment as lead counsel and for the appointment of its chosen co-counsel as lead co-counsel.

A.  **Notice**

The Fund Group satisfies the first requirement, as it timely moved for lead plaintiff status. *See* 15 U.S.C. § 78–u4(a)(3)(B)(iii)(I); *City of Monroe*, 269 F.R.D. at 293.[5]

B.  **Financial Interest**

In determining who has the largest financial stake in the litigation, courts in this Circuit have traditionally applied a four-factor test, first set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715 (DHC), 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). These *Lax* factors include:

> (1) the total number of shares purchased during the class period;
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
> (4) the approximate losses suffered.

*City of Monroe*, 269 F.R.D. at 293.

Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("Although courts have differed on how much weight to assign to each of the *Lax* factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."), *reconsidered on other grounds, In re IMAX Sec. Litig.*, No. 06

---

[5] Because notice of the *Mustafin* action was published on November 27, 2018, *see* 18 Civ. 11071, Dkt. 42, Ex. 1, the deadline to file a motion for appointment as lead plaintiff was Monday, January 28, 2019. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The Fund Group timely filed its motion to serve as lead plaintiff on that day.

8

Civ. 6128 (NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009); *Bo Young Cha*, 2012 WL 2025850, at *2; *Reimer v. Ambac Fin. Group Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM) (KNF), 2007 WL 2197836, at *6–7 (S.D.N.Y. July 31, 2007); *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104–05 (S.D.N.Y. 2007); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[I]n determining the largest financial interest, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." (quotation marks omitted)).

Here, the Fund Group represents that its members suffered a combined loss of approximately $799,365 as a result of defendants' alleged misconduct. *See* 18 Civ. 11071, Dkt. 42, Exs. C, E & G. No other individual or entity has represented that it has a greater financial interest in the relief sought by the class; indeed, other movants withdrew their motions for appointment as lead plaintiff, or filed motions of non-opposition to the Fund Group's motion, because they had smaller financial interests in this action. Moreover, the Fund Group is comprised of institutional investors, the type of investor Congress prefers as lead plaintiff. *See, e.g.*, H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ( "[I]ncreasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed . . . to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one." (citation omitted)); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("[T]he PSLRA was designed to favor institutional investors.").

Although no other movant opposes the Fund Group's motion for appointment as lead plaintiff, for the avoidance of doubt, the Court concludes that the Fund Group may be appointed lead plaintiff notwithstanding that the group is not unitary but is a coalition of three institutional investors. Several courts in this District have recognized that a coalition of investors may appropriately be appointed lead plaintiff. *See, e.g., City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Credit Suisse Grp. AG*, No. 17 Civ. 10014 (RJS), 2018 WL 1382406, at *2 (S.D.N.Y. Mar. 19, 2018) ("*Credit Suisse*") (appointing coalition of four institutional investors lead plaintiff); *Lang v. Tower Grp. Int'l Ltd.*, No. 13 Civ. 5852 (AT), 2014 WL 12779212, at *3 (S.D.N.Y. June 17, 2014) (appointing coalition of public pension funds as lead plaintiff); *Janbary v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010) (appointing as lead plaintiff a group of "sophisticated individuals who have demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives"); *In re Bank of Am. Corp. Secs. Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing a coalition of institutional investors as lead plaintiff because the funds "have shown that they were able to 'function cohesively and to effectively manage the litigation . . . .'" (quoting *Varghese v. China Shenghuo Pharma. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008))); *but see Goldberger v. PXRE Gr., Ltd.*, 06 Civ. 3410 (KMK), 2007 WL 980417, at *3–4 (S.D.N.Y. Mar. 30, 2007) (declining to appoint a group of seven individual investors as lead plaintiff notwithstanding that, in the aggregate, the group had the largest financial interest in action). This is consistent with the PLSRA, which expressly permits "a group of persons" to be appointed lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

Here, the Fund Group is qualified for appointment as lead plaintiff. First, the Fund Group is "relatively small and therefore presumptively cohesive." *Janbay*, 272 F.R.D. at 119. It

consists of just three sophisticated institutional investors. And as set forth in the Fund Group's joint declaration, *see* Dkt. 42, Ex. H ("Joint Decl."), the members of the Fund Group "have demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives." *Janbay*, 272 F.R.D. at 119. *See* Joint Decl. ¶¶ 8–13 (describing coordination of members). Finally, the Fund Group members have attested that they understand that they owe a duty to all class members and pledge to work closely together to vigorously prosecute the claims on behalf of the class. *Id.* ¶ 9. That, too, favors appointment of the Fund Group as lead plaintiff. *See Credit Suisse*, 2018 WL 1382406, at *2.

In sum, all considerations favor the Fund Group, the group of institutional investors with, by far, the largest loss.

### C. Rule 23 Requirements

The PSLRA's final requirement is that the proposed lead plaintiff satisfy Rule 23's requirements for class certification: numerosity, commonality, typicality, and adequacy. At this early stage of litigation, however, "only the last two factors—typicality and adequacy—are pertinent." *Bo Young Cha*, 2012 WL 2025850, at *6 (quoting *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)).

Lead plaintiffs' claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010) (citations omitted). A lead plaintiff is adequate where it "does not have interests that are antagonistic to the class that [it] seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." *Glauser*, 236 F.R.D. at 189 (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000)). "The claims

11

of [the Fund Group] are typical of the class because their claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health Plans*, 182 F.R.D. at 49–50 (citations omitted).

No party or movant has contested the Fund Group's typicality. And no party or movant has claimed that the Fund Group "will not fairly and adequately protect the interests of the class" or is subject to "unique defenses" that render the Fund Group incapable of adequately representing the class. 15 U.S.C. § 78u–(4)(a)(3)(B)(iii)(II).

Because the Fund Group has satisfied all of the PSLRA requirements as of this early stage, the Court appoints it lead plaintiff.

## IV. Appointing Lead Counsel

The most adequate plaintiff may retain counsel to represent the class, subject to the Court's approval. *Id.* § 78u–(4)(a)(3)(B)(v). The Fund Group has selected the law firm of Cohen Milstein Sellers & Toll PLLC and Scott+Scott Attorneys at Law LLP as co-lead counsel. Having reviewed the firms' submissions as to their pertinent background and experience, including their experience litigating securities class actions, the Court finds that these firms are qualified to serve as co-lead counsel. Accordingly, the Court appoints Cohen Milstein Sellers & Toll PLLC and Scott+Scott Attorneys at Law LLP as co-lead counsel.

## CONCLUSION

To summarize, these two cases (18 Civ. 11071 and 19 Civ. 100) are now consolidated for all purposes, and shall proceed under the name, *In re GreenSky Securities Litigation*, and under the case number 18 Civ. 11071. The Fund Group's motion seeking appointment as lead plaintiff is granted. The Court appoints Cohen Milstein Sellers & Toll PLLC and Scott+Scott Attorneys at Law LLP as co-lead counsel.

The Clerk of the Court is directed to terminate the motions pending at 18 Civ. 11071, docket entries 30, 33, 36, 40, 43, 46, 47, 48, and 56; and at 19 Civ. 100, docket entries 29 and 32. In light of the consolidation, the Clerk of Court is also directed to close the Yu case, 19 Civ. 100.

The Court directs the parties to meet and confer and, by **April 15, 2019,** to submit a joint letter to the Court with an efficient proposed schedule for next steps in this case, including proposed dates for the filing of (1) a consolidated amended complaint and (2) defendants' response. If defendants anticipate that their response will take the form of a motion to dismiss, the parties shall include proposed dates for the opposition and reply briefs as well.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: March 29, 2019
New York, New York