UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE GREENSKY SECURITIES LITIGATION | No. 1:18-cv-11071 (PAE) |

**GREENSKY DEFENDANTS' REPLY MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
THE CONSOLIDATED SECOND AMENDED COMPLAINT**

# Table of Contents

Table of Authorities ................................................................................................................... ii

Preliminary Statement ................................................................................................................1

Argument ....................................................................................................................................2

I.      The Section 11 Claims Should Be Dismissed..................................................................2

           A.      The Offering Documents Were "Complete and Accurate." ...................................2

           B.      Defendants Had No Duty To Disclose Under SEC Regulations. ............................4

           C.      Plaintiffs Fail To Plead Any Actionable Misstatements..........................................5

           D.      The Alleged Misstatements and Omissions Were Not Material.............................8

                    1.      GreenSky's Post-IPO Conduct Confirms There Is No Materiality. ............9

                    2.      Transaction Volume Is the Primary Driver of GreenSky's Revenue........................................................................................................9

                    3.      The Market's Reaction Does Not Indicate Materiality.............................10

II.     The Section 12(a)(2) and 15 Claims Should Be Dismissed...............................................10

Conclusion ................................................................................................................................10

## Table of Authorities

**Page(s)**

**Cases**

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
  506 F. App'x 32 (2d Cir. 2012) ...................................................................................6

*DeMaria v. Andersen*,
  318 F.3d 170 (2d Cir. 2003)........................................................................................8

*In re Duane Reade Inc. Sec. Litig.*,
  No. 02-cv-6478(NRB), 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003)....................8

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 487 (S.D.N.Y. 2013).................................................................3, 5, 9

*Glazer v. Formica Corp.*,
  964 F.2d 149 (2d Cir. 1992).........................................................................................3

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991).........................................................................................3

*Lin v. Interactive Brokers Grp., Inc.*,
  574 F. Supp. 2d 408 (S.D.N.Y. 2008).........................................................................3

*Litwin v. Blackstone Grp.*,
  634 F.3d 706 (2d Cir. 2011)....................................................................................3, 5

*Manavazian v. Atec Grp., Inc.*,
  160 F. Supp. 2d 468 (E.D.N.Y. 2001) ........................................................................7

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010).........................................................................................3

*Nurlybayev v. ZTO Express (Cayman) Inc.*,
  No. 17-cv-6130 (LTS)(SN), 2019 WL 3219451 (S.D.N.Y. July 17, 2019) ............4, 5

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
  538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009)........5

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
  681 F.3d 114 (2d Cir. 2012).........................................................................................5

*Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*,
  No. 15-cv-5999 (PGG), 2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017)....................3

*In re Pro Shares Trust Sec. Litig.*,
  728 F.3d 96 (2d Cir. 2013) ......................................................................................................8

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816
  F.3d 199 (2d Cir. 2016) ...................................................................................................5, 8

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
  No. 11-cv-2484(KMW)(FM), 2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ..........................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16-cv-6728 (CM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) .....................................7

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010) ......................................................................................................6

*In re Urban Outfitters, Inc. Sec. Litig.*,
  103 F. Supp. 3d 635 (E.D. Pa. 2015) .......................................................................................7

**Preliminary Statement**

Like the Complaint, Plaintiffs' Opposition urges an implausible theory: that the GreenSky Defendants violated Sections 11, 12(a)(2) and 15 of the '33 Act—even though they *disclosed* that the Company had shifted away from solar; *disclosed* that new industry verticals carried substantial risks, including to profitability; and *disclosed* that the Company's transaction fee rate had significantly declined at the time of the IPO. In the face of these disclosures, Plaintiffs now complain that the omission was Defendants' failure to explain "the relationship between" these facts. (Opp. 7.) That theory also fails because the Prospectus disclosed GreenSky's revenue model, which made clear the relationship between transaction fee rate and transaction volume. (P 90-94.) GreenSky disclosed that its transaction fee rate was in a steady decline by the time of the IPO, providing exact figures for the fiscal periods leading up to the IPO. (*Id.*; *see also* GS Mem. at 6.) The Prospectus likewise disclosed that GreenSky had "actively reduced" its solar transaction volume (P 7, 118) and that "[g]rowth in active merchants and transaction volume will depend on our ability to retain existing platform participants, add new participants and expand to new industry verticals" (P 85). In other words, Defendants provided all information Plaintiffs needed to evaluate "the Company's current position and potential" (Opp. 7) as of May 2018. Indeed, the Opposition confirms that Plaintiffs are not complaining about the disclosures in the IPO at all, but rather about the Company's unanticipated financial results many months later, when the *volume* of solar transactions fell faster than anyone anticipated. Defendants cannot be liable for failing to predict the future.

