UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                               :

                               :       **PLAINTIFFS' MEMORANDUM**

                               :       **IN SUPPORT OF MOTION FOR**

IN RE GREENSKY SECURITIES LITIGATION  :       **CLASS CERTIFICATION**

                               :

                               :       18 Civ. 11071 (AKH)

                               :
-------------------------------------------------------------X

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 3

    A.   The Standard for Class Certification ...................................................... 6

    B.   The Securities Claims at Issue Are Especially Amenable to Certification ..................... 7

    C.   The Class Here Readily Satisfies the Rule 23(a) Requirements ..................... 7

        1.   The Proposed Class Is Numerous ................................................. 7

        2.   The Action Raises Common Questions of Law and Fact ..................... 8

        3.   The Class Representatives' Claims Are Typical of the Class .............. 9

        4.   Lead Plaintiffs Will Fairly and Adequately Protect the Class ........... 10

    D.   This Case Meets the Requirements of Rule 23(b)(3) ............................. 12

        1.   Common Questions of Law and Fact Predominate ........................... 12

        2.   A Class Action Is the Superior Means of Resolving This Dispute ........ 14

    E.   The Court Should Appoint Lead Plaintiffs' Choice of Counsel as Class Counsel Under Rule 23(g) ............................................................. 15

III. CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods, Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................................12

*In re AMF Bowling Sec. Litig.*,
    No. 99-CV-3023 (DC), 2002 WL 461513 (S.D.N.Y. Mar. 26, 2002)......................8

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    133 S. Ct. 1184 (2013)....................................................................................2, 7, 8

*In re Barclays Bank PLC Sec. Litig.*,
    No. 09-CV-1989 (PAC), 2016 U.S. Dist. LEXIS 75663 (S.D.N.Y. June 9,
    2016) ........................................................................................................................9

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..............................................................................................12

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
    No. 08-cv-8093-LTS ..............................................................................................15

*Billhofer v. Flamel Techs., S.A.*,
    281 F.R.D. 150 (S.D.N.Y. 2012) ..........................................................................10

*In re Braskem Sec. Litig.*,
    No. 15-CV-5132 (PAE) ..........................................................................................15

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)..............................................................................................14

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    No. 12-CV-0256, 2017 WL 3608298 (S.D.N.Y. Aug. 22, 2017)................................. *passim*

*In re Constar Int'l Inc. Sec. Litig.*,
    585 F.3d 774 (3d Cir. 2009)..............................................................................7, 13

*Desrocher v. Covisint Corp.*,
    No. 14-CV-3878 (AKH), 2016 WL 740275 (S.D.N.Y. Feb. 22, 2016) ...................7

*In re Deutsche Bank AG Sec. Litig.*,
    328 F.R.D. 71 (S.D.N.Y. 2018) .................................................................2, 3, 10, 13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011)..........................................................................................13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05-CV-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................9

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) .................................................................................7, 10, 11

*Gruber v. Gilbertson*,
   No. 16-CV-9727, 2019 WL 4439415 (S.D.N.Y. Sept. 17, 2019).....................................7, 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014)....................................................................................................9

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983)......................................................................................................13

*In re IndyMac Mortg.-Backed Sec. Litig.*,
   286 F.R.D. 226 (S.D.N.Y. 2012) ...................................................................................13

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ...................................................................................13

*Korn v. Franchard Corp.*,
   456 F.2d 1206 (2d Cir. 1972).........................................................................................13

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ...................................................................................14

*In re Livent, Inc. Noteholders Sec. Litig.*,
   210 F.R.D. 512 (S.D.N.Y. 2002) .................................................................................2, 14

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ........................................................................... *passim*

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08-CV-5653 (PAC), 2014 WL 1013835 (S.D.N.Y. Mar. 17, 2014)...................................7

*N.J. Carpenters Health Fund v. Residential Capital*,
   272 F.R.D. 160 (S.D.N.Y. 2011) ...................................................................................10

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   No. 08-CV-8781(KPF) ..................................................................................................15

*N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp. PLC*,
   No. 08-cv-5093-LAP ....................................................................................................16

*N.Y. Univ. v. Ariel Fund Ltd.*,
   No. 603803/08, slip. op. (N.Y. Sup. Ct. Feb. 22, 2010) ....................................................16

*In re Omnicom Grp., Inc. Sec. Litig.*,
   No. 02-CV-4483 (RCC), 2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007)................................14

