```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   IN RE GREENSKY SECURITIES
     LITIGATION,
 4
                                            18 CV 11071 (AKH)
 5
                                            Telephone Conference
 6   ------------------------------x
                                            New York, N.Y.
 7                                          May 26, 2020
                                            2:30 p.m.
 8   Before:

 9                   HON. ALVIN K. HELLERSTEIN,

10                                          District Judge

11                         APPEARANCES

12   COHEN MILSTEIN SELLERS & TOLL PLLC
          Attorneys for Plaintiffs
13   BY:  S. DOUGLAS BUNCH
          STEVEN J. TOLL
14        JESSICA KIM
          -and-
15   SCOTT + SCOTT LLP
     BY:  MAX SCHWARTZ
16        LAUREN M. McCABE

17   CRAVATH SWAINE & MOORE LLP
          Attorneys for Defendant GreenSky and the
18        Individual Defendants
     BY:  KARIN A. DeMASI
19        LAUREN R. KENNEDY

20   SUSSMAN GODFREY LLP
          Attorneys for Defendants Joel Babbit, John Flynn,
21        Nigel Morris Gregg Freishat, and Robert Sheft
     BY:  SHAWN J. RABIN
22        ARI RUBEN

23   WILLKIE FARR & GALLAGHER LLP
          Attorneys for the Underwriter Defendants
24   BY:  TODD G. COSENZA
          SARAH WASTLER
25
```

1           MR. TOLL:  Good afternoon, your Honor, for the
2    plaintiffs, Steven Toll and Doug Bunch from Cohen Milstein.
3           THE COURT:  Steven Toll and Doug Bunch.
4           MR. SCHWARTZ:  Good afternoon, your Honor.  Also for
5    the plaintiff, Max Schwartz and Lauren McCabe from Scott +
6    Scott.
7           THE COURT:  Who will be speaking for the plaintiffs?
8           MR. TOLL:  Judge, myself and Doug Bunch, if needed.
9           THE COURT:  Just one.
10          Any other plaintiffs?
11          For the defendant.  Is Ms. DeMasi here?
12          MS. DeMASI:  Yes.  Good afternoon.
13          THE COURT:  How are you, Ms. DeMasi?
14          MS. DeMASI:  I'm fine.  How are you, your Honor?
15          THE COURT:  Well.  Thank you.
16          MS. DeMASI:  I am joined this afternoon by my
17   colleague, Lauren Kennedy, also of Cravath, and I will be
18   speaking on the conference.
19          THE COURT:  Are there other defendants?
20          MR. COSENZA:  Yes, your Honor.  Todd Cosenza and Sarah
21   Wastler from Willkie Farr & Gallagher for the underwriter
22   defendants.  I hope your Honor is staying staff and healthy.
23          THE COURT:  Thank you.
24          Mr. Cosenza, who is with you?
25          MR. COSENZA:  Sarah Wastler from Willkie Farr.

1   THE COURT:  Who else?

2   MR. RABIN:  Good afternoon, your Honor, this is Shawn
3   Rabin from Sussman Godfrey.  We represent some of the
4   individual defendants.  And on the call with me is my
5   colleague, Ari Ruben.

6   THE COURT:  How are you both?

7   MR. RABIN:  Doing well, your Honor.  How are you?

8   THE COURT:  OK.

9   Anybody else?

10  Since the last time, you were supposed to have been
11  begun discovery in relationship to the plaintiffs' motion for
12  class certification.

13  Mr. Toll, where were we with that?

14  MS. WASTLER:  Your Honor, Ms. DeMasi and have spoken
15  yesterday and today and believe we are in a position where the
16  defendants will not oppose class certification.

17  THE COURT:  Ms. DeMasi, shall I sign the plaintiffs'
18  order?

19  MS. DeMASI:  Your Honor, I believe the way that the
20  case law contemplates a situation where defendants do not
21  oppose class certification is that the parties would agree on
22  proposed findings so that the Court can make findings under
23  Rule 23.  It would indicate that defendants do not oppose, and
24  we would submit that to your Honor, and we are happy to do that
25  on whatever time frame pleases your Honor.

1     THE COURT:  What's convenient to you?

2     MS. DeMASI:  Mr. Toll, I'll turn it over to you, as I
3  imagine you may draft the findings.

4     MR. TOLL:  I would say by the end of the week, Judge,
5  is probably workable.

6     THE COURT:  Why don't you do it on June 1 at noon.

7     MR. TOLL:  We will do that.  Thank you, Judge.

8     THE COURT:  You'll submit a consent order providing
9  the class certification by June 1.

10    Let me ask you about some of the provisions.  Is it
11 contemplated that you will be actually distributing a class
12 notice?

