**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GREENSKY SECURITIES LITIGATION | Case No. 18-cv-11071 (AKH) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT**

# TABLE OF CONTENTS

Introduction .................................................................................................................1

Summary of the Litigation and Settlement.................................................................2

Argument....................................................................................................................4

I.   The Proposed Settlement Warrants Preliminary Approval ...................................4

   A.   The Proposed Settlement Satisfies Rule 23(e)(2) and the Relevant *Grinnell* Factors ........6

      1.   Lead Plaintiffs and Co-Lead Counsel Have Adequately Represented the Class ..........6

      2.   The Proposed Settlement Was Negotiated at Arm's Length ......................................7

      3.   The Relief Provided to the Class Is Adequate...........................................................7

      4.   Class Members Are Treated Equitably by the Plan of Allocation ............................14

   B.   The Stage of the Proceedings and Amount of Discovery Completed Supports Preliminary Approval ....................................................................................................15

II.  The Proposed Form and Method of Class Notice Are Adequate............................16

   A.   The Scope of the Notice Program Is Adequate Under Rule 23 ........................................17

   B.   The Proposed Form of Notice Program Meets the Requirements of Due Process, the PSLRA, and Rule 23 ........................................................................................18

III. Proposed Schedule of Events....................................................................................19

Conclusion ....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Advanced Battery Techs. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................................19

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..........................................................................8, 10

*In re AOL Time Warner, Inc.*,
    No. 02-cv-5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .........................................14, 15

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche
    Bank*, 236 F.3d 78 (2d Cir. 2001)...................................................................................7, 13

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ..................................................................................................6

*In re China Sunergy Sec. Litig.*,
    No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) .........................................13

*Christine Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-MD-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...................................11

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................................5, 8, 9

*Consol. Edison, Inc. v. Ne. Utils.*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004) ...............................................................................17

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ..................................................................................................6

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ..................................................................................................7

*Danieli v. IBM Corp.*,
    No. 08-cv-3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009)..........................................11

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ................................................................................................6

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05-cv-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007).......................................4, 10

*Fresno Cty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
    925 F.3d 63 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 385 (2019) ...........................................11

*In re Glob. Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................9, 19

*Great Neck Cap'l Appreciation Inv. P'ship, LP v. PricewaterhouseCoopers, LLP*,
    212 F.R.D. 400 (E.D. Wis. 2002)...........................................................................................16

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) .........................................................................*passim*

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)...........................................12

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) .......................................................................................7, 15

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    No. 03-CV-4372, 2009 WL 4730185 (D.N.J. Dec. 4, 2009)..................................................13

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................................10

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) .....................................................................................14

*In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*,
    No. 02-MDL-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ...........................................19

*N.J. Carpenters Vacation Fund v. The Royal Bank of Scot. Grp., PLC, et al.*,
    No. 08-cv-5093 (S.D.N.Y. July 18, 2014)..............................................................................18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ...............................................................................................5

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................................................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................................*passim*

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)..................................16

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 16-cv-6728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)................................................8

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
    No. 09-cv-1293, 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ............................................ 13

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................................ 4

*Sykes v. Harris*,
    No. 09-cv-8486, 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ............................................. 9

*In re Take Two Interactive Sec. Litig.*,
    No. 06-cv-1131, 2010 WL 11613684 (S.D.N.Y. June 29, 2010) ......................................... 12

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ............................................................................................ 16

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06-cv-11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) .................................... 6, 19

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................................. 10

**STATUTES**

15 U.S.C. § 77k(e) ...................................................................................................................... 10

Private Securities Litigation Reform Act of 1995 ("PSLRA") ....................................... 16, 18, 19

Lead Plaintiffs Northeast Carpenters Annuity Fund ("Northeast Carpenters"), El Paso Firemen & Policemen's Pension Fund ("El Paso"), and the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge ("CPERS") (collectively, "Lead Plaintiffs") submit this memorandum of law in support of Lead Plaintiffs' unopposed motion for: (i) preliminary approval of the Stipulation of Settlement dated May 24, 2021 ("Stipulation" or "Settlement"), proposing to settle all claims in this action; (ii) approval of the form and manner of notice to Class Members; and (iii) the scheduling of a hearing ("Final Approval Hearing") on final approval of the Settlement and Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Co-Lead Counsel's and Lead Plaintiffs' Litigation Expenses. Subject to the Court's availability, Lead Plaintiffs request that the Court schedule the Final Approval Hearing for a date approximately 110 days after entry of the proposed Preliminary Approval Order (attached as Exhibit A).[1]

