EXECUTION COPY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE GREENSKY SECURITIES LITIGATION | Case No. 18-cv-11071 (AKH) |

## **STIPULATION AND AGREEMENT OF SETTLEMENT**

EXECUTION COPY

This Stipulation and Agreement of Settlement, dated as of May 24, 2021 (the "Stipulation" and the "Settlement," respectively) is made and entered into by and among the following: (i) Northeast Carpenters Annuity Fund ("Northeast Carpenters"), El Paso Firemen & Policemen's Pension Fund ("El Paso"), and the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge ("CPERS") (collectively, "Lead Plaintiffs"), on behalf of themselves and each of the Class Members (as defined below); and (ii) GreenSky, Inc. ("GreenSky" or the "Company"), David Zalik, Robert Partlow, Joel Babbit, Gerald Benjamin, John Flynn, Gregg Freishtat, Nigel Morris and Robert Sheft (the "Individual Defendants," and collectively with GreenSky, the "GreenSky Defendants"), as well as Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC, Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, SunTrust Robinson Humphrey, Inc. (now known as Truist Securities, Inc.), Raymond James & Associates, Inc., Sandler O'Neill & Partners, L.P., Fifth Third Securities, Inc., and Guggenheim Securities, LLC (the "Underwriter Defendants" and collectively with the GreenSky Defendants, "Defendants"), by and through their undersigned respective counsel and subject to the approval of the United States District Court for the Southern District of New York pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.[1] The Settlement is intended by the Settling Parties to fully, finally and forever compromise, resolve, discharge and settle the Released Claims as against the Released Defendants and result in the complete dismissal of this Action (as those terms are defined below) with prejudice, upon and subject to the terms and conditions herein.

---

[1] All terms with initial capitalization not otherwise defined in the text hereof shall have the meanings ascribed to them in paragraph 1 below.

EXECUTION COPY

## I.      THE ACTION

The Action is currently pending in the United States District Court for the Southern District of New York before the Honorable Alvin K. Hellerstein (the "Court"). The initial complaint in this action was filed on November 27, 2018. On March 29, 2019, the Court appointed the Fund Group as Lead Plaintiffs and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Scott + Scott Attorneys at Law LLP ("Scott + Scott") as Co-Lead Counsel.

Lead Plaintiffs filed their Consolidated Second Amended Complaint for Violations of the Federal Securities Laws (the "Complaint") on June 26, 2019. The Complaint alleges that Defendants violated the Securities Act of 1933 by making material misstatements and omissions in GreenSky's registration statement and prospectus (collectively, the "Offering Documents") for its initial public offering (the "GreenSky IPO"). Defendants deny each and all of Lead Plaintiffs' allegations. Defendants contend that they did not make material misstatements or omissions and that they disclosed all information required to be disclosed by the federal securities laws.

The parties have vigorously litigated this case for more than two years. The parties briefed and argued Defendants' motions to dismiss the Complaint. After the Court denied the motions to dismiss, extensive class-related discovery ensued, and the Court ultimately certified the Class on June 1, 2020. The parties then engaged in extensive fact discovery which included the production of over 4.4 million pages of documents by Defendants and six depositions, including of Lead Plaintiffs and certain of the Underwriter Defendants' employees. Separately, Lead Plaintiffs served document and deposition subpoenas on non-parties, including PricewaterhouseCoopers ("PwC"), GreenSky's independent auditor, and FT Partners, an investment banking firm that provided GreenSky with consulting services in connection with the GreenSky IPO, resulting in the production of nearly one million additional pages of documents. Defendants further served

EXECUTION COPY

document and deposition subpoenas on additional non-parties, including each of Lead Plaintiffs' investment managers and investment consultants.

During the course of the Action, the parties engaged a neutral third-party mediator, Robert A. Meyer, Esq. of Judicial Arbitration and Mediation Services, Inc., and held settlement discussions. Co-Lead Counsel met with the mediator and Defendants' counsel via videoconference and teleconference on multiple occasions over the course of six months. On April 6, 2021, the Settling Parties agreed in principle to settle the Action in return for a cash payment of $27,500,000 for the benefit of the Class, subject to approval by the Court. The parties signed a Memorandum of Understanding memorializing that agreement in principle on April 18, 2021. This Stipulation (together with the exhibits hereto) reflects the final and binding agreement between the Settling Parties.

## II.   LEAD PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiffs and Co-Lead Counsel believe that the claims asserted in the Action have merit and that the evidence developed to date supports the claims asserted therein. However, Lead Plaintiffs and Co-Lead Counsel recognize the expense and risk of continued proceedings necessary to prosecute the Action against Defendants through trial and post-trial appeals. Lead Plaintiffs and Co-Lead Counsel also have taken into account the uncertain outcome and the risk of litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. Lead Plaintiffs and Co-Lead Counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Action. Lead Plaintiffs and Co-Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class. Based on their evaluation, Lead Plaintiffs and Co-Lead Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Lead Plaintiffs and the Class.

EXECUTION COPY

## III.   DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Action, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Defendants have also denied, and continue to deny, among other allegations, the allegations that Lead Plaintiffs or the Class have suffered any damages, or that Lead Plaintiffs or the Class were harmed by the conduct alleged in the Action or that could have been alleged in the Action. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action. Defendants' decision to settle the Action is based on the conclusion that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation, and that it would be beneficial to avoid the burden, inconvenience, and expense associated with continuing the Action, and the uncertainty and risks inherent in any litigation, especially in complex cases like this Action.

## <u>TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT</u>

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs, for themselves and the Class Members, and Defendants, by and through their counsel, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the parties from the Settlement, the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

**1.     Definitions.**

As used in this Stipulation, the following terms shall have the meanings specified below.

EXECUTION COPY

1.1.     "Action" means the action pending in this Court under the caption *In re GreenSky Securities Litigation*, Case No. 1:18-cv-11071 (AKH).

1.2.     "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim Form to the Claims Administrator, that satisfies all the requirements set forth on the Proof of Claim Form in accordance with the requirements established by the Court, and who, subject to Court approval, will receive a payment from the Net Settlement Fund.

1.3.     "Claim" means a completed and signed Proof of Claim Form submitted by a Class Member, or on their behalf, to the Claims Administrator in accordance with the instructions on the Proof of Claim Form.

1.4.     "Claimant" means a person or entity that submits a Claim.

1.5.     "Claims Administrator" means Epiq Class Action & Claims Solutions, Inc. ("Epiq").

1.6.     "Class" means all persons and entities who purchased GreenSky Class A common stock pursuant and/or traceable to the Registration Statement and Prospectus (the "Offering Documents") issued in connection with GreenSky's May 25, 2018 initial public offering (the "GreenSky IPO") and were damaged thereby.  Excluded from the Class are Defendants; the officers and directors of the Company; members of their immediate families; and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest; provided, however, that any "Investment Vehicle" shall not be excluded from the Class.  Investment Vehicle means any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange traded funds, fund of funds, and hedge funds, in which any of the Underwriter Defendants have, has, or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but in which any of the Underwriter Defendants alone or together with its respective affiliates is not a majority owner or does not hold a majority beneficial interest.