As a result, nothing in the Opposition refutes that the GreenSky Defendants made complete and accurate disclosures. Nor do Plaintiffs plausibly allege a duty to disclose additional information, either to render other statements not misleading (*see infra* § I.A), or because the information was required to be disclosed by SEC regulations (*see infra* § I.B).

Plaintiffs also fail to allege that Defendants made any affirmative misstatements. The Complaint does not plead any, and the few affirmative statements featured in the Opposition are inactionable as a matter of law. (*See infra* § I.C.) The Opposition further does not explain how any of the omissions (and, to the extent pleaded, statements) are material. That is particularly true since the stock drop Plaintiffs complain of occurred at the same time as the Company disclosed *increased* transaction fee rates—a fact Plaintiffs ignore. (*See infra* § I.D.)

If the Section 11 claims fail, the Section 12(a)(2) and 15 claims do too. (*See infra* §§ II, III.) Plaintiffs also cannot save the Section 12(a)(2) claim of CPERS, who sold same day.

## Argument

**I.    THE SECTION 11 CLAIMS SHOULD BE DISMISSED.**

**A.    The Offering Documents Were "Complete and Accurate."**

The thrust of Plaintiffs' Complaint—and the lead argument in their Opposition—is that the Offering Documents[1] "failed to disclose a significant, deliberate, and risky change in business strategy to investors that was already negatively impacting the Company"—*i.e.*, that "GreenSky made a decision to wind down its very profitable solar business" and, as a result, "transaction fee rates declined and its profitability and growth slowed." (Opp. 1-2, 10-12.) But GreenSky told investors exactly this. The Offering Documents *disclosed* that GreenSky had "actively reduced" its solar business (P 7, 118); *disclosed* that GreenSky had "recently expanded into the elective healthcare industry vertical" with "no assurance that we will achieve similar levels of success" (P 38-39); and *disclosed* that GreenSky's overall transaction fee rate had

---

[1] Capitalized terms have the same definitions set forth in Defendants' Memorandum of Law in Support of Their Motion To Dismiss the Consolidated Second Amended Complaint (ECF No. 102). Exhibit citations refer to the Declaration of Karin A. DeMasi (ECF No. 103).

declined from 2016 (7.93%), to 2017 (7.40%), to the first quarter of 2018 (6.87%) (P 90, 94). Investors were told all of that—and Plaintiffs do not (and could not) contend otherwise.

Forced to acknowledge that these facts *were* disclosed, the Opposition argues that these disclosures were somehow "oblique," "buried," "hidden" and not "discernable" or "meaningful." (Opp. 2, 4, 6.) But adjectives cannot save Plaintiffs' claims. An omissions claim cannot survive where, as here, statements are explicitly referenced in the Offering Documents. *See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 763 (2d Cir. 1991).[2]

To the extent Plaintiffs identify any information that was not disclosed, it is because Defendants had no duty to disclose it. There is no "generalized duty" to disclose information, *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 365-66 (2d Cir. 2010), and "[r]evealing one fact about a subject does not trigger a duty to reveal all facts on the subject," *Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*, No. 15-cv-5999 (PGG), 2017 WL 4403314, at *13 (S.D.N.Y. Sept. 30, 2017) (citation omitted). To plead a duty, plaintiffs must identify specific statements that were "misleading" without the alleged omissions. *See Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992). Plaintiffs have not done so.