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*,
   772 F.3d 111 (2d Cir. 2014)..............................................................................................7

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017)............................................................................................12

*Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of Am., NA*,
   No. 12-cv-2865-KBF ...................................................................................................16

*In re Prestige Brands Holdings, Inc. Sec. Litig.*,
   No. 05-CV-6924 (CLB), 2007 WL 2585088 (S.D.N.Y. Sept. 5, 2007) ...................................8

*Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*,
   280 F.R.D. 130 (S.D.N.Y. 2012) ......................................................................................14

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ....................................................................................2, 7

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)............................................................................................13

*In re Sanofi-Aventis Sec. Litig.*,
   293 F.R.D. 449 (S.D.N.Y. 2013) .......................................................................................9

*In re SunEdison, Inc. Sec. Litig.*,
   329 F.R.D. 124 (S.D.N.Y. 2019) .....................................................................................17

*Teachers Ret. Sys. v. ACLN Ltd.*,
   No. 01-CV-11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ...............................9

*Tsereteli v. Residential Asset Securitization Tr. 2006-A8*,
   283 F.R.D. 199 (S.D.N.Y. 2012) ......................................................................................12

*UFCW Local 1776 v. Eli Lilly & Co.*,
   620 F.3d 121 (2d Cir. 2010)...........................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................................................8

*Wallace v. IntraLinks*,
   302 F.R.D. 310 (S.D.N.Y. 2014) .....................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs Northeast Carpenters Annuity Fund, El Paso Firemen & Policemen's Pension Fund, and the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge respectfully submit this memorandum of law in support of their motion to: (1) certify a class of all persons and entities who purchased GreenSky Class A common stock pursuant or traceable to the Registration Statement and Prospectus (collectively, the "Offering Documents") issued in connection with Defendant GreenSky, Inc.'s ("GreenSky" or the "Company") May 25, 2018 initial public offering ("IPO") and were damaged thereby (the "Class"); (2) appoint Lead Plaintiffs as Class Representatives; and (3) appoint Lead Counsel Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Class Counsel.

## I.        INTRODUCTION

There is no question that this Action merits class certification.  Lead Plaintiffs and the numerous proposed Class members are investors who bring identical, strict liability claims under Sections 11, 12(a)(2), and 15 of Securities Act of 1933 ("Securities Act") against Defendants[1] for their materially untrue and misleading statements in the Offering Documents.  Specifically, Lead Plaintiffs allege that the Offering Documents failed to disclose that, prior to the IPO, Defendants implemented a plan to almost entirely eliminate GreenSky's highest margin business-line, which had made up a substantial portion of the Company's overall business, and that this was causing the Company's performance to significantly deteriorate.

The Securities Act claims at issue are ideally suited to class certification, as courts have widely recognized:

---

[1]        Defendants are GreenSky, certain of its officers and directors, and the IPO underwriters. ¶¶21-40.  All cites to "¶__" are to the Consolidated Second Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 97).

> [S]uits alleging violations of the securities laws, particularly those brought pursuant to Sections 11 and 12(a)(2), are especially amenable to class action resolution. [They] . . . depend[], more than anything else, on establishing that certain statements and omissions common to all offerings were material misrepresentations: a classic basis for a class action.[2]

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 101 (S.D.N.Y. 2011) (collecting cases); *see also In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230 (S.D.N.Y. 2015); *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512 (S.D.N.Y. 2002).

Thus, this Action readily satisfies all of the class certification requirements of Federal Rule of Civil Procedure 23.  *First*, it satisfies the four Rule 23(a) factors, and Rule 23(g):

- Where, as here, the claims involve millions of shares of publicly issued GreenSky stock, the Class of the many investors in that stock, which consists of thousands of members here, easily meets the low *numerosity* threshold.  *E.g.*, *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256, 2017 WL 3608298, at *4 (S.D.N.Y. Aug. 22, 2017).

- As the Supreme Court has repeatedly instructed, whether GreenSky's Offering Documents contain materially untrue and misleading statements raises factual and legal questions subject to generalized proof and *common* to the Class.  *E.g.*, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191, 1200 (2013).

- Given that Lead Plaintiffs and the Class members share identical claims, Lead Plaintiffs' interests in prosecuting those claims and maximizing a recovery are *typical* of, and align perfectly with, those of the Class.  *E.g.*, *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 80-81 (S.D.N.Y. 2018).