13    MR. TOLL:  I would think so, your Honor.

14    THE COURT:  The answer is no.  What's the point of
15 certifying a class without notice?

16    MR. TOLL:  No.  I'm sorry.  I said I would think so,
17 meaning yes.  Sorry.

18    THE COURT:  Tell me what's contemplated.

19    MR. TOLL:  We have not discussed the timing of that
20 with defense counsel.  But, you know, I would suspect we would
21 just draft up a notice and send it to them to look at to see if
22 we could agree and submit it for your Honor's consideration.

23    THE COURT:  And when would you propose to actually
24 give that notice?

25    MR. TOLL:  I would say in the next few weeks, two to

1     three weeks, your Honor, sounds reasonable.

2             THE COURT:  Yes.  So we are talking about actually
3     distributing your notice in June.  I ask that because in
4     previous class actions I found after I granted the class motion
5     and I certified a class that the actual notice for the class
6     did not come about until sometimes years later in connection
7     with a settlement.  If we're certifying a class now, I think we
8     should actually distribute the class and allow opt-outs to
9     register.

10            MR. TOLL:  I absolutely agree, your Honor.

11            THE COURT:  You will provide dates in your proposed
12    order that will work out a provision for settling a class
13    notice by a certain date and providing for the -- what comes
14    after that, an opt-out period?  And then what do I do?  Do I
15    just tuck it away, or is there a hearing involved afterwards,
16    or what?

17            MR. TOLL:  No, your Honor.  I think you could just
18    wait, just sit on the sideline, as the case goes forward.

19            THE COURT:  We will just have the certification.  You
20    will report to me.  You will build in a reporting date and tell
21    me about any opt-outs and the like.

22            What kind of notice will you be giving?  How many
23    shareholders do we have, approximately?

24            MR. TOLL:  I don't know the answer to that.  I don't
25    know if defense counsel has a better feel for that, you know,

1  because so much of the securities is generally held in a
2  discreet name --
3          THE COURT: Ms. DeMasi might know.
4          MS. DeMASI: Your Honor, I don't have that information
5  as I'm here. I'm happy to inquire and confer with Mr. Toll,
6  but unfortunately I don't have an accurate number to give your
7  Honor on this call.
8          THE COURT: What would be the best method possible to
9  give actual notice?
10         MR. TOLL: I would say, you know, by mail. Again,
11 usually, the defendants will provide to us the list of holders
12 that they have, and then usually we would send out notices to
13 brokerage houses to ask them for the names of individuals.
14         Actually, I'll amend slightly what I said before. We
15 can certainly provide the notice documentation to the Court in
16 a few weeks, but it probably would not go out over the next
17 couple of months because we would have to first get your
18 Honor's approval to the notice and then send it out to the
19 names and addresses the defendants provide us of holders, and
20 then send it out also to brokerage firms, and they usually take
21 a month or so or more, who knows --
22         THE COURT: Build in five days for my review and
23 comment, and then we will work out a schedule towards the end.
24         Will we have some kind of a web page?
25         MR. TOLL: We can do that, your Honor. I am not sure

1  on an initial notice it's something that's necessary, but we
2  could, if your Honor wishes us to.
3              THE COURT:  I'm in favor of it.  So anybody in the
4  class who wishes to keep abreast of what's happening in the
5  litigation would be able to know that, particularly would be
6  able to know what happens when we meet and you give reports.
7  Yes, I think there should be some kind of web page.
8              Ms. DeMasi, what does the notice that is given in your
9  10-K indicates about this lawsuit?
10             MS. DeMASI:  There is a litigation disclosure, your
11 Honor, that is, it discloses the fact that the lawsuit and the
12 pending state court case, which I'm happy to address --
13             THE COURT:  You don't need to address that.  I just
14 wanted to know what the thing was.
15             MS. DeMASI:  A disclosure of the litigation and the
16 fact of the litigation.
17             THE COURT:  I think what you also ought to have is a
18 sentence that will refer any interested party to the web page
19 that the plaintiff poses.  If you want to be participating in
20 that web page, that would also be fine.  It would also be a
21 good idea that you both have joint involvement in the web page,
22 and that goes for the other defendants as well.
23             MS. DeMASI:  Understood, your Honor.
24             THE COURT:  Would you build that in as well.
25             MS. DeMASI:  I will certainly raise that with our

1  client and, yes, if your Honor is asking for that, we will
2  build that in.  I'm happy to cooperate with Mr. Toll and get
3  whatever information we need to with respect to class notice.
4          THE COURT:  Excellent.  So much for the notice.
5          Where do you stand on discovery?  Is there going to be
6  any class discovery?  I guess not.
7          MR. TOLL:  No, your Honor.  We have discussed, Ms.
8  DeMasi and I, a schedule, and we are pretty close to agreement
9  on something to submit to the Court of what we envision as a
10 reasonable schedule for merits discovery and substantive motion
11 practice for your consideration.
12         THE COURT:  The next step would be production of
13 documents, interrogatories, and the like, the written
14 discovery.
15         How long a period do you envision for that, Mr. Toll?
16         MR. TOLL:  Well, what we have tentatively agreed
17 upon -- just so your Honor knows, we have been in discussion
18 over the last four months, since we last met with them.  Much
19 of it has been on class certification issues and plaintiffs'
20 discovery.
21         But we have also started discussing in depth the
22 defendant's discovery.  And as your Honor may know, we served
23 our document requests right after the last conference.  But the
24 defendants are expecting that they believe they can produce a
25 substantially complete document production by the end of