## INTRODUCTION

After more than two years of litigation, the Settling Parties agreed to the proposed Settlement that provides for, among other things, an all-cash payment of $27.5 million for the benefit of the Class. The Settlement was reached after extensive litigation, including a substantial investigation preceding the filing of two detailed complaints, full briefing, and oral argument on Defendants' motions to dismiss, and extensive fact discovery, which included the production of over 5.3 million pages of documents by Defendants and various nonparties, and six depositions, including of Lead Plaintiffs and certain of the Underwriter Defendants' employees. The Settlement was thus reached only after the Settling Parties and Co-Lead Counsel were well informed as to the strengths

---

[1] Unless otherwise defined all capitalized terms not defined here have the same meanings as in the Stipulation, filed concurrently with this memorandum.

1

and weaknesses of the claims and defenses and after the Settling Parties participated in mediation with an experienced private mediator, Robert A. Meyer, Esq. of Judicial Arbitration and Mediation Services, Inc. ("JAMS"), over the course of six months. Moreover, the Settlement represents a substantial portion of the potential provable damages suffered by the Class.

Because the proposed Settlement is in the best interests of the Class and provides a meaningful recovery for the Class now, Lead Plaintiffs and Co-Lead Counsel request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation, which will:

(i)     preliminarily approve the Settlement, including all provisions thereof;

(ii)    approve the form and content of the Notice of Proposed Settlement ("Notice") and Summary Notice of Proposed Settlement ("Summary Notice"), attached as Exhibits A-1 and A-2 to the Stipulation, respectively;

(iii)   approve the form and content of the Proof of Claim Form, attached as Exhibit A-3 to the Stipulation;

(iv)    find that the procedures established for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 27(a)(7) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

(v)     schedule the Final Approval Hearing and establish a schedule and procedures for: disseminating the Notice and publishing the Summary Notice; requesting exclusion from the Class; objecting to the Settlement; considering Co-Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Settlement.

## SUMMARY OF THE LITIGATION AND SETTLEMENT

The Action is pending in the United States District Court for the Southern District of New York before the Honorable Alvin K. Hellerstein ("Court"). The initial complaint was filed on November 27, 2018. On March 29, 2019, the Court appointed the Fund Group as Lead Plaintiffs and

Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Scott + Scott Attorneys at Law LLP ("Scott + Scott") as Co-Lead Counsel.

On June 26, 2019, after an extensive investigation, Lead Plaintiffs filed their Consolidated Second Amended Complaint for Violations of the Federal Securities Laws ("Complaint"). The Complaint alleges that Defendants violated the Securities Act by making material misstatements and omissions in GreenSky's registration statement and prospectus (collectively, the "Offering Documents") for its initial public offering ("GreenSky IPO"). Defendants deny each and all of Lead Plaintiffs' allegations. Defendants maintain that they did not make material misstatements or omissions and that they disclosed all information required to be disclosed by the federal securities laws.

The Settling Parties have vigorously litigated this case for more than two years. The Settling Parties briefed and argued Defendants' motions to dismiss the Complaint. After the Court denied the motions to dismiss, extensive class-related discovery ensued, and the Court ultimately certified the Class on June 1, 2020. The Settling Parties then engaged in extensive fact discovery which included the production of over 4.4 million pages of documents by Defendants and six depositions, including of Lead Plaintiffs and certain of the Underwriter Defendants' employees. Separately, Lead Plaintiffs served document and deposition subpoenas on non-parties, including PricewaterhouseCoopers ("PwC"), GreenSky's independent auditor, and FT Partners, an investment banking firm that provided GreenSky with consulting services in connection with the GreenSky IPO, leading to the production of nearly one million more pages of documents. Defendants further served document and deposition subpoenas on additional non-parties, including each of Lead Plaintiffs' investment managers and investment consultants.

Ultimately the Settling Parties engaged a neutral third-party mediator, Robert A. Meyer, Esq., of JAMS, and held settlement discussions. Co-Lead Counsel met with the mediator and Defendants' counsel via videoconference and teleconference several times over the course of six months. Before the mediation, the Settling Parties exchanged extensive written submissions setting forth their positions on liability, damages, and other issues that impacted the risks and potential outcome of the Action. As a result of the arms' length negotiations during the mediation sessions, the Settling Parties agreed on April 6, 2021, subject to Court approval and certain conditions in the Stipulation, to settle the Action in return for a cash payment of $27,500,000 for the benefit of the Class. The Stipulation (together with the exhibits thereto) reflects the final and binding agreement between the Settling Parties.