EXECUTION COPY

1.7.    "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

1.8.    "Class Member" means a person or entity that is a member of the Class and is not otherwise excluded from the Class pursuant to its definition.

1.9.    "IRS Code" means the Internal Revenue Code of 1986, as amended.

1.10.   "Co-Lead Counsel" means the law firms of Cohen Milstein Sellers & Toll PLLC and Scott + Scott Attorneys at Law LLP.

1.11.   "Defendants' Counsel" means the law firms of Cravath, Swaine & Moore LLP, Willkie Farr & Gallagher LLP, and Susman Godfrey LLP.

1.12.   "Effective Date" means the first date by which all the following shall have occurred: (i) the Court has entered the Preliminary Approval Order, substantially in the form annexed hereto as Exhibit A; (ii) the Settlement Amount has been paid into the Escrow Account; (iii) the Court has approved all the material terms set forth in this Stipulation and the proposed Settlement embodied herein, following the provision of the Settlement Notices to the Class and a Final Approval Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; (iv) the time to exercise the termination rights provided in this Stipulation have expired or otherwise been waived; and (v) the Court has entered the Judgment, substantially in the form annexed hereto as Exhibit B, which has become Final.

1.13.   "Escrow Account" means one or more accounts located at the Escrow Agent that are maintained to hold the Settlement Fund, which accounts shall be created, controlled and maintained exclusively by Co-Lead Counsel, acting as agent for Lead Plaintiffs and the Class, and shall be deemed to be in the custody of the Court and remain subject to the jurisdiction of the Court until such time as the Settlement Fund is distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.

EXECUTION COPY

1.14. "Escrow Agent" means EagleBank, who shall be responsible for overseeing, investing, safeguarding, and distributing the Settlement Fund held in the Escrow Account, subject to the supervision and direction of Co-Lead Counsel and pursuant to the terms of this Stipulation and any orders entered by the Court, and acting as agent for Lead Plaintiffs and the Class, as provided in the Escrow Agreement.

1.15. "Escrow Agreement" means the agreement between Co-Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account, including those terms set forth herein.

1.16. "Final" when referring to an order or judgment means: (i) that the time for appeal or appellate review of the order or judgment has expired, and no appeal has been taken; or (ii) if there has been an appeal, (a) that the appeal has been decided by all appellate courts without causing a material change in the order or judgment; or (b) that the order or judgment has been upheld on appeal and is no longer subject to appellate review by further appeal or writ of *certiorari*.

1.17. "Final Approval Hearing" means the hearing set by the Court in the Preliminary Approval Order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to consider, among other things, approval of the Settlement.

1.18. "Judgment" means the proposed order and final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure approving the Stipulation and the proposed Settlement embodied herein.

1.19. "Litigation Expenses" means the reasonable costs and expenses incurred by Co-Lead Counsel in connection with commencing and prosecuting the Action, for which Co-Lead Counsel intend to apply to the Court for reimbursement from the Settlement Fund. Litigation Expenses may also include reimbursement of the reasonable costs and expenses (including lost wages) of Lead Plaintiffs in accordance with 15 U.S.C. § 77z-1(a)(4).

EXECUTION COPY

1.20.   "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court.

1.21.   "Notice" means the Notice of Proposed Settlement, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which is to be sent to members of the Class.

1.22.   "Notice and Administration Costs" means (a) the costs, fees and expenses that are reasonably incurred by the Claims Administrator, as described herein and in the Preliminary Approval Order, in connection with (i) providing notice to the Class and (ii) administering the claims process; and (b) the costs, fees and expenses that are reasonably incurred by the Escrow Agent.

1.23.   "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund prepared by Co-Lead Counsel, in conjunction with Lead Plaintiffs' damages consultant, as set forth in the Notice (or any other plan for the allocation of the Net Settlement Fund among Authorized Claimants that Co-Lead Counsel may propose), that the Court may approve.

1.24.   "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Stipulation and the proposed Settlement embodied therein.

1.25.   "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit 3 to Exhibit A, that a Class Member must complete should that Class Member seek to share in a distribution of the Net Settlement Fund, subject to entry of a Plan of Allocation and a Class Distribution Order that have both become Final.

1.26.   "Released Claims" means all claims, demands, losses, rights, and causes of action of every nature and description, whether known claims or Unknown Claims, that (a) were or could have been asserted in the Consolidated Second Amended Class Action Complaint filed on June 26, 2019 (the "Complaint"), (b) were or could have been asserted in this Action, or (c) could in the future

EXECUTION COPY

be asserted in any forum whether arising under federal, state, common or foreign law, by Lead Plaintiffs or any other member of the Class, or their successors, assigns, executors, administrators, representatives, attorneys, and agents in their capacities as such, which (i) arise out of, are based upon, or relate in any way to any of the allegations, acts, transactions, facts, events, matters or occurrences, representations or omissions involved, set forth, alleged, or referred to in the Complaint or which could have been alleged in this Action, and (ii) arise out of, are based upon, or relate in any way to the purchase, acquisition, holding, sale, or disposition of any GreenSky securities, except that Released Claims do not include claims relating to the enforcement of the Settlement.

(a) "Released Defendants" means Defendants and any and all of their respective immediate family members, parent entities, associates, affiliates or subsidiaries, and each and all of their respective past, present or future officers, directors, stockholders, agents, representatives, employees, attorneys, financial or investment advisors, advisors, consultants, trustees, accountants, auditors, insurers, co-insurers and reinsurers, heirs, executors, general or limited partnerships, personal or legal representatives, estates, trusts, administrators, predecessors, successors and assigns.

1.27.   "Released Defendants' Claims" means any claims relating to the institution, prosecution, or settlement of this Action, except that Released Defendants' Claims do not include claims relating to the enforcement of the Settlement.

1.28.   "Released Plaintiffs" means Lead Plaintiffs and the Class and any and all of their respective immediate family members, parent entities, associates, affiliates or subsidiaries, and each and all of their respective past, present or future officers, directors, stockholders, agents, representatives, employees, attorneys, financial or investment advisors, advisors, consultants, trustees, accountants, auditors, insurers, co-insurers and reinsurers, heirs, executors, general or limited partnerships, personal or legal representatives, estates, trusts, administrators, predecessors, successors and assigns.

EXECUTION COPY

1.29.   "Settlement Amount" means Twenty-Seven Million Five-Hundred Thousand U.S. Dollars ($27,500,000.00).

1.30.   "Settlement Fund" means the Settlement Amount plus any and all income and gains earned thereon, less any losses incurred thereon, after it is deposited into the Escrow Account.