Plaintiffs contend that investors could not "evaluate the materiality" of "declining transaction fee rates," because GreenSky did not provide an "explanation about the cause of those declines." (Opp. 11-12.) However, GreenSky disclosed that it had shifted away from solar into new verticals that carried risks to profitability and that transaction fee rates were declining

---

[2] Plaintiffs' authority likewise proves this point: in *Lin v. Interactive Brokers Group, Inc.* (cited at Opp. 10), the court properly dismissed omissions claims because, like here, financial data was disclosed in offering materials. 574 F. Supp. 2d 408, 418 (S.D.N.Y. 2008). The other cases Plaintiffs cite as requiring "complete and accurate" disclosures are off point because they instead address duties under Item 303, which does not apply for the reasons discussed below. (*See* Opp. 12 (citing *Litwin v. Blackstone Grp.*, 634 F.3d 706 (2d Cir. 2011); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487 (S.D.N.Y. 2013).)

(P 6-7, 39, 85, 118), and also disclosed the simple formula by which the Company generates revenue (P 90-94).[3]  Thus, the claims here are even weaker than in *ZTO Express*, in which a company reported "operating margins and revenues" but allegedly did not disclose it had "slashed" its "network transit fee," which was "its primary source of revenue." *Nurlybayev v. ZTO Express (Cayman) Inc.*, No. 17-cv-6130 (LTS)(SN), 2019 WL 3219451, at *5 (S.D.N.Y. July 17, 2019).  In dismissing the complaint, the *ZTO Express* court found no improper omission because "the *effect* of the fee decrease was disclosed to investors" through other data (there, revenue).  *Id.* (emphasis added).  The same is true here:  the Prospectus already disclosed the information Plaintiffs needed to understand the risks of investing in GreenSky.

> **B.     Defendants Had No Duty To Disclose Under SEC Regulations.**

Plaintiffs argue that the GreenSky Defendants had a duty under Item 303 to disclose two "trends" that, in May 2018, were "presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operation": (i) "GreenSky's declining volume of solar transactions" and (ii) "the resulting impact on transaction fee rates."  (Opp. 13.)  Of course, as the Opposition concedes, the Prospectus *did* disclose both the reduction in solar volume and overall transaction fee rates.  (*See* Opp. 6, 11.)

Plaintiffs further argue that the impact of declining solar volume on transaction fee rates was itself an undisclosed "trend." (Opp. 13-14.)  But as the post-IPO presentation that Plaintiffs cite (Opp. 12) makes clear, GreenSky did not omit any "trend" because the issue

---

[3] Plaintiffs also point to the statement "that GreenSky was expanding into the healthcare market."  (Opp. 11.)  But that statement was both true and accompanied by disclosures that GreenSky "make[s] no assurance that we will achieve similar levels of success, if any, in this industry vertical."  (P 39.)  Plaintiffs further say "the Prospectus touted GreenSky's 'recurring revenue' model" without disclosing that solar "would not 'recur'."  (Opp. 11.)  This statement is likewise true:  GreenSky *has* a recurring revenue model, which simply means that it earns "an upfront transaction fee every time a merchant receives a payment using our platform."  (P 6.)  And GreenSky disclosed its solar business was being "actively reduced."  (P 7.)

4

revealed in November 2018 had nothing to do with declining rates (which remained constant) but instead had to do with a decrease in the *volume* of solar transactions (which GreenSky disclosed). (Compl. ¶ 105.) In any event, a duty to disclose arises only when there is knowledge of a trend.[4] (GS Mem. 13-15.) But the Opposition and the Complaint rely solely on information learned *after the IPO*. (*Id.* at 7.) The very statements that Plaintiffs cite in implying that GreenSky knew of a downward trend (Opp. 13-14), instead confirm that GreenSky "did not think it would come down as far as it did" and the "delta, watching the solar business drop a little quicker than we thought, really gave rise to the shortfall" in November 2018. (GS Mem. 14 (citing Compl. ¶¶ 91, 95).) Thus, while GreenSky naturally expected that solar transactions would decrease when it "actively" reduced its solar business, Plaintiffs' own allegations confirm GreenSky *did not* expect a decline of the magnitude that led to the shortfall in the 2Q and 3Q of 2018.[5]

### C. Plaintiffs Fail To Plead Any Actionable Misstatements.

Plaintiffs argue that the Offering Documents also contained actionable affirmative misstatements "that the Complaint specifically identifies, with bold text and explanations." (Opp. 15-19.) That is wrong; even at this late stage, Plaintiffs have not identified any supposed

---

[4] In this regard, Plaintiffs either misunderstand or misstate GreenSky's position. It is not, as Plaintiffs suggest, that Section 11 has a scienter requirement. (*See* Opp. at 10 & n.6.)