---

[2]     Unless otherwise noted, all emphasis is added and all quotations are omitted.

- Lead Plaintiffs are also *adequate* representatives because they have no conflicts with the Class members, and they have selected experienced Lead Counsel who have demonstrated their ability to vigorously prosecute the Action on behalf of the Class. *E.g.*, *id*., at 81-84. For substantially similar reasons, Lead Counsel qualify for *appointment* as Class Counsel under Rule 23(g). *MetLife*, 2017 WL 3608298, at *7.

*Second*, the Action meets the requirements of Rule 23(b)(3). As the common question of whether GreenSky's Offering Documents contain materially untrue and misleading statements is the primary issue in this strict liability Securities Act case, it *predominates* over any individual issues. *E.g.*, *MF Glob. Holdings*, 310 F.R.D. at 237. Moreover, a class action is the *superior* method of adjudicating this controversy, because it will avoid both numerous disparate suits, and the risk of barring many individual Class members from a recovery. *E.g.*, *id.*, at 239.

For the foregoing reasons, Lead Plaintiffs respectfully submit that their motion for class certification should be granted in full.

## II.      STATEMENT OF FACTS

The Complaint brings identical Securities Act claims on behalf of the Class of investors who purchased the same GreenSky Class A common stock pursuant or traceable to the same materially untrue and misleading Offering Documents. In particular, the Offering Documents failed to disclose that, prior to the IPO, Defendants implemented a plan to almost entirely eliminate the Company's highest margin business-line, which had made up a substantial portion of GreenSky's overall business, and that this was causing the Company's performance to significantly deteriorate.

GreenSky is a financial technology company that enables merchants to process loan applications at the point of sale, and its main source of revenue is an upfront "transaction fee" from the merchant when a loan is made through GreenSky's platform. ¶¶43-44. The overall revenue GreenSky derives from transaction fees is a product of the dollar volume of the underlying loans

("transaction volume") multiplied by the rate GreenSky receives from a merchant on a given loan ("transaction fee rate"). Changes in GreenSky's average transaction fee rate therefore affect its overall revenue.

Importantly, as GreenSky admitted only *after* the May 2018 IPO, its transaction fee rates "var[y] by merchant category . . . Therefore, shifts in merchant mix have a direct impact on [the Company's] transaction fee rates," and in turn its revenue. ¶100 (quoting 2018 Form 10-K).

Prior to the IPO, solar panel merchants made up a large portion of GreenSky's business, and notably had a transaction fee rate that was significantly larger than any other category of merchants. Solar panel merchants generated average transaction fee rates of around 14%, which was ***double*** the averages of all the other merchants in GreenSky's business. ¶¶46. GreenSky initially sought out solar merchants' high transaction fee rates, such that, for example, in 2016, solar panel merchants accounted for nearly 20% of GreenSky's transaction volume. ¶¶46-47.

However, during 2016, GreenSky decided to drastically and suddenly change its mix of merchants, including by almost completely eliminating its solar panel business. ¶48. The Company actively discouraged its salespeople from pursuing new solar business and began terminating its agreements with existing merchants. *Id*. Owing to this rapid policy change, by 2017, only one salesperson handled all of GreenSky's solar business. *Id*. As Defendants intended, GreenSky's solar merchant transaction volume dropped precipitously. ¶49.

At the same time, Defendants sought to replace GreenSky's solar merchant business with a new, and a materially different category of merchants. These new merchants, from the elective healthcare industry, had an average transaction fee rate of only 6.5%. ¶50. That was only ***half*** the rate of the solar merchants they were replacing. ¶¶46, 50. It was also less than the rate of virtually

all other non-solar merchants with whom GreenSky did business, which for at least four years prior to the IPO had been "incredibly stable" at about 7%.  ¶50.

Owing to this planned and marked shift away from GreenSky's only substantial high-transaction rate merchants, the Company's average transaction fee rate substantially declined. ¶¶50, 56, 58.  Thus, just before the IPO, solar merchants made up only 8% of GreenSky's overall transaction volume, down sharply from its previous 20% level.  ¶49.  In turn, during the year before the IPO, GreenSky's average transaction fee rate fell a full percentage point, until, by the first quarter of 2018, about a month before the IPO, the average transaction fee rate had dropped to 6.9%.  ¶50.  At the same time, the Company's cost of revenue was 55% higher than in 2017, because the elective healthcare business depended on a much higher transaction volume than the solar business, which caused gross profit growth to slow.  ¶ 108 n.7.