1   August, so that is what we will be waiting on.  It would
2   hopefully come in a rolling production, and I don't know when
3   Ms. DeMasi could say when they might start, but she believes
4   they can complete it by the end of August.
5           THE COURT:  So I would like to meet with you after the
6   written discovery and before the depositions.  I don't think
7   you need to concern yourself now with identifying which
8   depositions you would take, but I would like you to have that
9   in mind when we next meet.
10          If I schedule our next meeting for September, Ms.
11  DeMasi, would that be too quick?
12          MS. DeMASI:  No.  I think that would be appropriate,
13  your Honor.
14          THE COURT:  How about if we do it on the 16th at 2:30,
15  September 16 at 2:30.
16          MS. DeMASI:  That would be just fine.
17          MR. TOLL:  Fine with us, your Honor.
18          THE COURT:  Say again, Mr. Toll.
19          MR. TOLL:  I'm saying that's fine with us as well,
20  your Honor.
21          THE COURT:  I'm assuming, by fixing this date, that by
22  August 31, all discovery will be completed, not counting
23  depositions, but all of the production of documents or
24  interrogatory answers and the like.
25          Is that too ambitious?  We can enlarge the schedule.

1  What do you think, Mr. Toll?

2             MR. TOLL:  No.  I think that is workable, your Honor.

3             THE COURT:  Ms. DeMasi.

4             MS. DeMASI:  Your Honor, I agree certainly with

5  respect to the document production and some written

6  interrogatories, for instance.  I would say that I think the

7  parties contemplate that discovery such as RFAs, requests for

8  admissions, or contention interrogatories might be more

9  efficient closer to the end of fact discovery, after some

10 depositions have been taken.  So that's the exception with

11 respect to that.

12            THE COURT:  I agree with you.  I find that it's a

13 useless exercise too early in the case.

14            My philosophy is this.  You need a document

15 production.  You are going to have to agree on various search

16 terms.  The interrogatories are relatively useless, except

17 ancillary to the document production.  They shouldn't be asking

18 for admissions or contentions or anything like that.  They

19 should be focused precisely on aiding discovery, identifying

20 witnesses, helping to produce documents, and the like.

21            I'd like to assume that by August 31, all of this work

22 will be finished, the document production will be complete, and

23 you will be ready for the next stage, which will be the

24 depositions.

25            And my purpose in having the meeting on September 16

1   is that we will settle at that time who will take depositions,

2   how many depositions there will be and the like, and set a

3   closure date for the taking of depositions.

4           MR. TOLL:  Judge, just so you know, Ms. DeMasi and I

5   have discussed that.  And subject to any changes, we were

6   focusing on maybe a deadline for completing depositions, other

7   than experts, by November 30.  So that was our tentative

8   thought, is document production by the end of August and then

9   September, October, November for fact depositions is what we

10  were generally thinking.

11          THE COURT:  Any date you give now is more a hope than

12  a realistic plan.  Focus on getting your discovery finished by

13  August 31, and we will discuss a deposition plan and how long

14  it should take on September 16.

15          MR. TOLL:  Very good.

16          MS. DeMASI:  Yes, your Honor.

17          THE COURT:  Mr. Cosenza.

18          MR. COSENZA:  That's fine, your Honor.  We are

19  amenable to that, and we will work with complying with the

20  August 31 date.

21          THE COURT:  Mr. Rabin.

22          MR. RABIN:  I think that all makes sense, your Honor.

23  Thank you very much.

24          THE COURT:  It's all agreed.

25          What else can I do for you today?

1     MR. TOLL:  Your Honor, I think we have covered it for
2  today.  Thank you.
3     THE COURT:  If there are no questions, we can close
4  this meeting, and I'll look forward to seeing you on September
5  16 at 2:30.
6     What do you think of this format?  Have you used it
7  with other judges?
8     MR. TOLL:  Your Honor, we just started to do both
9  telephone and video conferences and motion hearings and
10 arguments, and still all a learning experience, but I think it
11 works.
12    THE COURT:  Ms. DeMasi?
13    MS. DeMASI:  I agree.  I've had telephonic conferences
14 now and then over time and, obviously, more, in the recent last
15 couple of months, and I think it works well, and the court
16 staff are incredibly helpful in making the logistics run
17 smoothly, so we are very grateful for that.
18    THE COURT:  I will not look forward to this format for
19 an actual replacement for face-to-face meetings when times get
20 better, right?
21    MR. COSENZA:  I agree with that, your Honor.  Face to
22 face is much better, but we are doing the best we can do under
23 the current circumstances.
24    THE COURT:  Stay well, everyone.
25    (Adjourned)