## ARGUMENT

### I.  The Proposed Settlement Warrants Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for any class action settlement. Though approving a settlement is "within the Court's discretion," the Court should exercise that discretion "in light of the general judicial policy favoring settlement." *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (internal quotations omitted). And "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

A class action settlement approval procedure typically occurs in two stages: (1) preliminary approval, where "prior to notice to the class a court makes a preliminary evaluation of fairness," and (2) final approval, where "notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 691-92 (S.D.N.Y. 2019).

4

"In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

In December 2018, new amendments to Rule 23 took effect that altered the standards guiding a court's preliminary approval analysis. Before these changes took effect, Rule 23 did not specify a standard, and courts in the Second Circuit interpreted Rule 23 to only require that the settlement be "within the range of possible approval." *Id.* Under the new, more exacting standards, a district court must consider whether the Court "will likely be able to … approve the proposal under Rule 23(e)(2)." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019).

To be likely to approve a proposed settlement under Rule 23(e)(2), the Court should find "that it is fair, reasonable, and adequate," after considering four factors: (i) "the class representatives and class counsel have adequately represented the class," (ii) "the proposal was negotiated at arm's length," (iii) "the relief provided for the class is adequate," and (iv) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(1)-(2). Before the 2018 amendments to Rule 23, courts in the Second Circuit considered whether a settlement was fair, reasonable, and adequate under nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[2] The Advisory Committee Notes to the 2018 amendments show that the four new

---

[2] The nine *Grinnell* factors are: (i) "the complexity, expense and likely duration of the litigation," (ii) "the reaction of the class to the settlement," (iii) "the stage of the proceedings and the amount of discovery completed," (iv) "the risks of establishing liability," (v) "the risks of establishing damages," (vi) "the risks of maintaining the class through the trial," (vii) "the ability of the defendants to withstand a greater judgment," (viii) "the range of reasonableness of the settlement fund in light of the best possible recovery," and (ix) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *In re Payment Card*, 330 F.R.D. at 29.

Rule 23 factors were intended to supplement rather than displace these "*Grinnell*" factors. *See* 2018 Advisory Committee Notes to Fed. R. Civ. P. 23, subdiv. (e)(2) ("2018 Adv. Comm. Note"); *In re Payment Card*, 330 F.R.D. at 29 (explaining that the four Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors"). Thus, the discussion below includes both sets of factors, noting where they overlap.[3]

### A.   The Proposed Settlement Satisfies Rule 23(e)(2) and the Relevant *Grinnell* Factors

#### 1.   Lead Plaintiffs and Co-Lead Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires a Court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. "Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

Lead Plaintiffs' interests are aligned with other class members' interests because they suffered the same alleged injuries: losses resulting from allegedly false statements and omissions made in connection with the GreenSky IPO. Because of these alleged injuries, Lead Plaintiffs have an "interest in vigorously pursuing the claims of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Co-Lead Counsel have also shown that "they are qualified, experienced, and able to conduct the litigation, as evidenced in their interactions with the Court as well

---

[3] The Court need not consider the second *Grinnell* factor, which requires the Court to evaluate the reaction of the settlement class, "because consideration of this factor is generally premature at the preliminary approval stage." *In re GSE Bonds*, 414 F. Supp. 3d at 699; *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

as with a mediator." *In re GSE Bonds*, 414 F. Supp. 3d at 692. Thus, Rule 23(e)(2)(A) supports approval.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires procedural fairness, by showing that "the proposal was negotiated at arm's length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Further, a mediator's involvement in settlement negotiations can help show their fairness. *In re Payment Card*, 330 F.R.D. at 35; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (explaining that a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

Here, the proposed Settlement is "the product of serious, informed, non-collusive negotiations," as the Settling Parties' negotiations were conducted at arm's-length, over six months and with the assistance and facilitation of an experienced and well-respected mediator, and the process required all parties and their counsel to assess difficult and uncertain outcomes. *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194 (S.D.N.Y. 2005) (finding proposed settlement the product of non-collusive negotiations where settlement negotiations were facilitated by an experienced and well-respected mediator). Rule 23(e)(2)(B) thus favors preliminary approval.