1.31.   "Settling Parties" means Defendants and Lead Plaintiffs, on behalf of themselves and the Class.

1.32.   "Settlement Notices" means the Notice and Summary Notice.

1.33.   "Summary Notice" means the Summary Notice of Proposed Settlement, substantially in the form attached hereto as Exhibit 2 to Exhibit A, to be published as set forth in the Preliminary Approval Order.

1.34.   "Taxes" means any and all taxes, duties and similar charges (including any estimated taxes, withholdings, interest or penalties and interest thereon) arising in any jurisdiction with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes or tax detriments that may be imposed upon the Released Defendants and/or each of their respective counsel (as computed on a "first-dollar" basis) with respect to (a) any income and gains earned by the Settlement Fund for any period during which the Settlement Fund is not treated, or does not qualify, as a Qualified Settlement Fund (within the meaning contemplated in ¶ 5.9 herein) for federal, state or local income tax purposes or (b) any distribution of any portion of the Settlement Fund to Authorized Claimants and other persons entitled hereto pursuant to this Stipulation, excluding any portion of the Settlement Fund returned to Defendants as a result of the termination of the Settlement pursuant to ¶¶ 12.1–.3.

1.35.   "Tax Expenses" means any expenses and costs incurred in connection with the operation and implementation of [subparagraphs 5.1 – 5.12] (including, without limitation, expenses of tax attorneys and/or accountants and/or other advisors and expenses relating to the filing of or failure to file all necessary or advisable tax returns).

EXECUTION COPY

1.36.   "Unknown Claims" means any and all Released Claims that Lead Plaintiffs or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Defendants, and any of the Released Defendants' Claims which Defendants do not know or suspect to exist in his, her or its favor at the time of the release of the Released Plaintiffs, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Released Claims and Released Defendants' Claims, Lead Plaintiffs and Defendants stipulate and agree that upon the Effective Date, Lead Plaintiffs and Defendants shall each, for themselves and all persons claiming by, through, or on behalf of them, expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims that, had they been known, may have affected their decision to enter into this Stipulation, but they are notwithstanding this potential entering into the Stipulation and intend it to be a full, final and permanent resolution of the matters at issue in this Action. Lead Plaintiffs and Defendants acknowledge, and Class Members and Defendants' successors and assigns and any persons or entities claiming through or on behalf of Defendants shall, by operation of law, be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendants' Claims was separately bargained for and was a material element of this Settlement.

EXECUTION COPY

## 2.      Settlement Consideration

2.1.     GreenSky (on behalf of itself and all Defendants) shall pay or cause to be paid Twenty-Seven Million Five-Hundred Thousand U.S. Dollars ($27,500,000.00) into the Escrow Account within thirty (30) calendar days of the later of (i) the date of entry of an order preliminarily approving the Settlement, or (ii) Defendants' receipt of wire and/or mail instructions and a completed Form W-9 for the Escrow Account.   Under no circumstances shall Defendants be required to contribute more to the Settlement Fund than the Settlement Amount.   The Settling Parties agree that the Settlement Fund, plus any interest accrued thereon, is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.458B-1.

2.2.     The Settlement Amount is inclusive of all of Co-Lead Counsel's attorneys' fees and Litigation Expenses that may be awarded by the Court, and all Notice and Administration Costs and Taxes and Tax Expenses, and is the total, full and final amount of all payments to be paid by, or on behalf of, Defendants to Lead Plaintiffs, Class Members, Co-Lead Counsel or any other person or entity acting or purporting to act for the benefit of the Class in this Action, in connection with the Stipulation and the proposed Settlement embodied herein.

2.3.     Immediately upon deposit of the Settlement Amount into the Escrow Account, Defendants shall have no responsibility for the Settlement Fund, including for any loss of principal.

## 3.      CAFA Notice

3.1.     Defendants shall serve any notice of the Settlement required pursuant to the Class Action Fairness Act of 2005 (the "CAFA Notice"), 28 U.S.C. § 1715(b), within the time period set forth in said statute and shall, within three (3) business days after service of such CAFA Notice, notify Co-Lead Counsel that such service has been made. The Settling Parties agree that they will request that, pursuant to 28 U.S.C. § 1715(d), the Final Approval Hearing be scheduled for no earlier than ninety (90) days following the deadline for Defendants to serve the CAFA Notice as stated in this paragraph. The parties agree that any delay by Defendants in timely serving the CAFA Notice will not provide grounds for delay of the Final Approval Hearing or entry of the Judgment. Defendants

EXECUTION COPY

shall be responsible for all costs and expenses related to the creation and service of the CAFA Notice.

## 4.      Releases

4.1.      The obligations incurred pursuant to this Settlement shall be in full and final disposition of the Action as against the Defendants, and shall fully and finally release any and all Released Claims as against all Released Defendants and shall also release all of the Released Defendants' Claims. The Judgment shall, among other things, provide for the dismissal with prejudice of the Action against the Defendants, without costs to any party, except for the payments as expressly provided for herein.

4.2.      Pursuant to the Judgment, upon the Effective Date, each of the Lead Plaintiffs and Class Members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, and any other person claiming by, through or on behalf of them, shall be deemed by operation of law to (a) have released, waived, discharged and dismissed each and every of the Released Claims against the Released Defendants; (b) forever be enjoined from commencing, instituting or prosecuting any or all of the Released Claims against any of the Released Defendants; and (c) forever be enjoined from instituting, continuing, maintaining or asserting, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any person or entity who may claim any form of contribution or indemnity from any of the Released Defendants in respect of any Released Claim or any matter related thereto.

4.3.      Pursuant to the Judgment, upon the Effective Date, each of the Defendants, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, and any other person claiming by, through or on behalf of them, shall be deemed by operation of law to (a) have released, waived, discharged and dismissed each and every of the Released Defendants' Claims against the Released Plaintiffs; (b) forever be enjoined from commencing, instituting or prosecuting any or all of the Released Defendants' Claims against any of the Released Plaintiffs;

EXECUTION COPY

and (c) forever be enjoined from instituting, continuing, maintaining or asserting, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any person or entity who may claim any form of contribution or indemnity from any of the Released Plaintiffs in respect of any Released Defendants' Claim or any matter related thereto.

**5.      Use and Tax Treatment of Settlement Fund**

5.1.    The Settlement Fund shall be held and invested in the Escrow Account as provided in ¶ 2.1 hereof. Upon the Effective Date, any interest earned on the Settlement Fund shall be for the benefit of the Class. If the Effective Date does not occur and the Settlement is terminated, the Settlement Fund shall be returned to Defendants pursuant to the terms of ¶ 12.3 hereof.