[5] *See, e.g.*, *ZTO Express*, 2019 WL 3219451, at *8 ("Plaintiffs identify no specific pre-IPO increase in . . . costs that is not already disclosed in the Offering Documents, and nothing in Item 303 requires [the defendant] to disclose in the Offering Documents trends and events that occurred after its IPO."); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 525 (S.D.N.Y. 2015) (pleading insufficient when it is refuted on its face), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016). Plaintiffs cite cases that focus on "then-known" trends. *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 121 (2d Cir. 2012); *Litwin*, 634 F.3d at 716, 721; *Facebook*, 986 F. Supp. 2d at 508-10. Here, by contrast, there is no well-pleaded allegation that Defendants knew of a trend and failed to disclose it when the unexpected decline did not happen until after the IPO. *See Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 669 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009) (dismissing claims where "the allegations have been craftily drafted to imply that what only became clear due to subsequent events was somehow known to [the company] far earlier in time").

misstatements with any specificity. Instead, the Complaint sets forth lengthy, block quotes and alleges that GreenSky "omit[ted]," "hid," or "fail[ed] to disclose" information. (Compl. ¶¶ 51-75.) Such a tactic is grounds for dismissal (GS Mem. 19-20)—it is not, as Plaintiffs would have it, a basis for sneaking past a motion to dismiss (Opp. 15-16).[6] Even so, Defendants made every effort to identify and respond to any potential misstatement contained in the Complaint, both in the opening brief and in a chart that Plaintiffs ignore. (GS Mem. 19-23; Ex. A.)

Nor do the few statements highlighted in the Opposition state a claim. Plaintiffs primarily argue that one of GreenSky's risk factors was "misleading" because it said "if we fail to retain any of our larger merchants . . . and we do not acquire new merchants of similar size and profitability, it would have a material adverse effect on our business and future growth," but did not disclose that adverse effects already existed. (Opp. 16.) This is an alleged omission, not an affirmative misrepresentation. *See Slayton v. Am. Express Co.*, 604 F.3d 758, 770 (2d Cir. 2010) (cited at Opp. 16). In any event, that disclosure supports Defendants: it says that failure to retain merchants causes adverse effects, and the Prospectus specifically states that GreenSky was *not* retaining solar merchants. (P 7, 118.) Plaintiffs' other arguments fare no better.

**Puffery and Optimism.** Despite the numerous examples of inactionable puffery cited in GreenSky's opening brief (GS Mem. 20-21; Ex. A), the Opposition defends only two: statements about GreenSky's "strong recurring revenue" model and "significant opportunities to expand" (Opp. 17). But general references to a company's "strength" and "opportunities" are classic examples of inactionable puffery and corporate optimism. (*See* GS Mem. 20-21.)

---

[6] *Cf. Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37-38 (2d Cir. 2012) (a complaint that "consists in large part of large block quotations with italicized text . . . does not comport with our exhortation that plaintiffs must demonstrate with specificity why and how each statement is materially false or misleading" (citation omitted)).

6

Plaintiffs are not helped by their citation to extreme and factually distinguishable case law. In *Manavazian v. Atec Group, Inc.*, 160 F. Supp. 2d 468, 480-81 (E.D.N.Y. 2001), for example, the "[p]laintiffs did more than offer general optimistic statements about the Company's future performance"; instead, the company said it was "position[ed] . . . for dramatic revenue and earnings growth" at a time when "a 'paradigm shift' in the industry had . . . hobbl[ed] the Company's basic health" and "defendants already knew that [its] core business was crumbling." *Id.* at 480-81.[7] Nothing comparable is alleged here. GreenSky also disclosed that "[h]istorical results . . . are not necessarily indicative of our future performance" (P 23), and changes in elective healthcare and other new lines of business could impact future profitability (P 39).