In May 2018, GreenSky was able to undertake a successful IPO, but it did so while failing to disclose the foregoing material trends.  ¶51.  More specifically, the Offering Documents never acknowledged or mentioned the prominent role that GreenSky's solar merchant business had played in its historical revenues and transaction fee rate.  ¶53.  Instead, the Offering Documents only mentioned solar merchants one time, and that was hidden in a section on "Attractive Unit Economics," which notes that solar panel merchants will be excluded from a measure of "dollar-based retention" because "we actively reduced our transaction volume with such merchants in 2017," but did not even begin to discuss the actual negative impact of that change on GreenSky's performance.  ¶54.  Accentuating that failure, among other things, the Offering Documents did not exclude the solar business's outsized transaction fee rates and resulting revenues from other important performance metrics, giving investors a false picture of the Company's current position and potential.  *See* ¶¶56-69.

With these trends and GreenSky's performance continuing to deteriorate after the IPO (¶¶77, 84, 107), Defendant Zalik, GreenSky's CEO, soon had to admit that the Company had been aware of these clear trends as they were unfolding *prior* to the IPO:

> We knew going into 2018 that historically, outside of our solar business, our average take rate had been incredibly stable for years. We knew that we had made a decision at the end of 2016 to reduce our concentration on solar. We knew that solar had an outsized average take rate of 14%. And as solar as a percentage of our business was coming down that ***our average take rate would go down***. ¶91.

Moreover, unlike the Offering Documents, each of the Company's post-IPO public filings in 2018 disclosed material information to the effect that its changing merchant mix can impact its average transaction fee rates.  ¶111.  A November 2018 investor presentation provided even further detail, with charts showing that at least as early as January 2017, a sharp "decline in solar originations" was causing a negative "trend" in transaction fee rates, and in turn an acknowledgement that GreenSky's 2018 fiscal year was "impacted by a 0.5% decline in transaction fee rate, resulting in $25M reduction in revenue and Adjusted EBITDA."  ¶¶105-06.

As a consequence of these disclosures, GreenSky's stock price dropped 60% from its IPO price, causing substantial investor losses. ¶¶118-19. By contrast, the Individual Defendants personally received hundreds of millions of dollars from the IPO, the proceeds of which went almost entirely to pay them and early private investors. ¶¶142-43.

## III.    ARGUMENT

### A.    The Standard for Class Certification

The Court should certify the Class, where, as here, it satisfies the Rule 23 requirements, specifically, the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy – and the two prerequisites of Rule 23(b)(3) – that common questions predominate, and that a class action is the superior means of adjudicating the claims.

Although the Court's analysis must be "rigorous," "the Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation," and noted that "[i]f there is to be an error made, let it be in favor and not against the maintenance of the class action . . . ." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 340 (S.D.N.Y. 2015). Further, the question under Rule 23 is essentially procedural – whether the class certification requirements are met, as they clearly are here. *See Amgen Inc.*, 133 S. Ct. at 1149 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

**B.      The Securities Claims at Issue Are Especially Amenable to Certification**

Courts within this Circuit have instructed that suits, like this one, alleging Securities Act claims are "especially amenable" to class action certification and resolution because the main issue they involve is whether documents issued in connection with an offering of stock contain materially untrue or misleading statements – which is inherently a class-wide question. *E.g.*, *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08-CV-5653 (PAC), 2014 WL 1013835, at *4 (S.D.N.Y. Mar. 17, 2014); *Pub. Emps.' Ret. Sys. of Miss.*, 277 F.R.D. at 101 (same); *see also Desrocher v. Covisint Corp.*, No. 14-CV-3878 (AKH), 2016 WL 740275, at *2 (S.D.N.Y. Feb. 22, 2016) (Hellerstein, J.) (noting that under Section 11, plaintiffs need not establish "scienter, reliance, or causation"). This "formulaic nature of §11 leaves defendants with little room to maneuver." *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 785 (3d Cir. 2009).