### 3.    The Relief Provided to the Class Is Adequate

Under Rule 23(e)(2)(C), the Court should determine whether "the relief provided for the class is adequate" after considering (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees,

including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)." This inquiry overlaps significantly with several of the *Grinnell* factors, which may "guide the Court's application of Rule 23(e)(2)(C)(i)." *In re GSE Bonds*, 414 F. Supp. 3d at 693 (citing *In re Payment Card*, 330 F.R.D. at 36).

### a) The Costs, Risks, and Delay of Trial and Appeal

To assess adequacy under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *In re Payment Card*, 330 F.R.D. at 36 (citing the 2018 Adv. Comm. Note). "This inquiry overlaps significantly with a number of *Grinnell* factors," *In re GSE Bonds*, 414 F. Supp. 3d at 693, including (i) the complexity, expense, and likely duration of the litigation (the first *Grinnell* factor), and (ii) the risks of establishing liability and damages (the fourth and fifth *Grinnell* factors).[4]

*First*, the "complexity, expense and likely duration of the litigation" support preliminary approval. *Grinnell*, 495 F.2d at 463. "Courts recognize that securities class actions are generally complex and expensive to prosecute." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("[M]ost securities fraud cases, are complex and challenging as regards both liability and damage."). This case is no different. "It involves numerous defendants and complex issues of fact and law" related to the GreenSky IPO and Offering Documents. *In re GSE Bonds*, 414 F. Supp. 3d at 693-94. And even if plaintiffs "were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery

---

[4] Although courts consider "the risks of maintaining the class through the trial" (the sixth *Grinnell* factor) to be a relevant to the Rule 23(e)(2)(C)(i) inquiry, *In re GSE Bonds*, 414 F. Supp. 3d at 694, it is not relevant here because the Class has already been certified with Defendants' consent.

for several years, if at all*." Sykes v. Harris*, No. 09-cv-8486, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016).

*Second*, the "risks of establishing liability" and "the risks of establishing damages" also favor preliminarily approving the proposed Settlement. *Grinnell*, 495 F.2d at 463. To assess these factors, a court "should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *In re Payment Card*, 330 F.R.D. at 37. These factors do "not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). "Courts approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Id.*

Here, there were substantial risks of establishing liability and damages and further prosecution may have yielded limited or no recovery. Although Lead Plaintiffs defeated the motions to dismiss, this was no guarantee as to continued success in the case. Even if Lead Plaintiffs established Defendants' liability, Lead Plaintiffs would encounter significant loss causation defenses as Defendants would have sought to disaggregate the portion of any decline in the price of GreenSky stock allegedly caused by the alleged false statements and omissions from the portion caused by other confounding factors. Even if they survived summary judgment, Lead Plaintiffs would then have to establish each element of their claims and damages to a jury's satisfaction. Thus, these two *Grinnell* factors also support preliminary approval.

### b)  The Proposed Method for Distributing Relief Is Effective

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." "A claims processing method should deter or defeat unjustified claims, but the court should be alert

to whether the claims process is unduly demanding." Fed. R. Civ. P. 23, 2018 Adv. Comm. Note. Furthermore, while the plan of allocation "must be fair and adequate," it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)). "[N]umerous courts have held ... [that] a plan of allocation need not be perfect." *In re EVCI Career Colls. Holding Corp.*, 2007 WL 2230177, at *11 (collecting cases). The court's "principal obligation is simply to ensure that the fund distribution is fair and reasonable." *In re Am. Bank Note*, 127 F. Supp. 2d at 429-30.

Here, the proposed Plan of Allocation was prepared with the assistance of Lead Plaintiffs' damages consultant, Global Economics Group, which has significant experience in drafting plans of allocation. The Plan of Allocation provides a reasonable, rational basis for Class Members to recover their *pro rata* damages based on the dates of their GreenSky Class A common stock transactions. In particular, the Plan of Allocation allocates losses to all purchases through the date of suit pursuant or traceable to GreenSky's IPO as follows:

(i)     if sold before the opening of trading on November 12, 2018, the Recognized Loss for each such share shall be the purchase price (not to exceed the issue price at the offering of $23.00) minus the sale price;

(ii)    if sold after the opening of trading on November 12, 2018, through the close of trading on August 5, 2019 the Recognized Loss for each such share shall be the purchase price (not to exceed the issue price at the offering of $23.00) minus the sale price (not to be less than $9.92, the closing share price on November 12, 2018); or

(iii)   if retained through the close of trading on August 5, 2019, the Recognized Loss for each such share shall be the purchase price (not to exceed the issue price at the offering of $23.00) minus $9.92, the closing share price on November 12, 2018.