5.2.    Pursuant to instructions from Co-Lead Counsel, the Escrow Agent shall invest any portion of the Settlement Fund in excess of $150,000.00 in United States Agency or Treasury Securities secured by the full faith and credit of the United States and having maturities of 180 days or less (or money market or mutual funds comprised solely of such investments), and shall collect and reinvest all interest accrued thereon.  A portion of the Settlement Fund in an amount equal to or less than $150,000.00 may be held in an interest-bearing bank account insured by the Federal Deposit Insurance Corporation. The Released Defendants shall have no responsibility for, interest in, or liability with respect to the investment decisions of the Escrow Agent. The Settlement Fund shall bear all risk of loss related to the investment of the Settlement Amount pursuant to the terms set forth in this paragraph.

5.3.    The Escrow Agent shall not disburse the Settlement Fund from the Escrow Account except as provided in this Stipulation. Any portion of the Settlement Fund held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the Settlement Fund is either distributed or returned to Defendants pursuant to the terms and conditions of this Stipulation.

EXECUTION COPY

5.4.    Subject to the terms and conditions of this Stipulation, the Settlement Fund shall be distributed to pay: (i) Taxes and Tax Expenses; (ii) Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court. The balance remaining in the Settlement Fund after payment of items (i)-(iii) (the Net Settlement Fund), shall be distributed to Authorized Claimants as provided herein.

5.5.    Prior to the Effective Date, the Escrow Agent, without further approval of Defendants or the Court, may pay from the Settlement Fund, subject to the direction and supervision of Co-Lead Counsel, up to $150,000.00 in Notice and Administration Costs actually and reasonably incurred. Prior to the Effective Date, payment by the Escrow Agent of any Notice and Administration Costs exceeding $150,000.00 shall require notice to and agreement from Defendants, through Defendants' Counsel. Subsequent to the Effective Date, without further approval by Defendants, Defendants' Counsel or the Court, the Escrow Agent, subject to the direction and supervision of Co-Lead Counsel, may pay from the Settlement Fund all reasonable and necessary Notice and Administration Costs in excess of any amount paid prior to the Effective Date. Defendants and Defendants' Counsel shall not have any responsibility for, nor any liability with respect to, any Notice and Administration Costs incurred or paid, and shall have no responsibility for, and no liability with respect to, any acts or omissions of the Claims Administrator, Co-Lead Counsel, the Escrow Agent, or their respective agents, with regard to any Notice and Administration Costs.

5.6.    All Taxes shall be considered to be a cost of administration of the proposed Settlement embodied in this Stipulation and shall be timely paid out of the Settlement Fund. The Claims Administrator shall be solely responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund, and the Escrow Agent is authorized to permit the Claims Administrator to withdraw from the Settlement Fund, without prior order of the Court or approval of Defendants, but subject to the supervision of Co-Lead Counsel, such amounts as are necessary to pay Taxes.

EXECUTION COPY

5.7.    After (i) the Effective Date occurs and (ii) entry by the Court of a Class Distribution Order that has become Final, the Claims Administrator shall, subject to the supervision of Co-Lead Counsel, distribute the Net Settlement Fund to Authorized Claimants in accordance with the terms of such Final Class Distribution Order; provided, however, that (notwithstanding anything herein to the contrary) any amounts in the Escrow Account necessary for payment of Taxes and Tax Expenses (including the establishment of adequate reserves for any Taxes or Tax Expenses, as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)), attorneys' fees and Litigation Expenses awarded by the Court and/or Notice and Administration Costs shall remain in the Escrow Account for such purpose.  The Escrow Agent is authorized to permit the Claims Administrator to make the foregoing distributions, subject to Co-Lead Counsel's direction and supervision.

5.8.    If all conditions of the Settlement are satisfied and the Effective Date has occurred, no portion of the Settlement Fund will be returned to Defendants, irrespective of the number of claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. If any portion of the Net Settlement Fund remains following distribution pursuant to ¶¶ 8.1–.13 and is of such an amount that in the determination of the Claims Administrator, in consultation with Co-Lead Counsel, it is not cost effective or efficient to redistribute to the Class, then such remaining funds, after payment of any further Notice and Administration Costs, Taxes and Tax Expenses, shall be donated to a nonsectarian charitable organization(s) certified as tax-exempt under § 501(c)(3) of the IRS Code, to be designated by Co-Lead Counsel.

5.9.    The Settling Parties agree that the Settlement Fund is intended to be a "qualified settlement fund" within the meaning of § 468B of the IRS Code, and Treasury Regulation § 1.468B-1. The Settling Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Claims Administrator shall make reasonable efforts to ensure that the Settlement Fund at all times complies with applicable

EXECUTION COPY

provisions of the IRS Code and U.S. Treasury regulations in order to maintain its treatment as a Qualified Settlement Fund. To this end, the Judgment shall provide that the Settlement Fund is approved by the Court as a Qualified Settlement Fund and the Claims Administrator, with the cooperation of Co-Lead Counsel, shall make reasonable efforts to ensure that the Escrow Agent complies with all applicable provisions of the IRS Code and U.S. Treasury regulations in order to maintain the treatment of the Settlement Fund as a Qualified Settlement Fund. The Settling Parties agree that the Claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for timely filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulations §§ 1.468B-2(k) and (l)) for the Settlement Fund. Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by ¶ 5.6 herein. Upon written request, Defendants will provide to the Claims Administrator the statement described in Treasury Regulation § 1.468B-3(e). The Claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation-back election," as described in Treasury Regulation § 1.468B-1(j), to cause the qualified settlement fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

5.10.   The taxable year of the Settlement Fund shall be the calendar year in accordance with Treasury Regulation § 1.468B-2(j). The Settlement Fund shall use an accrual method of accounting within the meaning of § 446(c) of the IRS Code.

5.11.   All tax returns prepared by the Claims Administrator for the Settlement Fund (as well as any election set forth therein) shall be consistent with ¶¶ 5.6, 5.12 and 12.3, and in all events shall

17

EXECUTION COPY

reflect that all Taxes on the income and gains earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

5.12.    The Released Defendants shall not have any responsibility for, and no liability with respect to, payment of any Taxes, and shall have no responsibility for, and no liability with respect to, the acts or omissions of the Claims Administrator, Co-Lead Counsel, the Escrow Agent, the Administrator, or their agents, with regard to Taxes or Tax Expenses. The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the terms of this Stipulation with regard to Taxes.

**6.    Plan of Allocation**

6.1.    Subject to entry by the Court of a Class Distribution Order that becomes Final, the Net Settlement Fund shall be distributed to Authorized Claimants in accordance with a Plan of Allocation, provided that such Plan of Allocation, after appropriate notice thereof to the Class, has been approved by the Court in an order that has become Final.

6.2.    Defendants and Defendants' Counsel shall have had no role in the preparation of the Plan of Allocation and shall take no position with respect thereto. Defendants shall have no responsibility or liability whatsoever for the Plan of Allocation.