**Inactionable Opinion.** Plaintiffs likewise attempt to defend only one statement constituting inactionable opinion. Plaintiffs argue that the statement that there were "substantial opportunities in the elective healthcare market" is actionable because it did not discuss underlying "countervailing material facts" about what those opportunities were, how elective healthcare was different from solar and that a transition carried risk. (Opp. 18.) But GreenSky made this statement alongside an express risk disclosure that "we make no assurance that we will achieve similar levels of success, if any, in this industry vertical, or that we will not face unanticipated challenges in our ability to offer our program in this industry vertical." (P 39.) Regardless, this statement about potential growth opportunities cannot support a claim because it "express[es] [GreenSky's] expectations for the future rather than presently existing, objective

---

[7] Similarly, in *In re Signet Jewelers Limited Securities Litigation*, No. 16-cv-6728 (CM), 2018 WL 6167889, at *8, 12 (S.D.N.Y. Nov. 26, 2018), "Defendants conveyed to the market with dogged insistence that [the company's] credit portfolio was carefully managed and of a high quality" when, behind the scenes, "Defendants routinely extended credit to high-risk borrowers for the purpose of driving sales." *Id.* at *8, 12. Another case cited by Plaintiffs, *In re Urban Outfitters, Inc. Securities Litigation*, 103 F. Supp. 3d 635 (E.D. Pa. 2015), addressed the PSLRA safe harbor and did not address puffery at all. *See id.* at 650.

7

facts," and "there is no basis to conclude that defendants did not genuinely believe what they were saying at the time they said it." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d at 531.

**Historical Performance.**  Plaintiffs baldly assert that statements of "accurate historical performance" are actionable because this case "concerns the misleading impression that historical performance would recur." (Opp. 17.)  Plaintiffs cite no support for this proposition and offer no response to case law that makes clear that "disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." *In re Duane Reade Inc. Sec. Litig.*, No. 02-cv-6478(NRB), 2003 WL 22801416, at *6 (S.D.N.Y. Nov. 25, 2003) (citation omitted).  This is especially so here, where Defendants expressly disclosed that possibility.  (P 23.)

**Bespeaks Caution.**  Plaintiffs incorrectly argue that the "bespeaks caution" doctrine does not apply because GreenSky "do[es] not argue that any statements at issue are forward-looking." (Opp. 19.)  In fact, the GreenSky Defendants identified numerous forward-looking statements quoted in the Complaint. (*See, e.g.*, Ex. A at 9.)  Nor are Plaintiffs correct that GreenSky "do[es] not cite any sufficiently cautionary language." (Opp. 19.)  GreenSky disclosed "specific, prominent" warnings about potential risks that had not materialized at the time of the IPO. *DeMaria v. Andersen*, 318 F.3d 170, 181 (2d Cir. 2003); (*see* P 39).

### D. The Alleged Misstatements and Omissions Were Not Material.

The Section 11 claims should be dismissed because Plaintiffs have also failed to adequately allege materiality, that is, "a *substantial* likelihood that the disclosure of the omitted material would have been viewed by the *reasonable* investor as having *significantly* altered the total mix of information already made available." *In re Pro Shares Trust Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) (citation omitted).  Each of Plaintiffs' three materiality arguments fails.

8

1.      GreenSky's Post-IPO Conduct Confirms There Is No Materiality.

Plaintiffs argue that "details about the impact of changes in merchant mix on GreenSky's transaction fees rates and revenue" were material at the time of the IPO because GreenSky discussed them in public statements six months later. (Opp. 20.) This argument fails because, as the statements Plaintiffs cite make clear, the facts that led to the November 2018 disclosures were not available at the time of the IPO. GreenSky made post-IPO disclosures because of a drop in its solar volume (not its transaction fee rate) that was more significant than expected. *See supra* § I.B. Thus, this case is unlike *In re Facebook, Inc. IPO Litigation*, in which the company allegedly omitted information from offering documents but disclosed it "to IPO critical parties" at the same time. 986 F. Supp. at 520. Plaintiffs' argument is classic impermissible pleading by hindsight. (GS Mem. 11-12.)