**C.      The Class Here Readily Satisfies the Rule 23(a) Requirements**

**1.      The Proposed Class Is Numerous**

"Numerosity is presumed for classes larger than forty members[]," although plaintiffs need not provide evidence of an exact class size to establish numerosity. *Gruber v. Gilbertson*, No. 16-CV-9727, 2019 WL 4439415, at *2 (S.D.N.Y. Sept. 17, 2019) (quoting *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014)). Thus, in securities class actions "'relating

7

to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'" *MetLife*, 2017 WL 3608298, at *4; *In re Prestige Brands Holdings, Inc. Sec. Litig.*, No. 05-CV-6924 (CLB), 2007 WL 2585088, at *2 (S.D.N.Y. Sept. 5, 2007) (same).

The Class here consists of all persons who purchased the 43.7 million shares of GreenSky Class A common stock that was issued pursuant, or was traceable, to the IPO and the materially untrue or misleading Offering Documents.  ¶¶1, 6, 144; Declaration of Steven J. Toll ("Toll Decl.") Ex. A at 8 (Q2 2018 Form 10-Q).  Although the exact number of Class members has yet to be determined, based on the millions of shares issued and their trading on the NASDAQ exchange, Class members likely number in the hundreds if not thousands and are geographically dispersed. Joinder of parties so numerous and widespread would be burdensome, expensive, and impracticable to both the parties and the judicial system, confirming that Rule 23(a)(1) is satisfied.  *E.g.*, *In re AMF Bowling Sec. Litig.*, No. 99-CV-3023 (DC), 2002 WL 461513, at *3 (S.D.N.Y. Mar. 26, 2002) (numerosity satisfied for class of purchasers of 15,525,000 shares of stock).

## 2.    The Action Raises Common Questions of Law and Fact

"Rule 23(a)(2) requires that the putative class members' claims must share common questions of fact and law . . . ."  *MF Glob. Holdings*, 310 F.R.D. at 235.  This commonality requirement is a "'low hurdle,'" requiring only that class members' claims depend upon at least one "'common contention . . . capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.''  *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  Commonality is "plainly satisfied" here because "the alleged misrepresentations in the prospectus relate to all the investors," and the "existence and materiality of such misrepresentations obviously present important common issues."  *Id.*; *Amgen*, 133 S. Ct. at 1191, 1200 ("Because materiality is judged

according to an objective standard, the materiality of [an issuer's] alleged misrepresentations and omissions is a question common to all members of the class"; "the falsity or misleading nature of the defendants' alleged statements or omissions are common questions"); *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2416 (2014) ("materiality is an objective issue susceptible to common, classwide proof").

Likewise, here, the central issue in this Securities Act case involves questions of law or fact that are common to Lead Plaintiffs and all Class members. They include: (i) whether the Offering Documents contain untrue or misleading statements; (ii) whether those statements are material; and (iii) whether as a result of those statements Defendants violated the Securities Act. *In re Barclays Bank PLC Sec. Litig.*, No. 09-CV-1989 (PAC), 2016 U.S. Dist. LEXIS 75663, at *24 (S.D.N.Y. June 9, 2016); *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 457 (S.D.N.Y. 2013). The Action accordingly satisfies Rule 23(a)(2).

### 3. The Class Representatives' Claims Are Typical of the Class

Typicality under Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *MF Glob. Holdings*, 310 F.R.D. at 236. It "does not require factual identity between the named plaintiffs and the class members." *Id.* When determining whether the claims are typical, "'the focus must be on the defendants' behavior and not that of the plaintiffs.'" *Teachers Ret. Sys. v. ACLN Ltd.*, No. 01-CV-11814 (LAP), 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004). Courts in this District "have emphasized that the typicality requirement is not demanding." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-CV-10240 (CM), 2007 WL 2230177, at *13 (S.D.N.Y. July 27, 2007).

Here, Lead Plaintiffs' claims are typical of, if not identical to, the claims of all other Class members. Lead Plaintiffs and Class members all purchased GreenSky common stock pursuant or

traceable to the Offering Documents, they all allege that the Offering Documents misstated and omitted the same material facts, and all bring the same claims against the same Defendants as a result. Given that each Class member's claims turn upon the very same facts and legal theories, and will be proven by the same evidence, typicality is satisfied, as courts regularly find under similar circumstances. *Deutsche Bank*, 328 F.R.D. at 81 (finding typicality where the "Court has found that all class members' claims arise from a single, common course of conduct committed against all members of the class"); *Facebook*, 312 F.R.D. at 343 (same). Nor are there any defenses unique to Lead Plaintiffs. *MF Glob. Holdings*, 310 F.R.D. at 236-37; *N.J. Carpenters Health Fund v. Residential Capital*, 272 F.R.D. 160, 165-68 (S.D.N.Y. 2011).