The proposed Plan of Allocation is also fair and reasonable because, for Class Members who purchased shares of GreenSky Class A common stock pursuant or traceable to GreenSky's IPO, the Plan of Allocation calculates damages based on the methodology set forth in the Securities Act. *See* 15 U.S.C. § 77k(e) (limiting damages to the difference between the purchase

price paid per share and either the value of the shares at the time the suit was brought, the price at which the shares were sold in the market before suit, or the price at which the shares were sold after suit but before judgment if less than the difference between the purchase price and value of the shares at the time of suit). The proposed Plan of Allocation should therefore be preliminarily approved. *See Danieli v. IBM Corp.*, No. 08-cv-3688, 2009 WL 6583144, at *5 (S.D.N.Y. Nov. 16, 2009) (approving plan of allocation where it "is rationally related to the relative strengths and weaknesses of the respective claims asserted" and falls within the range of possible approval). This factor thus supports preliminary approval.

### c) Attorneys' Fees and Litigation Expenses

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." The total Settlement Fund will be $27.5 million, plus accrued interest. Co-Lead Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund plus reimbursement of Litigation Expenses. After entry by the Court of an order awarding Co-Lead Counsel's attorneys' fees and Litigation Expenses, "any awarded attorneys' fees and Litigation Expenses shall be paid to Co-Lead Counsel from the Escrow Account by the Escrow Agent." Stipulation ¶ 7.3. If the Settlement is terminated or the fee and expense order is reversed or modified, then Co-Lead Counsel will refund to the Escrow Account any fees paid within 10 business days. *Id.*

Courts in this District have approved fees as high as 25% from comparable class settlement funds, finding that they are well within the applicable range of reasonable percentage fund awards. *See, e.g.*, *Fresno Cty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 66 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 385 (2019) (affirming percentage method and Lead Counsel's award of attorneys' fees of 25% of the settlement fund plus interest); *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-MD-02631, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (awarding 25% fee as

"reasonable in light of the work of Plaintiffs' Counsel, their investment of resources in the case, their prosecution of the action for the benefit of the Class, the risks that they faced in the litigation, and the overall benefit of the Settlement achieved"). The proposed fee of up to 25% of the Settlement Fund thus does not weigh against preliminary approval of the proposed Settlement.

### d)  Agreements Required to be Identified Under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." The Settling Parties have entered into one such agreement, which establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively purchased more than a specified number of shares of GreenSky Class A common stock request exclusion (or "opt out") from the Settlement. Such supplemental agreements are customary in securities class action settlements and their confidentiality "avoid[s] the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) (approving confidentiality of opt-out termination agreement); *In re Take Two Interactive Sec. Litig.*, No. 06-cv-1131, 2010 WL 11613684, at *11-12 (S.D.N.Y. June 29, 2010) (noting side letter agreement and preliminarily approving settlement).

### e)  The Remaining *Grinnell* Adequacy Factors Support Preliminary Approval

Together with the enumerated factors set forth in Rule 23(e)(2)(C), several other *Grinnell* factors are relevant to the adequacy inquiry, including (i) "the ability of the defendants to withstand a greater judgment" (the seventh *Grinnell* factor), and (ii) "the range of reasonableness of the settlement fund in light of the best possible recovery" and "all the attendant risks of litigation" (the eighth and ninth *Grinnell* factors). These factors either favor preliminary approval or, at worst, are neutral.

*First,* although Defendants could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 ("defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair") (citing *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997)).

*Second*, by any measure, the $27.5 million proposed Settlement represents a recovery well within the "range of reasonableness in light of the best possible recovery" and "all the attendant risks of litigation." *See In re GSE Bonds*, 414 F. Supp. 3d at 696 (explaining that courts often consider the eighth and ninth *Grinnell* factors together). According to that expert's analysis, the Settlement represents nearly 14% of Lead Plaintiffs' estimated recoverable damages, discounted for certain potential defenses. Settlements in this range of recovery (and indeed, well below this range) have routinely received approval by courts as representing recoveries that are fair, reasonable, and adequate. *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07-cv-7895, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that "average settlement amounts in securities fraud class actions where investors sustained losses over the past decade ... have ranged from 3% to 7% of the class members' estimated losses"); *see also In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 09-cv-1293, 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (noting that a settlement obtaining 3.5% of the "most aggressive estimate of maximum provable damages … exceeds the average recovery in shareholder litigation" and affirming an average range of 3% to 7% recoveries) (citing *In re China Sunergy*, 2011 WL 1899715, at *5); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372, 2009 WL 4730185, at *7 (D.N.J. Dec. 4, 2009) (approving settlement at "slightly below 10% of the total realizable value of the action" which was "well over the average settlement amounts in securities fraud class actions").