6.3.    The Plan of Allocation is a matter separate and apart from the proposed Settlement between the Settling Parties as embodied in this Stipulation. The Plan of Allocation is not a necessary or material term of this Stipulation and it is not a condition of this Settlement that any Plan of Allocation be approved by the Court or that any order approving a Plan of Allocation becomes Final. Any order by the Court or any appellate court with respect to a Plan of Allocation shall not preclude the Judgment from being deemed Final nor shall it prevent the Effective Date from occurring. None of the Settling Parties may cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to a Plan of Allocation.

EXECUTION COPY

**7.      Attorneys' Fees and Litigation Expenses**

7.1.    Defendants and Defendants' Counsel shall take no position with respect to Co-Lead Counsel's request for an award of attorneys' fees and Litigation Expenses, which shall be paid from the Settlement Fund, and shall have no responsibility for and no liability with respect to the attorneys' fees and Litigation Expenses that the Court may award.

7.2.    The procedure for and amounts of any award of attorneys' fees and Litigation Expenses, and the allowance or disallowance by the Court thereof, are not necessary or material terms of this Stipulation and are not a condition of this Settlement. Co-Lead Counsel shall request that its application for an award of attorneys' fees and Litigation Expenses be considered by the Court separately from (but not prior to) the Court's consideration of the fairness, reasonableness and adequacy of the proposed Settlement embodied herein. Any order or proceedings relating to Co-Lead Counsel's request for attorneys' fees or Litigation Expenses, or any appeal from any order relating thereto or reversal or modification thereof, shall not preclude the Judgment from being deemed Final nor shall it prevent the Effective Date from occurring. None of the Settling Parties may cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to Co-Lead Counsel's application for attorneys' fees and Litigation Expenses.

7.3.    Following entry by the Court of an order awarding Co-Lead Counsel's attorneys' fees and Litigation Expenses (the "Fee and Expense Order"), any awarded attorneys' fees and Litigation Expenses may be paid to Co-Lead Counsel from the Escrow Account by the Escrow Agent, notwithstanding the existence of or pendency of any appeal or collateral attack on the Settlement or any part thereof or the Fee and Expense Order. In the event that the Effective Date does not occur or the Settlement is terminated pursuant to its terms, or if, as the result of any appeal or further proceedings on remand, or successful collateral attack, the Fee and Expense Order is reversed or modified pursuant to a Final court order and attorneys' fees and Litigation Expenses have been paid out of the Escrow Account to any extent, then Co-Lead Counsel shall be obligated and do hereby agree, within ten (10) business days after receiving notice of the foregoing from

19

EXECUTION COPY

Defendants' Counsel or from a court of appropriate jurisdiction, to refund to the Escrow Account such attorneys' fees and Litigation Expenses that have been paid, plus interest thereon at the same rate as would have been earned had those sums remained in the Escrow Account.

## 8.   Administration of the Settlement

8.1.   The Claims Administrator, subject to the supervision of Co-Lead Counsel and the jurisdiction of the Court, shall administer and calculate the Claims submitted by Claimants, oversee distribution of the Net Settlement Fund to Authorized Claimants pursuant to a Plan of Allocation approved by the Court in an Order that has become Final and subject to a Class Distribution Order entered by the Court that has become Final, and perform all claims administration procedures necessary or appropriate in connection therewith.

8.2.   Lead Plaintiffs shall be solely responsible, subject to Court approval, for notice to the Class, administration, and the allocation of the Settlement Amount among Class Members.   Such allocation, or changes to any plan of allocation, shall not affect the finality of the Settlement. Except for GreenSky's obligation to produce information from GreenSky's transfer agent for purposes of providing notice to the Class, Defendants shall not bear any cost or responsibility for notice to the Class, administration, or the allocation of the Settlement Amount among Class Members.  Defendants shall have no responsibility for or interest in the administration or allocation of the Settlement Fund, including the claims administration process, and shall have no role in the management or investment of the Settlement Fund.  Subject to the terms of the Stipulation and the Court's approval, Co-Lead Counsel may pay from the Escrow Account any Notice and Administration Costs without further agreement of Defendants. Defendants and Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

8.3.   The Claims Administrator shall mail the Notice to those Class Members who may be identified through the records maintained by or on behalf of Defendants, and shall publish the Summary Notice, pursuant to the terms of the Preliminary Approval Order.

EXECUTION COPY

8.4.    The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's share of the Net Settlement Fund based upon the Plan of Allocation approved by the Court. The Claims Administrator, subject to the supervision of Co-Lead Counsel, shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Proof of Claim Forms submitted in the interests of achieving substantial justice.

8.5.    Neither Defendants nor any of the Released Defendants shall be permitted to review, contest or object to any Proof of Claim Form or any decision of the Claims Administrator or Co-Lead Counsel with respect to accepting or rejecting any Proof of Claim Form or Claim for payment by a Class Member.

8.6.    Any Class Member who does not timely submit a valid Proof of Claim Form by the deadline set by the Court in the Preliminary Approval Order will not be entitled to receive any distribution from the Net Settlement Fund but will nevertheless be bound by all of the terms of this Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Defendant concerning any Released Claim.

8.7.    For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

    (a)  Each Class Member shall be required to submit a Proof of Claim Form, substantially in the form attached hereto as Exhibit 3 to Exhibit A, supported by such documents as are designated therein, including proof of the claimant's loss, or such other documents or proof as the Claims Administrator or Co-Lead Counsel, in their discretion, may deem acceptable;

    (b)  All Proof of Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Settlement Notices, unless such deadline is extended by order of the Court. Any Class Member who fails to submit a Proof of Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant

EXECUTION COPY

to this Settlement (unless, by order of the Court, late-filed Proof of Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Settlement, including the terms of the Judgment and the releases provided for therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Defendant concerning any Released Claim. A Proof of Claim Form shall be deemed to be submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions set forth on the Proof of Claim Form;

(c)  Each Proof of Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Co-Lead Counsel, who shall determine in accordance with this Stipulation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)  Proof of Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the claimant in writing, by mail, first-class postage pre-paid, to give the claimant the chance to remedy any curable deficiencies in the submitted Proof of Claim Form within a period of twenty (20) days after such notice has been mailed. The Claims Administrator, under the supervision of Co-Lead Counsel, shall notify, in a timely fashion and in writing, by mail, first-class postage pre-paid, all claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose Claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below within twenty (20) days following the mailing of such notice by the Claims Administrator;

(e)  If any claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within the timeframe stated in the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice stating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the

EXECUTION COPY

Court. If a dispute concerning a Claim cannot be otherwise resolved, Co-Lead Counsel shall thereafter present the request for review to the Court; and

(f) The administrative determinations of the Claims Administrator accepting and rejecting Claims shall be presented to the Court for approval by the Court in the Class Distribution Order.

8.8.    By submitting a Claim, a claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claim, including, but not limited to, the releases provided for in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Class Member and the validity and amount of their Claim. No discovery shall be allowed on the merits of this Action or this Settlement in connection with the processing of Proof of Claim Forms. Defendants shall have no right to take any such discovery.