2.      Transaction Volume Is the Primary Driver of GreenSky's Revenue.

Plaintiffs also say they have pleaded materiality because "transaction fees play a 'significant role' in GreenSky's business." (Opp. 20-21.) But, again, Plaintiffs are confusing the inputs into transaction fees. (GS Mem. 5-6.) The Complaint adequately alleges that transaction fee *revenue* is a key part of GreenSky's business, but it also makes clear that it is transaction *volume*—not individual transaction fee rate—that is the primary driver of changes in that revenue. (*See* Compl. ¶ 58 (alleging that in 2017, rates declined but volume and fee revenue went up ); *id.* ¶ 100 (alleging that in 2018, rates increased but volume and revenue declined).)

Plaintiffs' arguments about the significance of transaction fee rates also are irrelevant because nothing about earnings was "masked" (Opp. n.12)—all pre-IPO rates were disclosed (and, after the IPO, rates actually *increased*). Plaintiffs instead must plead materiality for the omission they allege—the causal link between the reductions in solar business and transaction fee rates. Plaintiffs do not explain how that narrow information could be material.

9

### 3. The Market's Reaction Does Not Indicate Materiality.

Plaintiffs argue that "the market's reaction indicates materiality" because "GreenSky's stock price dropped significantly each time the Company corrected its misstatements and omissions." (Opp. 22.) This argument gets it backward: on the same dates that Plaintiffs say its stock price dropped, GreenSky reported steady or *increasing* transaction fee rates. Under Plaintiffs' theory, that should have led to *better* performance. (GS Mem. 19.)[8]

## II. THE SECTION 12(A)(2) AND 15 CLAIMS SHOULD BE DISMISSED.

Plaintiffs' Section 12(a)(2) claims should be dismissed for the same reasons as the Section 11 claims. (GS Mem. 23-25.) The Section 12(a)(2) claim brought by CPERS also should be dismissed because CPERS sold all 304 shares it bought in the IPO on the same day, and thus could not have suffered any loss from "truth" that Plaintiffs say did not "emerge" until three months later. Plaintiffs argue that defendants must disprove loss causation (Opp. 23-24), but courts dismiss such claims when a plaintiff sold stock before corrective disclosures and thus had no losses due to misstatements or omissions. *See, e.g.*, *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, No. 11-cv-2484(KMW)(FM), 2013 WL 944777, at *10 (S.D.N.Y. Mar. 12, 2013).

Plaintiffs do not dispute that, for their control person claims under Section 15 to survive, Plaintiffs must have pleaded a primary violation of Section 11 or 12(a)(2). (Opp. 25.) Because Plaintiffs did not do so, the Section 15 also claims should be dismissed. (GS Mem. 25.)

### Conclusion

The GreenSky Defendants respectfully request an order from the Court dismissing the Complaint in its entirety with prejudice pursuant to Rule 12(b)(6).

---

[8] Plaintiffs say that post-IPO rate increases are irrelevant because only the same quarter in prior years can be compared. (Opp. 22.) But seasonal variation hurts Plaintiffs even more. In 2017, rates fell after the first quarter (Q1 7.8%, Q2 7.4%, Q3 7.3%, Q4 7.3%), but in 2018, rates *increased* later in the year (Q1 6.9%, Q2 6.8%, Q3 6.9%, Q4 7.1%). (Compl. ¶¶ 100, 105.)

10

August 6, 2019

        CRAVATH, SWAINE & MOORE LLP,

  by

              /s/ Karin A. DeMasi
                Karin A. DeMasi
              Lauren R. Kennedy
             Members of the Firm

Worldwide Plaza
  825 Eighth Avenue
    New York, NY 10019
      (212) 474-1000

*Attorneys for Defendants GreenSky, Inc., David Zalik, Robert Partlow, Joel Babbit, Gerald Benjamin, John Flynn, Gregg Freishtat, Nigel Morris and Robert Sheft*

11