### 4. Lead Plaintiffs Will Fairly and Adequately Protect the Class

"Rule 23(a)(4) requires that the representative of the parties will fairly and adequately protect the interests of the class." *MF Glob. Holdings*, 310 F.R.D. at 237. The adequacy inquiry asks whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Deutsche Bank*, 328 F.R.D. at 81. Like typicality, the "adequacy requirement is not demanding," and both elements of Rule 23(a)(4) are met here. *Wallace v. IntraLinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014).

With respect to the first element, courts in this Circuit have explained that to defeat adequacy, not only must the class representative have a conflict with the class, but that conflict "must be fundamental" to the case. *Gilbertson*, 2019 WL 4439415, at *4. Here, Lead Plaintiffs' interests are perfectly aligned with those of the Class. As discussed, Lead Plaintiffs suffered identical harm to the Class – from purchasing GreenSky stock pursuant or traceable to the Offering Documents that contained materially untrue and misleading statements – and are thus incentivized to pursue, and maximize, a recovery that will equally benefit all Class members. *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 157 (S.D.N.Y. 2012) ("[A]ll members of the proposed class allege claims arising from the

same wrongful conduct that are based on the same legal theories as Plaintiff's claims. . . . Therefore, the interests of the other members of the proposed class will be adequately protected by Plaintiff"). Nor are there any conflicts between Lead Plaintiffs and the Class.  *See Facebook*, 312 F.R.D. at 344 (Where all claims arise from the same wrongful conduct "[a]ny conflict that may exist is not fundamental.").

Further, Lead Plaintiffs have already demonstrated their commitment and ability to supervise, participate in, and vigorously protect the interests of the Class in this Action.  As set forth in their Declarations, *see* Toll Decl. at Exs. B-D, Lead Plaintiffs: (i) regularly communicate with counsel, receive updates regarding the litigation, and monitor the litigation; (ii) review pleadings and other filings in this Action; (iii) participate in the Action, including through responding to discovery requests and producing documents; (iv) understand their fiduciary duties to the Class and will ensure that all Class members are treated equally; and (v) are committed to continuing all of these actions if appointed Class Representatives and to maximizing a recovery on behalf of all Class members.

Likewise, Lead Plaintiffs have also satisfied the second element by selecting counsel, Cohen Milstein and Scott+Scott, that have vigorously prosecuted the Action, including by defeating Defendants' motions to dismiss; possess extensive experience representing investors in securities class actions; and have committed substantial resources to this case.  Further details regarding Lead Counsel's relevant experience are set forth in their resumes, attached to the Toll Decl. at Exs. E and F, and in Section III.E below.  Lead Counsel's record here, along with their achievements in other securities class actions, demonstrates their commitment to vigorously prosecuting this case on behalf of the Class, and is sufficient to satisfy the adequacy requirement, as courts have held under

similar circumstances. *MF Glob. Holdings*, 310 F.R.D. at 237; *MetLife*, 2017 WL 3608298, at *7-8.[3]

### D.      This Case Meets the Requirements of Rule 23(b)(3)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy at least one of the three Rule 23(b) requirements.  Here, Lead Plaintiffs move for class certification under Rule 23(b)(3), which authorizes certification where: (i) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Action satisfies both of those conditions.

### 1.      Common Questions of Law and Fact Predominate

As the Supreme Court has held, "[p]redominance is a test readily met in certain cases alleging . . . securities [claims]." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also Basic Inc. v. Levinson*, 485 U.S. 224 (1988).  "'Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010).  In making that predominance assessment, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class." *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 210 (S.D.N.Y. 2012).  It is also "well-established that

---

[3]      Beyond satisfying the express requirements of Rule 23(a), the Class is also ascertainable. It is defined by objective, transactional facts – the purchase of GreenSky Class A common stock pursuant or traceable to the Offering Documents – that are readily identifiable by reference to Class members' and Defendants' records.  *See MetLife*, 2017 WL 3608298, at *13; *In re Petrobras Sec. Litig.*, 862 F.3d 250, 269-70 (2d Cir. 2017) ("securities purchases identified by subject matter . . . are clearly objective").

the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat" predominance or class certification.  *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 382 (S.D.N.Y. 2015).