13

The proposed Settlement is also well within the range of reasonableness given "all the attendant risks of litigation," because it will allow the Class to recover a significant portion of their damages now rather than a possible recovery after years of uncertain litigation and a far-from-guaranteed jury verdict. *See In re AOL Time Warner, Inc.*, No. 02-cv-5575, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) (immediate, substantial and concrete benefit of settlement outweighs possibility of higher recovery after trial). Indeed, even if Lead Plaintiffs were to obtain  a favorable jury verdict that would survive the inevitable round of appeals, there could be insufficient Company assets or insurance policy proceeds to satisfy a substantial judgment – or fund a settlement of greater or even equal size to the proposed Settlement – years down the road.

Thus, the seventh, eighth, and ninth *Grinnell* factors are either neutral or support preliminary approval of the proposed Settlement.

### 4.   Class Members Are Treated Equitably by the Plan of Allocation

Finally, Rule 23(e)(2)(d) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23, 2018 Adv. Comm. Note. Under the proposed Plan of Allocation, Claimants will be treated equitably by receiving a *pro rata* share of the recovery based on the "Authorized Claimant's Recognized Loss divided by the total Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund." Ex. A-1 ¶ 34 (Notice of Proposed Settlement). *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* allocation plan "appear[ed] to treat the class members equitably ... and has the benefit of simplicity"). Thus, Rule 23(e)(2)(d) supports preliminary approval of the Settlement.

14

**B.    The Stage of the Proceedings and Amount of Discovery Completed Supports Preliminary Approval**

Along with the factors discussed above, "the stage of the proceedings and the amount of discovery completed" (the third *Grinnell* factor) also supports preliminary approval. To assess this factor, courts examine whether plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement. *In re AOL Time Warner*, 2006 WL 903236, at *10.

Here, the Settling Parties engaged in meaningful, extensive discovery before beginning the mediation process, including the production, and Co-Lead Counsel's review, of more than 4.4 million pages of documents produced bv Defendants and of nearly one million pages of documents produced by third parties, including PricewaterhouseCoopers ("PwC"), GreenSky's independent auditor, and FT Partners, an investment banking firm that provided GreenSky with consulting services in connection with the GreenSky IPO. And the Settling Parties deposed six fact witnesses, including representatives of Lead Plaintiffs and certain of the Underwriter Defendants' employees. And Co-Lead Counsel also retained experts who assisted Co-Lead Counsel in evaluating damages and loss causation issues. That the Settlement followed this discovery and analysis shows that the Settling Parties—and Lead Plaintiffs and Co-Lead Counsel in particular—had extensive information to properly evaluate the strengths and weaknesses of the claims and defenses asserted in the Action, as well as the cost and duration of the litigation if the case did not settle.

This extensive understanding of the strengths and weaknesses of the claims bolsters a preliminary finding that the Settlement is adequate and reasonable. Moreover, here, each of these factors was considered by counsel who are experienced in handling large, complex litigation such as this case, which consideration also supports preliminary approval. *Initial Pub. Offering*, 226 F.R.D. at 194 (preliminarily approving settlement where "[t]he  settling parties are represented by

experienced and talented counsel that share expertise in this field and an extensive knowledge of the details of this case"); *see also Great Neck Cap'l Appreciation Inv. P'ship, LP v. PricewaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("[T]he settlement was reached after PwC's motion to dismiss had been decided and after merits discovery was well underway. Thus, plaintiffs' counsel's evaluation of the case was based on a reasonable amount of information.").

*      *      *

In sum, nothing during the Settling Parties' negotiations of the terms of the Settlement reveals any grounds to doubt the fairness of the Settlement. To the contrary, the substantial recovery for the Class, the extensive investigation and discovery conducted, the Settling Parties' litigation efforts over the course of more than two years, the arm's-length nature of the negotiations, and the participation of an experienced mediator all amply support a finding that the proposed Settlement is well "within the range of possible approval" so as to justify notice to the Class and scheduling of a Final Approval Hearing.