8.9.    The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the later of the Effective Date having occurred; the Court having approved a Plan of Allocation in an order that has become Final; and the Court issuing a Class Distribution Order that has become Final.

8.10.   Lead Counsel will apply to the Court for a Class Distribution Order, *inter alia*: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding Notice and Administration Costs from the Escrow Account (except to the extent that Court approval is not required as specified herein); and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account in specified increments until, in the determination of the Claims Administrator, in consultation with Co-Lead Counsel, it is no longer economically feasible to distribute the remaining funds, at which time any such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to a nonsectarian charitable organization(s) certified as tax-exempt under IRS Code Section 501(c)(3), as designated by Co-Lead Counsel; and (iv) such other relief as is appropriate.

EXECUTION COPY

8.11.    Payment pursuant to the Class Distribution Order shall be final and conclusive against any and all Class Members. All Class Members who did not submit a Claim or whose Claim was not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall be bound by all of the terms of this Settlement, including the terms of the Judgment and the releases provided for therein, and will be permanently barred and enjoined from bringing any action against any Released Defendant concerning any Released Claim.

8.12.    All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

**9.        Objections and Requests for Exclusion**

9.1.    Pursuant to the terms and subject to the conditions set forth in the Preliminary Approval Order, any Class Member may appear at the Final Approval Hearing and show cause why the Stipulation, and the proposed Settlement embodied herein, should or should not be approved as fair, reasonable and adequate and in the best interests of the Class, or why the Judgment should or should not be entered thereon, and/or to present opposition to the Plan of Allocation or to the application of Co-Lead Counsel for attorneys' fees and reimbursement of Litigation Expenses.

9.2.    Pursuant to the terms and subject to the conditions set forth in the Preliminary Approval Order, any putative Class Member may request to be excluded from the Class.

9.3.    The Claims Administrator shall scan and electronically send copies of all requests for exclusion in PDF format (or such other format as shall be agreed) to Defendants' Counsel and to Co-Lead Counsel expeditiously (and not more than two (2) days) after the Claims Administrator receives such a request.

**10.      Preliminary Approval of the Settlement**

10.1.    By no later than May 24, 2021, Lead Plaintiffs, by and through Co-Lead Counsel, with Defendants' consent, shall submit this Stipulation together with the exhibits annexed hereto to the

EXECUTION COPY

Court and shall move for entry of the Preliminary Approval Order, among other things, preliminarily approving the Stipulation and the Settlement embodied herein, approving the contents and method of distribution of the Notice and Summary Notice, approving the contents of the Proof of Claim Form, and setting a date for the Final Approval Hearing.

**11.    Judgment Approving the Settlement**

11.1.    Lead Plaintiffs, by and through Co-Lead Counsel, with Defendants' consent, shall request that the Court, if it approves the Settlement embodied in this Stipulation following the Final Approval Hearing, enter the Judgment, substantially in the form annexed hereto as Exhibit B, pursuant to Rule 54 of the Federal Rules of Civil Procedure.

**12.    Termination Rights**

12.1.    Defendants and Lead Plaintiffs each shall have the right to terminate the Settlement by providing written notice to the other of their election to do so within thirty (30) days of the date on which any of the following occur: (a) the Court declines to enter the Preliminary Approval Order; (b) the Court refuses to approve this Stipulation; (c) the Court declines to enter the Judgment; (d) the Judgment is modified or reversed by the Court of Appeals for the Second Circuit or the U.S. Supreme Court; or (e) the failure of the Effective Date to occur for any reason. In addition, Defendants may terminate this Settlement in accordance with ¶ 12.2. Notwithstanding the foregoing, any decision by the Court or any appeals court with respect to an application for attorneys' fees or Litigation Expenses, or with respect to a Plan of Allocation or a Class Distribution Order, shall not be considered material to this Stipulation, shall not preclude the Judgment from being deemed Final, and shall not be grounds for termination. In the event the Settlement is terminated, the provisions of ¶¶ 12.1–.3 shall survive such termination. The termination rights set forth herein are not intended to limit or impair the Settling Parties' rights under the law of contracts of the State of New York with respect to any breach of this Stipulation.

12.2.    Defendants shall have, in their sole and absolute discretion, the option to terminate this Settlement in the event that the aggregate number of shares of GreenSky Class A common stock

EXECUTION COPY

purchased pursuant and/or traceable to the Registration Statement and Prospectus issued in connection with GreenSky's May 25, 2018 initial public offering by persons or entities who would otherwise be entitled to participate in the Settlement as Class Members, but who timely and validly request exclusion from the Class in accordance with the requirements set forth in the Notice, equals or exceeds the threshold (the "Opt-Out Threshold") calculated pursuant to a separate agreement (the "Supplemental Agreement") executed between Co-Lead Counsel and Defendants' Counsel, which is incorporated by reference into this Stipulation. The Opt-Out Threshold shall remain confidential but may be disclosed *in camera* to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the confidentiality of the Opt-Out Threshold.

12.3.   Except as otherwise provided herein, in the event the Settlement is terminated, this Stipulation, and the Settlement embodied herein, shall be without prejudice, and none of its terms shall be effective or enforceable and the fact of the Settlement shall not be admissible in any trial of this Action, and the Settling Parties shall be deemed to have reverted to their respective status in this Action immediately prior to April 6, 2021, provided that they will in good faith revisit the Court's schedule for the completion of discovery and other pretrial proceedings and for the trial of this Action, and, except as otherwise expressly provided, the Settling Parties shall proceed in all respects as if this Settlement and any related orders had not been entered, and any portion of the Settlement Amount previously paid into the Escrow Account, including, but not limited to, any funds disbursed in payment of attorneys' fees and Litigation Expenses, plus interest thereon at the same rate as would have been earned had those funds remained in the Escrow Account, less any amounts for Taxes paid or owing with respect to interest income and/or gains on the Settlement Amount and/or for Notice and Administration Costs actually incurred and paid or payable, shall be returned by Co-Lead Counsel and/or the Escrow Agent at the direction of Co-Lead Counsel to Defendants within fourteen (14) business days after written notification of such event by

EXECUTION COPY

Defendants' Counsel to Co-Lead Counsel. At the request of Defendants, the Escrow Agent and/or Claims Administrator shall apply for any tax refund owed on the amounts in the Escrow Account and pay the proceeds, after any deduction of any fees or expenses incurred in connection with such application(s), for refund to GreenSky or as otherwise directed.