In this case, the principal theories of liability are premised on Sections 11, 12(a)(2), and 15 of the Securities Act.  *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011) (the determination of "whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action").  Under those strict liability statutes, "[i]f a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish [a] *prima facie* case.  Liability against the issuer of a security is virtually absolute, even for innocent misstatements."  *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983) (Securities Act "impos[es] a stringent standard of liability").

Given that the Class "need not allege scienter, reliance, or loss causation," whether the Offering Documents contained materially untrue or misleading statements is the predominant issue in the case.[4]  *Deutsche Bank*, 328 F.R.D. at 80; *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972) (predominance "satisfied [where] the alleged misrepresentations in the prospectus relate to all the investors, [because] the existence and materiality of such misrepresentations obviously

---

[4]     Defendants' alleged affirmative defenses, though not relevant to this motion, also present inherently common issues.  *See, e.g.*, *Constar*, 585 F.3d at 785 ("We also note that, although loss causation is an affirmative defense in a §11 case, this defense would not defeat predominance []. . . .  Any affirmative defense on this ground would present a ***common*** issue − not an individual one.") (emphasis in original).  Similarly, although certification of a Securities Act class pursuant to Rule 23(b)(3) does not require "a finding that damages are capable of measurement on a classwide basis" (*Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402 (2d Cir. 2015)), here the class-wide methodology for calculating damages is fixed by statute and therefore common to all Class members.  *See* 15 U.S.C. § 77k(e); *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 235 & n.69 (S.D.N.Y. 2012).

present important common issues"); *MF Glob. Holdings*, 310 F.R.D. at 237 (same). Moreover, "proof of [a defendant's] alleged misrepresentations and/or omissions are susceptible to generalized proof." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008). The common questions of law and fact here are therefore also the predominant questions at issue.

### 2.     A Class Action Is the Superior Means of Resolving This Dispute

"Securities suits easily" satisfy Rule 23(b)(3)'s second requirement, that a class action is superior to other methods for adjudicating the controversy, "because 'the alternatives are either no recourse for thousands of stockholders' or 'a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake.'" *MF Glob. Holdings*, 310 F.R.D. at 239.

The same logic applies here. With thousands of geographically dispersed Class members, the alternative to resolving this dispute as a class action is a multiplicity of suits throughout the United States, risking conflicting decisions and a severely inefficient administration of justice – precisely the "evil that [class actions were] designed to prevent." *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979); *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130, 141 (S.D.N.Y. 2012) ("Concentrating litigation in this forum is desirable because the Court is familiar with the history of this case, having ruled on earlier motions and discovery disputes."). Moreover, "in the absence of class certification . . . many putative class members – particularly, retail investors – would also be discouraged from even seeking legal relief as their potential recovery would be outweighed by the transaction costs of individual litigation." *Livent*, 210 F.R.D. at 518. Nor is there any reason to expect difficulties in the management of this case as a class action. *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02-CV-4483 (RCC), 2007 WL 1280640, at *8 (S.D.N.Y. Apr. 30, 2007) ("[I]n Rule-23(b)(3) securities fraud cases, this Circuit has expressed a strong preference in favor of using judicial management tools, rather than refusing to certify a class for management reasons."). Thus, the class action device is superior to any other means to adjudicate this Action.

E.      **The Court Should Appoint Lead Plaintiffs' Choice of Counsel as Class Counsel Under Rule 23(g)**

In appointing class counsel, the Court should take into account the factors set forth in Rule 23(g), although the ultimate requirement remains that class counsel will "fairly and adequately represent the interests of the class," which as set forth above, they unquestionably will do. *MetLife*, 2017 WL 3608298, at \*16-17; *supra* Section III.C.4.  The Rule 23(g) factors include: "the work counsel has done in identifying or investigating potential claims in the action"; "counsel's experience in handling class actions" along with "counsel's knowledge of the applicable law"; and "the resources that counsel will commit to representing the class."  These considerations all militate in favor of appointing Lead Counsel as Class Counsel.