## II.   The Proposed Form and Method of Class Notice Are Adequate

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). The notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The PSLRA and the due process clause of the U.S. Constitution impose similar

16

requirements. *See* 15 U.S.C. § 77z-1(a)(7); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the … members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'").

### A.   The Scope of the Notice Program Is Adequate Under Rule 23

Following a competitive bidding process, Co-Lead Counsel selected Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a highly experienced class action claims administrator, to serve as the Claims Administrator for the proposed Settlement. For nearly three decades, Epiq has administered class action settlements. *See generally* Epiq Class Action & Claims Solutions, Inc., http://www.epiqglobal.com (last visited May 10, 2021). The Settling Parties propose that 21 days after the entry of the proposed Preliminary Approval Order, the Claims Administrator send the Notice of Proposed Settlement (attached as Exhibit A-1 to the Stipulation), which explains the Action and proposed Settlement, to shareholders identified through records maintained by or on behalf of GreenSky, or through brokers holding shares on behalf of beneficial owners. The Settling Parties also propose that the Claims Administrator cause a Summary Notice to be published, which summarizes the Action and the proposed Settlement and explains how to obtain the more detailed Notice and Proof of Claim Form. The Settling Parties also propose that the Summary Notice be published in *Investor's Business Daily* as well as transmitted over *PR Newswire* not later than thirty-five (35) days after the entry of the proposed Preliminary Approval Order (subject to Court approval).

Co-Lead Counsel has also instructed Epiq to maintain a settlement website, at www.Green-SkySecuritiesLitigation.com. This website will explain the Settlement, and include downloadable copies of the Notice, Proof of Claim Form, and Stipulation. Epiq will also maintain a toll-free telephone number for Class Members to call with any questions. The Preliminary Approval Order,

Notice, and Proof of Claim Form will also be available on Co-Lead Counsel's website at www.co-henmilstein.com.

**B.    The Proposed Form of Notice Program Meets the Requirements of Due Process, the PSLRA, and Rule 23**

Here, the proposed Notice also includes all the information required by Rule 23(c)(2)(B), including "the nature of the action" (¶¶ 1, 14-17), "the definition of the class certified" (¶ 2), "the class claims, issues, or defenses" (¶¶ 2, 14-17); (ii) "that a class member may enter an appearance through an attorney if the member so desires" (¶¶ 51, 63); (iii) "that the court will exclude from the class any member who requests exclusion" and "the time and manner for requesting exclusion" (¶¶ 54-66); and (vii) "the binding effect of a class judgment on members under Rule 23(c)(3)" (¶¶ 42-48). Fed. R. Civ. P. 23(c)(2)(V)(i)-(vii). Likewise, the proposed Notice includes all the information required by the PSLRA, including a statement of class members' recovery (¶ 3), a statement of the issues on which the parties disagree (¶ 5), a statement of the attorneys' fees and costs sought (¶ 6), identification of counsel (¶ 7), and a statement of the reasons for the settlement (¶¶ 18-20). *See* 15 U.S.C. § 77z-1(a)(7) (listing required disclosures).

As described above and further outlined in the proposed Preliminary Approval Order, the Claims Administrator will (i) notify Class Members of the Settlement by mailing the Notice and Proof of Claim Form to all potential Class Members who can be identified with reasonable effort, (ii) cause the Summary Notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire*, and (iii) maintain a website with relevant information at www.GreenSkySecuritiesLitigation com. Notice programs such as this are frequently approved in connection with class action settlements. *See, e.g.*, *N.J. Carpenters Vacation Fund v. The Royal Bank of Scot. Grp., PLC, et al.*, No. 08-cv-5093 (S.D.N.Y. July 18, 2014) (ECF No. 270) (approving notice program where notice was mailed to reasonably ascertainable class members and broker-dealer nominees,

summary notice was published, and settlement website and toll-free number were maintained by claims administrator); *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (notice program approved where claims administrator publicized notice to reasonably ascertainable class members and  published summary notice in *Investor's Business Daily* and over *PR Newswire*); *In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*, No. 02-MDL-1484, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007) (notice program approved where claims administrator publicized notice and plan of allocation to class members and published summary notice "in appropriate publications").