## 13.    No Admission of Wrongdoing

13.1.    Defendants deny and do not admit any wrongdoing.  Whether or not the Settlement, as embodied in this Stipulation, is approved by the Court, and whether or not this Settlement is consummated, the fact and terms of this Stipulation, including the exhibits annexed hereto and the Supplemental Agreement, the Settlement embodied within it, all negotiations, discussions, drafts and proceedings in connection with this Stipulation, and any act performed or document signed in connection therewith:

(a)    shall not be offered or received against the Released Defendants, Lead Plaintiffs or the other Class Members as evidence of, or be deemed to be evidence of, any presumption, concession or admission by any of the Released Defendants or by Lead Plaintiffs or the other Class Members with respect to the truth of any fact alleged by Lead Plaintiffs or the validity, or lack thereof, of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of the Released Defendants;

(b)    shall not be offered or received against the Released Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Released Defendant, or against Lead Plaintiffs or any of the other Class Members as evidence of any infirmity in the claims of Lead Plaintiffs or the other Class Members;

(c)    shall not be offered or received against the Released Defendants, Lead Plaintiffs or the other Class Members as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as

EXECUTION COPY

against any of the foregoing parties, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement; provided, however, that if the Settlement is approved by the Court, the Released Defendants may refer to this Stipulation to effectuate the protection from liability granted them hereunder;

(d)     shall not be construed against the Released Defendants, Defendants' Counsel, Co-Lead Counsel or Lead Plaintiffs or the other Class Members as an admission or concession that the consideration to be paid hereunder represents the amount which could be or would have been recovered after trial; and

(e)     shall not be construed as or received in evidence as an admission, concession or presumption against Lead Plaintiffs or the other Class Members or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

**14.     Miscellaneous Provisions**

14.1.   All of the exhibits attached hereto and the Supplemental Agreement referenced herein are hereby incorporated by reference as though fully set forth herein and are material terms of the Settlement. Notwithstanding the foregoing, in the event that there is a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of this Stipulation shall control.

14.2.   The Settling Parties intend this Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Lead Plaintiffs or any other Class Members in the Action against the Released Defendants with respect to all Released Claims. Except in the event of the termination of this Settlement, Lead Plaintiffs and Defendants agree not to assert under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the Action was brought or defended in bad faith or without a reasonable basis. The Settling Parties agree that the Settlement Amount and the other terms of this Settlement were negotiated at arms' length and

EXECUTION COPY

in good faith by the Settling Parties and reflect a Settlement that was reached voluntarily based upon adequate information and after consultation with their respective experienced legal counsel.

14.3.    This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their successors-in-interest.

14.4.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

14.5.    The waiver by one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

14.6.    This Stipulation, the exhibits annexed hereto and the Supplemental Agreement incorporated by reference herein, constitutes the entire agreement among the Settling Parties concerning the Settlement, and no representations, warranties or inducements have been made to any Settling Party concerning this Settlement other than the representations, warranties and covenants contained and memorialized in this Stipulation.

14.7.    This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Settling Parties shall exchange among themselves copies of original signed counterparts.

14.8.    Lead Plaintiffs agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Stipulation, and Defendants agree to provide such support as may be reasonably requested by Lead Plaintiffs or Co-Lead Counsel.

14.9.    Each signatory to this Stipulation represents that he or she has authority to sign this Stipulation and any Settlement-related documents on behalf of Lead Plaintiffs or Defendants, as applicable, and that such signatory has the authority to take appropriate action required or permitted to be taken pursuant to this Stipulation to effectuate its terms.

EXECUTION COPY

14.10.  This Settlement shall be binding upon and shall inure to the benefit of the successors and assigns of the Settling Parties hereto, including all Released Defendants and any corporation, partnership, or other entity into or with which any Settling Party hereto may merge, consolidate or reorganize.

14.11.  The administration, consummation and enforcement of the Settlement as embodied in this Stipulation shall be under the authority of the Court and the Settling Parties intend that the Court retain jurisdiction for the purpose of, *inter alia*, entering orders providing for the award of attorneys' fees and Litigation Expenses, the approval of the Plan of Allocation and the Class Distribution Order and enforcing the terms of this Settlement.

14.12.  The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of New York without regard to that State's choice-of-law principles, except to the extent that federal law requires that federal law govern.

14.13.  To the extent there are disputes regarding the interpretation of any term of this Stipulation, the Settling Parties will attempt to resolve any such dispute in good faith. If the Settling Parties fail to resolve the dispute, or in the event of a breach of the terms of the Settlement, any non-breaching Settling Party shall be entitled to bring an action seeking to enforce those provisions, and the exclusive forum for any such action shall be this Court.

14.14.  This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arms' length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

14.15.  No opinion or advice concerning the tax consequences of the Settlement to individual Class Members or any of the Settling Parties or any of the Released Defendants is being given or will be

EXECUTION COPY

given by Co-Lead Counsel and/or Defendants' Counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Class Members will be directed to consult their own tax advisors regarding the tax consequences of the Stipulation, and the Settlement embodied herein, and any tax reporting obligations they might have with respect to it. Each Class Member's determination of the amount of and payment of its tax obligations, including any penalties and interest, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member, and the Released Defendants shall have no liability for such taxes, penalties or interest.

14.16.  All time periods set forth in this Stipulation shall be computed in calendar days, unless expressly provided otherwise, and pursuant to the terms of Rule 6(a) of the Federal Rules of Civil Procedure.

14.17.  All agreements made and orders entered in the Action relating to the confidentiality of information shall survive this Stipulation.

14.18.  The Settling Parties agree to take no action with respect to the Settlement that is intended to, or that would be reasonably expected to, harm the reputation of the other Settling Party (including the Settling Party's officers, directors, employees, agents or attorneys) or that would reasonably be expected to lead to unfavorable publicity for any other Settling Party.

14.19.  The waiver by one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver by any other Settling Party or a waiver of any other prior or subsequent breach of this Stipulation.

14.20.  This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

EXECUTION COPY

14.21.  Nothing in this Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

14.22.  Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

14.23.  Except to the extent explicitly set forth otherwise in this Stipulation, if any Settling Party is required to give notice to any other Settling Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon (a) receipt by hand delivery; (b) mailing by means of pre-paid, overnight courier delivery service or (c) sending of electronic mail, provided that no rejection notice occurs and that identical notice is sent by U.S. Mail, first-class postage pre-paid or pre-paid, overnight courier delivery service. Notice shall be provided as follows:

| | |
|---|---|
| If to Lead Plaintiffs or Co-Lead Counsel: | Cohen Milstein Sellers & Toll PLLC<br>1100 New York Avenue N.W., Suite 500<br>Washington, D.C. 20005<br>Attn: Steven J. Toll<br>stoll@cohenmilstein.com |
| | Scott + Scott Attorneys at Law LLP<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br>Attn: Max R. Schwartz<br>mschwartz@scott-scott.com |
| If to GreenSky, GreenSky's Counsel or to any or all of the Individual Defendants or Their Counsel: | Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>Attn: Karin A. DeMasi<br>kdemasi@cravath.com |
| If to Individual Defendants Robert Sheft, Joel Babbit, Gregg Freishtat, John Flynn or Nigel Morris, or Their Counsel, notice shall be provided to the following in addition to Cravath Swaine & Moore LLP: | Susman Godfrey LLP<br>1301 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Attn: Shawn Rabin<br>srabin@susmangodfrey.com |

EXECUTION COPY

| | |
|---|---|
| If to the Underwriter Defendants or the Underwriter Defendants' Counsel: | Willkie Farr & Gallagher LLP 787 Seventh Avenue New York, NY 10019 Attn: Todd G. Cosenza tcosenza@willkie.com |

 

     IN WITNESS WHEREOF, the Settling Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys as of the date first written above.