Lead Counsel are well qualified to represent the Class here.  Both firms have extensive experience in class action litigation, including securities class actions, and through their efforts have achieved billions of dollars in recoveries for investors.  *See* Toll Decl. Exs. E-F (Lead Counsel's firm resumes).  Courts have regularly appointed Lead Counsel to represent classes of investors, and have praised Lead Counsel's work in that regard.  *See, e.g.*, *In re Braskem Sec. Litig.*, No. 15-CV-5132 (PAE), Dkt. No. 133 (Tr. of Feb. 21, 2018 settlement hearing) (Engelmayer, J.: "I just want to thank all of you really [including Cohen Milstein] for the excellent lawyering.  It's a pleasure … to get lawyering of this caliber. … It's my pleasure to have presided over this case."); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08-CV-8781(KPF), Dkt. No. 355 (Tr. of July 31, 2015 settlement hearing) (Failla, J.: "I don't want to demean this by saying that fortune favors the brave, but that is what happened here.  [Cohen Milstein] took on an enormous amount of risk and stuck with it for nearly seven years."); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08-cv-8093-LTS, Dkt. No. 289 (Tr. of May 27, 2015 settlement hearing) (Swain, J.: "this hard fought [including by Cohen Milstein] settlement which is very beneficial to the members of the classes,

[is] impressive"); *Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of Am., NA*, No. 12-cv-2865-KBF, Dkt. No. 334 (Tr. of Mar. 12, 2015 settlement hearing) (Forrest, J.: "[T]his is a very, very good result for the plaintiffs … the vigorously fought class action here and well represented class action is something of which [Scott+Scott and Cohen Milstein] can be proud …"); *N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp. PLC*, No. 08-cv-5093-LAP, Dkt. No. 284 (Tr. of Oct. 28, 2014 settlement hearing) (Preska, J.: "this was one of the most interesting and different class actions I've seen… Job well done [by Cohen Milstein, among others]."); *N.Y. Univ. v. Ariel Fund Ltd.*, No. 603803/08, slip. op. at 9-10 (N.Y. Sup. Ct. Feb. 22, 2010) ("It is this Court's position that Scott+Scott did a superlative job in its representation, which substantially benefited Ariel . . . .  For the record, it should be noted that Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case . . . .  They have possessed a knowledge of the issues presented and this knowledge has always been used to the benefit of all investors.").  Based on their experience, Lead Counsel investigated the claims at issue, drafted a complaint that coupled with their opposition briefing survived Defendants' motions to dismiss, and are now further pursuing those claims in discovery.  Moreover, as demonstrated by their track record in other securities class actions, Lead Counsel have the resources to effectively pursue and vigorously prosecute those claims on behalf of the Class.

Lead Plaintiffs therefore respectfully submit that Lead Counsel should be appointed Class Counsel, as courts have done under similar circumstances.  *MF Glob. Holdings*, 310 F.R.D. at 240 (selecting as Class Counsel the two firms that had litigated the case as Lead Counsel, noting that "these two firms have vigorously pursued Plaintiff's claims to date . . . and have significant experience representing classes in other securities class actions," in addition to "demonstrat[ing]

knowledge of the applicable law and [having] committed significant resources to its representation of Plaintiff"); *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 147 (S.D.N.Y. 2019).

## III.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (i) certify this Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (ii) certify Lead Plaintiffs as representatives of the proposed Class; and (iii) appoint Lead Counsel as Class Counsel.

Dated: February 21, 2020                          Respectfully submitted,

By: */s/ Steven J. Toll*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (admitted *pro hac vice*)
S. Douglas Bunch (SB-3028)
1100 New York Avenue, N.W.  |  Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax.: (202) 408-4699
stoll@cohenmilstein.com
dbunch@cohenmilstein.com

Alice Buttrick (5444120)
Jessica (Ji Eun) Kim (5326129)
88 Pine St.  |  14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax.: (212) 838-7745
abuttrick@cohenmilstein.com
jekim@cohenmilstein.com

Manuel J. Dominguez (admitted *pro hac vice*)
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel.: (561) 515-1400
Fax.: (561) 515-1401
jdominguez@cohenmilstein.com

**SCOTT + SCOTT ATTORNEYS AT LAW LLP**
Max Schwartz (MS-2517)
230 Park Avenue, 17th Floor
New York, NY 10169

Tel.: (212) 223-6444
Fax.: (212) 223-6334
mschwartz@scott-scott.com
tlaughlin@scott-scott.com

*Attorneys for Lead Plaintiffs Northeast Carpenters
Annuity Fund, El Paso Firemen & Policemen's
Pension Fund, and the Employees' Retirement
System of the City of Baton Rouge and Parish of
East Baton Rouge*