Lead Plaintiffs' proposed manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process, Rule 23, and the PSLRA. *See In re Warner Chilcott*, 2008 WL 5110904, at *3; *In re Glob. Crossing*, 225 F.R.D. at 448-49. Thus, Lead Plaintiffs request that the Court approve the form and the content of the proposed Notice.

### III. Proposed Schedule of Events

Lead Plaintiffs propose the following schedule under the proposed Preliminary Approval Order, paragraphs of which are referenced in the chart. This schedule is like those used in similar class action settlements and provides due process for potential Class Members related to their rights concerning the Settlement.

| Event | Proposed Date/Deadline |
|---|---|
| **Deadline to Begin Mailing Long-Form Notice of Settlement to Class Members** | No later than 21 days after Preliminary Approval Order is entered. (¶ 4(a)) |
| **Deadline to Publish Summary Notice** | No later than 35 days after Preliminary Approval Order is entered. (¶ 4(b)) |

| | |
|---|---|
| **Deadline to File Motions for Final Approval of Settlement and for Attorneys' Fees and Reimbursement of Litigation Expenses** | 35 days before Final Approval Hearing. (¶ 8) |
| **Deadline for Receipt of Requests for Exclusion from Settlement** | 21 days before Final Approval Hearing. (¶ 17) |
| **Deadline to File and Serve Objections to Final Approval or to Requests for Attorneys' Fees and Reimbursement of Litigation Expenses** | 21 days before Final Approval Hearing. (¶ 9) |
| **Deadline to Reply to Objections, if any** | 7 days before Final Approval Hearing. (¶ 8) |
| **Deadline to File Papers in Further Support of Final Approval of Settlement or Requests for Attorneys' Fees and Reimbursement of Litigation Expenses** | 7 days before Final Approval Hearing. (¶ 8) |
| **Final Approval Hearing** | Approximately 110 days after the Preliminary Approval Order is entered. Assuming that Order is entered on or about June 11, 2021, the Final Approval Hearing could take place on or around October 1, 2021, subject to the Court's availability. (¶ 7) |
| **Deadline for Submission of Proof of Claim Forms** | 120 days after Preliminary Approval Order is entered. (¶ 14) |

## CONCLUSION

Lead Plaintiffs request that the Court (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of notice to Class Members; (iii) approve the proposed Proof of Claim Form; and (iv) schedule a hearing on Lead Plaintiffs' motion for final approval of the Settlement and Co-Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses. A proposed Preliminary Approval Order is being submitted herewith as Exhibit A to the Stipulation.

Dated: May 24, 2021                    Respectfully submitted,

                                       /s/ *Steven J. Toll*
                                       ───────────────────────────────

                                       COHEN MILSTEIN SELLERS & TOLL PLLC
                                       Steven J. Toll (admitted *pro hac vice*)
                                       S. Douglas Bunch (SB-3028)
                                       Jan Messerschmidt (admitted *pro hac vice*)
                                       1100 New York Avenue, N.W. │ Fifth Floor
                                       Washington, D.C. 20005
                                       Tel.: (202) 408-4600
                                       Fax: (202) 408-4699
                                       stoll@cohenmilstein.com
                                       dbunch@cohenmilstein.com
                                       jmesserschmidt@cohenmilstein.com

                                       Jessica (Ji Eun) Kim (5326129)
                                       88 Pine Street │ 14th Floor
                                       New York, NY 10005
                                       Tel.: (212) 838-7797
                                       Fax: (212) 838-7745
                                       jekim@cohenmilstein.com

                                       Manuel J. Dominguez (admitted *pro hac vice*)
                                       2925 PGA Boulevard, Suite 200
                                       Palm Beach Gardens, FL 33410
                                       Tel.: (561) 515-1400
                                       Fax: (561) 515-1401
                                       jdominguez@cohenmilstein.com

                                       SCOTT + SCOTT ATTORNEYS AT LAW LLP
                                       Max Schwartz (MS-2517)
                                       Tom Laughlin (TL-8888)
                                       230 Park Avenue, 17th Floor
                                       New York, NY 10169
                                       Tel.: (212) 223-6444
                                       Fax: (212) 223-6334
                                       mschwartz@scott-scott.com
                                       tlaughlin@scott-scott.com

                                       *Attorneys for Lead Plaintiffs Northeast Carpenters
                                       Annuity Fund, El Paso Firemen & Policemen's
                                       Pension Fund, and the Employees' Retirement Sys-
                                       tem of the City of Baton Rouge and Parish of East
                                       Baton Rouge*

21