EXECUTION COPY

_____
CRAVATH, SWAINE & MOORE LLP
Karin A. DeMasi
Lauren Roberta Kennedy
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel.: (212) 474-1059
Fax: (212) 474-3700
kdemasi@cravath.com

*Attorneys for Defendants GreenSky, Inc.,
David Zalik, Robert Partlow, Joel
Babbit, Gerald Benjamin, John Flynn,
Gregg Freishtat, Nigel Morris and
Robert Sheft*


_____
SUSMAN GODFREY LLP
Shawn J. Rabin
Ari Ruben
1301 Avenue of the Americas
New York, NY 10019
Tel.: (212) 336-8330
Fax: (212) 336-8340
srabin@susmangodfrey.com

*Attorneys for Defendants Robert Sheft,
Joel Babbit, Gregg Freishtat, John Flynn
and Nigel Morris*


_____
WILLKIE FARR & GALLAGHER LLP
Todd G. Cosenza
787 Seventh Avenue
New York, NY 10019
Tel.: (212) 728-8000
Fax: (212) 728-9677
tcosenza@willkie.com

*Attorneys    for    the    Underwriter
Defendants*


_____
COHEN MILSTEIN SELLERS & TOLL PLLC
Steven J. Toll (admitted *pro hac vice*)
S. Douglas Bunch (SB-3028)
1100 New York Avenue, N.W. │ Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
dbunch@cohenmilstein.com

Jessica (Ji Eun) Kim (5326129)
88 Pine Street │ 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
jekim@cohenmilstein.com

Manuel J. Dominguez
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel.: (561) 515-1400
Fax: (561) 515-1401
jdominguez@cohenmilstein.com

SCOTT + SCOTT ATTORNEYS AT LAW LLP
Max Schwartz (MS-2517)
Tom Laughlin (TL-8888)
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
mschwartz@scott-scott.com
tlaughlin@scott-scott.com

*Attorneys for Lead Plaintiffs Northeast Carpenters
Annuity Fund, El Paso Firemen & Policemen's
Pension Fund, and the Employees' Retirement
System of the City of Baton Rouge and Parish of East
Baton Rouge*

EXECUTION COPY

CRAVATH, SWAINE & MOORE LLP
Karin A. DeMasi
Lauren Roberta Kennedy
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel.: (212) 474-1059
Fax: (212) 474-3700
kdemasi@cravath.com

*Attorneys for Defendants GreenSky, Inc.,
David Zalik, Robert Partlow, Joel
Babbit, Gerald Benjamin, John Flynn,
Gregg Freishtat, Nigel Morris and
Robert Sheft*


SUSMAN GODFREY LLP
Shawn J. Rabin
Ari Ruben
1301 Avenue of the Americas
New York, NY 10019
Tel.: (212) 336-8330
Fax: (212) 336-8340
srabin@susmangodfrey.com

*Attorneys for Defendants Robert Sheft,
Joel Babbit, Gregg Freishtat, John Flynn
and Nigel Morris*


WILLKIE FARR & GALLAGHER LLP
Todd G. Cosenza
787 Seventh Avenue
New York, NY 10019
Tel.: (212) 728-8000
Fax: (212) 728-9677
tcosenza@willkie.com

*Attorneys for the Underwriter
Defendants*

COHEN MILSTEIN SELLERS & TOLL PLLC
Steven J. Toll (admitted *pro hac vice*)
S. Douglas Bunch (SB-3028)
1100 New York Avenue, N.W. │ Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
dbunch@cohenmilstein.com

Jessica (Ji Eun) Kim (5326129)
88 Pine Street │ 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
jekim@cohenmilstein.com

Manuel J. Dominguez
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel.: (561) 515-1400
Fax: (561) 515-1401
jdominguez@cohenmilstein.com

SCOTT + SCOTT ATTORNEYS AT LAW LLP
Max Schwartz (MS-2517)
Tom Laughlin (TL-8888)
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
mschwartz@scott-scott.com
tlaughlin@scott-scott.com

*Attorneys for Lead Plaintiffs Northeast Carpenters
Annuity Fund, El Paso Firemen & Policemen's
Pension Fund, and the Employees' Retirement
System of the City of Baton Rouge and Parish of East
Baton Rouge*

EXECUTION COPY

_____

CRAVATH, SWAINE & MOORE LLP
Karin A. DeMasi
Lauren Roberta Kennedy
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel.: (212) 474-1059
Fax: (212) 474-3700
kdemasi@cravath.com

*Attorneys for Defendants GreenSky, Inc.,*
*David Zalik, Robert Partlow, Joel*
*Babbit, Gerald Benjamin, John Flynn,*
*Gregg Freishtat, Nigel Morris and*
*Robert Sheft*

*Shawn J. Rabin* /SDB

SUSMAN GODFREY LLP
Shawn J. Rabin
Ari Ruben
1301 Avenue of the Americas
New York, NY 10019
Tel.: (212) 336-8330
Fax: (212) 336-8340
srabin@susmangodfrey.com

*Attorneys for Defendants Robert Sheft,*
*Joel Babbit, Gregg Freishtat, John Flynn*
*and Nigel Morris*

_____

WILLKIE FARR & GALLAGHER LLP
Todd G. Cosenza
787 Seventh Avenue
New York, NY 10019
Tel.: (212) 728-8000
Fax: (212) 728-9677
tcosenza@willkie.com

*Attorneys for the Underwriter*
*Defendants*

_____

COHEN MILSTEIN SELLERS & TOLL PLLC
Steven J. Toll (admitted *pro hac vice*)
S. Douglas Bunch (SB-3028)
1100 New York Avenue, N.W. │ Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
dbunch@cohenmilstein.com

Jessica (Ji Eun) Kim (5326129)
88 Pine Street │ 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
jekim@cohenmilstein.com

Manuel J. Dominguez
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel.: (561) 515-1400
Fax: (561) 515-1401
jdominguez@cohenmilstein.com

SCOTT + SCOTT ATTORNEYS AT LAW LLP
Max Schwartz (MS-2517)
Tom Laughlin (TL-8888)
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
mschwartz@scott-scott.com
tlaughlin@scott-scott.com

*Attorneys for Lead Plaintiffs Northeast Carpenters*
*Annuity Fund, El Paso Firemen & Policemen's*
*Pension Fund, and the Employees' Retirement*
*System of the City of Baton Rouge and Parish of East*
*Baton Rouge*