**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GREENSKY SECURITIES LITIGATION | Case No. 18-cv-11071 (AKH) |

**MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT OF LEAD PLAINTIFFS' COSTS AND EXPENSES**

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

Introduction ............................................................................................................... 1

History and Background of the Case ........................................................................ 4

Argument ................................................................................................................... 4

I.   The Requested Fee Would Be Reasonable Under Either the Percentage or Lodestar
     Method ................................................................................................................ 4

    A.  The Requested Fees Are Reasonable Under the Percentage-of-the-Fund Method ........... 5

    B.  The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method ........ 7

    C.  The Requested Fee Is Fair and Reasonable When Applying the Second Circuit's
       Factors ........................................................................................................... 9

       1.  The Time and Labor Expended ................................................................. 9

       2.  The Magnitude and Complexity of the Action Support the Fee ................................ 10

       3.  Risks Assumed in Pursuing the Action ....................................................... 12

       4.  The Quality of Representation Supports the Requested Fee ................................... 14

       5.  Second Circuit Precedent Supports the 25% Fee as a Reasonable Percentage of
          the Total Recovery ................................................................................... 15

       6.  Public Policy Considerations Support the Requested Fee ................................... 16

    D.  The Approval of Lead Plaintiffs, as Well as the Reaction of the Class to Date,
       Support the Requested Fee ....................................................................................... 16

II.  Co-Lead Counsel's Expenses Are Reasonable and Should Be Approved ........................... 17

III. Lead Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses Under 15
     U.S.C. § 77z-1(a)(4) ............................................................................................... 18

Conclusion ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)...............................15

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................................12

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
No. 04 Civ. 8141(DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) ..................................19

*Arkansas Tchr. Ret. Sys. and Fresno Cnty Emps.' Ret. Assoc. v. Bankrate, Inc.*,
No. 1:13-cv-7183 (JSR), slip op. (S.D.N.Y. Nov. 25, 2014)................................................6, 7

*In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*,
772 F.3d 125 (2d Cir. 2014)................................................................................................18, 19

*In re Bristol-Myers Squibb Sec. Litig.*,
361 F. Supp. 2d 229 (S.D.N.Y. 2005).......................................................................................7

*In re Celestica Inc. Sec. Litig.*,
No. 07-cv-00312, slip op. (S.D.N.Y. July 28, 2015) ................................................................6

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895(DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)................................17

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
No. 1:12-cv-01203-VEC, 2015 WL 13639234 (S.D.N.Y. Oct. 19, 2015) ..............................6

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
954 F. Supp. 2d 276 (S.D.N.Y. 2013).......................................................................................6

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014).......................12

*City of Roseville Emps.' Ret. Sys. v. Energy Sols., Inc.*,
No. 1:09-cv-08633-JGK (S.D.N.Y. Mar. 14, 2013) ..............................................................18

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014).........................................................................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010).........................................8, 15

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ..................................................................................................13

*Cornwell v. Credit Suisse Grp.*,
  No. 08-cv-03758 (VM), slip op. (S.D.N.Y. July 18, 2011) ........................................................7

*In re Deutsche Telekom, AG Sec. Litig.*,
  No. 00-cv-9475, 2005 WL 7984326 (S.D.N.Y. June 14, 2005) ..............................................7

*In re Direxion Shares ETF Trust*,
  No. 09-cv-8011-KBF (S.D.N.Y. May 10, 2013) ...................................................................18

*Dukes v. Wal-Mart Stores, Inc.*,
  964 F. Supp. 2d 1115 (N.D. Cal. 2013) ...............................................................................13

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018)....................................................................................6

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)......................................*passim*

*In re Glob. Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................................14

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)...................................................................................5, 7, 9, 14

*Hicks v. Stanley*,
  No. 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)........................................5, 16

*In re Lucent Techs., Inc. Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2004) ......................................................................................17

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................7, 16

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................14, 15

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)..................................................................................................5

*In re Monster Worldwide, Inc. Sec. Litig.*,
  07-cv-2237 (JSR), 2008 WL 9019514 (S.D.N.Y. Nov. 25, 2008) .....................................6, 19

*In re OSG Sec. Litig.*,
  No. 12-cv-07948, slip op. (S.D.N.Y. Dec. 2, 2015) ...............................................................6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................................7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997) ...................................................................12

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) ..................................................................7

*In re Salomon Analyst Metromedia Litig.*,
    No 02-7966, slip op. (S.D.N.Y. Feb. 27, 2009) ...................................................6

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999) ................................................................................5

*In re Silvercorp Metals, Inc. Sec. Litig.*,
    No. 12-cv-9456 (JSR), slip. op. (S.D.N.Y. Feb. 13, 2015) ..................................6

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................10

*Tchrs.' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...........12, 15

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..................................................................5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .............................................................................................4

*In re Veeco Instruments, Inc. Sec. Litig.*,
    No. 05-MDL-01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)
    ...........................................................................................14, 15, 17, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................5, 7

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................8, 13, 19

## STATUTES

15 U.S.C. § 77z-1(a)(4) ...................................................................................1, 18

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(h) ..............................................................................................1

H.R. Conf. Rep. No. 104-369 (1995) ....................................................................17

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2020 Full-Year Review* (NERA 2021) ...............................................6

iv

Court-appointed Co-Lead Counsel, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Scott + Scott Attorneys at Law LLP ("Scott + Scott"), respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 23(h), for an award of attorneys' fees in the amount of 25% of the Settlement Fund, or $6,875,000 (with interest on such amount at the same rate as earned by the Settlement Fund).[1] Co-Lead Counsel also seek reimbursement of $200,786.46 in Litigation Expenses reasonably and necessarily incurred to prosecute and resolve the Action and $16,092.70 in Lead Plaintiffs' reasonable costs and expenses pursuant to 15 U.S.C. § 77z-1(a)(4).

## INTRODUCTION

After more than two years of litigation, the Settling Parties agreed to the proposed Settlement that provides for, among other things, an all-cash payment of $27.5 million for the benefit of the Class. The Settlement was reached after extensive litigation, including a substantial investigation preceding the filing of two detailed complaints, full briefing and oral argument on Defendants' motions to dismiss, and extensive fact discovery, which included the production of over 5.3 million pages of documents by Defendants and various non-parties and six depositions, including of Lead Plaintiffs and certain of the Underwriter Defendants' employees. Co-Lead Counsel's effort in achieving this result has been without compensation of any kind and their fee and reimbursement of expenses have been wholly contingent upon the result achieved. The requested fee is reasonable given the result obtained and is consistent with the fees awarded in similar actions in the Second

---

[1] The Court is respectfully referred to the accompanying Joint Declaration of Steven J. Toll and Max Schwartz in Support of Motions for Final Approval of the Proposed Settlement and Approval of the Plan of Allocation, and for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Decl."), for a detailed description of the case and the proposed Settlement. Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated May 24, 2021 (ECF No. 180) ("Stipulation").

Circuit and throughout the country. The requested fee has also been approved by Lead Plaintiffs Northeast Carpenters Annuity Fund ("Northeast Carpenters"), El Paso Firemen & Policemen's Pension Fund ("El Paso"), and the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge ("CPERS") (collectively, "Lead Plaintiffs"), sophisticated institutional investors. *See* Declaration of Ian Ruegg, New Jersey Fund Director of the Northeast Carpenters Annuity Fund ("Northeast Carpenters Decl.") ¶ 10, attached as Exhibit B to the Joint Declaration; Declaration of Tyler C. Grossman, Executive Director of the El Paso Firemen & Policemen's Pension Fund ("El Paso Decl.") ¶ 10, attached as Exhibit C to the Joint Declaration; Declaration of Jeffrey R. Yates, Retirement Administrator of the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge ("CPERS Decl.") ¶ 10, attached as Exhibit D to the Joint Declaration.

This Action settled only after Co-Lead Counsel overcame multiple legal and factual challenges. To do so, Co-Lead Counsel: (1) conducted an extensive investigation of all potential claims that could be asserted against GreenSky, its officers and directors, and its underwriters; (2) filed two amended complaints based on the results of that investigation; (3) opposed Defendants' motions to dismiss through both the submission of extensive briefing and oral argument, resulting in the Court's November 26, 2019 order denying the motions to dismiss except as to Lead Plaintiff CPERS' claims under Section 12(a)(2) of the Securities Act of 1933; (4) negotiated a proposed case management order, protective order, protocol for the production of electronically-stored information ("ESI"), and remote deposition protocol; (5) filed a motion for class certification and negotiated the terms of a proposed order granting class certification; (6) coordinated mailing and publication of notice of pendency of the Action to Class Members; (7) negotiated the scope of Lead Plaintiffs' document production, and reviewed and produced documents to Defendants; (8)

prepared for and defended the depositions of representatives of each of the three Lead Plaintiffs; (9) engaged in negotiations with counsel for Defendants to obtain an agreement on the documents to be produced by Defendants, including the custodians to be searched and the search terms to be used to locate documents; (10) negotiated and reached agreement on certain of Defendants' claims of privilege; (11) conducted extensive non-party discovery, including serving subpoenas on GreenSky's outside auditor, PricewaterhouseCoopers ("PwC"), and FT Partners, an investment banking firm that provided GreenSky with consulting services in connection with the GreenSky IPO; (12) obtained, reviewed, and analyzed over 5.3 million pages of documents produced by Defendants and non-parties; (13) negotiated the number and identities of witnesses to be deposed; (14) prepared for depositions of nine of Defendants' current and former officers and employees and conducted depositions of three prior to the Action settling; (15) consulted with non-testifying experts who assisted Co-Lead Counsel in evaluating damages and loss causation issues; (16) participated in a fulsome mediation process conducted by Robert A. Meyer, Esq., of Judicial Arbitration and Mediation Services ("JAMS"), an experienced and highly-respected mediator,[2] which process was preceded by the exchange of detailed written mediation statements by the Settling Parties; (17) negotiated and drafted appropriate documentation of the Settlement, including a memorandum of understanding ("MOU"), the Stipulation, a motion for preliminary approval of the Settlement, and the Notices to be issued to potential Class Members; and (18) supervised the dissemination of the Notices to Class Members, and prepared final documentation of the Settlement, including the motion papers filed contemporaneously herewith. Joint Decl. ¶ 4.

Moreover, the reaction of the Class to the Settlement and the request for attorneys' fees and expenses has been overwhelmingly positive. Pursuant to the Court's June 11, 2021 Preliminary

---

[2] *See* Declaration of Robert A. Meyer ("Meyer Decl.") ¶¶ 3-5, Ex. A to the Joint Declaration.

Approval Order that preliminarily approved the Settlement and Notice to the Class (ECF No. 187) (the "Preliminary Approval Order"), copies of the Notice have been mailed to 14,318 potential Class Members or their nominees, and the Summary Notice was published in the *Investor's Business Daily*, disseminated on *PR Newswire*, and posted on a dedicated settlement website and on Co-Lead Counsel's website. *See* Joint Decl. Ex. G (Declaration of Alexander Villanova Regarding Mailing of the Notice and Proof of Claim; Publication of the Summary Notice; and Report on Requests for Exclusion Received to Date ("Epiq Decl.")). The Notice advised potential Class Members that Co-Lead Counsel would seek fees of up to 25% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $250,000. *See* Epiq Decl. Ex. A ¶ 6. No objection to Co-Lead Counsel's application for fees and expenses has been filed to date. The deadline for filing such objections is September 28, 2021. Co-Lead Counsel will address any objection received after the filing of this brief in reply papers.

## HISTORY AND BACKGROUND OF THE CASE

In order to avoid undue repetition, the Court is respectfully referred to the Joint Declaration for a detailed description of the factual and procedural history of the litigation, the claims asserted, the extensive investigation conducted, the substantial motion practice and discovery undertaken, and the settlement negotiations, as well as the numerous risks and uncertainties presented in this litigation.

## ARGUMENT

## I.   The Requested Fee Would Be Reasonable Under Either the Percentage or Lodestar Method

The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). Compensating counsel for bringing these actions is

important because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Stanley*, No. 01-cv-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). In this case, the requested fee award—25% of the Settlement Fund, translating to a lodestar "multiplier" of 1.46—is well supported under either the "percentage" or "lodestar" method.

### A.  The Requested Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Second Circuit has approved the percentage method, recognizing that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Goldberger*, 209 F.3d at 48-50 (either percentage of fund method or lodestar method may be used to determine fees, but noting the "lodestar method proved vexing" and results in "inevitable waste of judicial resources"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").

The 25% fee requested by Co-Lead Counsel is well within the range of percentage fees awarded within the Second Circuit in comparable class actions achieving significant recoveries. *See In re Monster Worldwide, Inc. Sec. Litig.*, 07-cv-2237 (JSR), 2008 WL 9019514, at *1-2 (S.D.N.Y. Nov. 25, 2008) (awarding 25% of $47.5 million settlement); *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276 (S.D.N.Y. 2013) (awarding 25% of $19.5 million settlement); *Arkansas Tchr. Ret. Sys. and Fresno Cnty Emps.' Ret. Assoc. v. Bank-rate, Inc.*, No. 1:13-cv-7183 (JSR), slip op. at 2 (S.D.N.Y. Nov. 25, 2014) (awarding 25% of $18 million settlement); *In re Silvercorp Metals, Inc. Sec. Litig.*, No. 12-cv-9456 (JSR), slip. op. at 9 (S.D.N.Y. Feb. 13, 2015) (awarding 25% of $14 million settlement); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394 (S.D.N.Y. 2018) (awarding 25% of $35 million settlement); *In re Salomon Analyst Metromedia Litig.*, No 02-7966, slip op. at 1 (S.D.N.Y. Feb. 27, 2009) (awarding 27% of $35 million settlement); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 1:12-cv-01203-VEC, 2015 WL 13639234 (S.D.N.Y. Oct. 19, 2015) (awarding 30% of $33 million settlement); *In re Celestica Inc. Sec. Litig.*, No. 07-cv-00312, slip op. at 2 (S.D.N.Y. July 28, 2015) (awarding 30% of $30 million settlement); *In re OSG Sec. Litig.*, No. 12-cv-07948, slip op. at 1 (S.D.N.Y. Dec. 2, 2015) (awarding 30% of $31.6 million settlement). Additionally, a recent analysis by NERA Economic Consulting of securities class action settlements found that from 2011 to 2020, the median attorneys' fee award for settlements of between $25 million and $100 million was 25%. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA 2021). In line with these statistics, Judge Gleeson reviewed the fee awards in "large class cases with court-set fees" and concluded that applying a graduated fee schedule, settlements of the same magnitude as the instant Action would receive fees of approximately 30% because courts generally awarded 33% of the first $10 million,

and decreased the marginal percentage of recovery to 30% of the settlement value between $10 million and $50 million. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 443 (E.D.N.Y. 2014).

**B.  The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method**

The Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar. *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50); *see also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

Here, Co-Lead Counsel spent more than 7,093 hours of attorney and other professional staff time litigating the case from inception through August 31, 2021. *See* Joint Decl. ¶ 55. Co-Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional by their current hourly rates, is $4,716,463.50. *Id.* The requested fee of 25% of the Settlement Fund therefore represents a multiplier of 1.46 of the total lodestar. This multiplier is comparable to those regularly awarded in securities class actions and other complex class litigation both within and outside of this District. *See, e.g.*, *Bankrate*, No. 1:13-cv-7183 (JSR), slip op. at 2 (awarding 1.8 multiplier); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347, 353 (S.D.N.Y. 2014) (awarding 25% of $45.9 million settlement, equating to multiplier of 5.2); *Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable); *In re Deutsche Telekom*, *AG Sec. Litig.*, No. 00-cv-9475, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (awarding 25% of $120 million settlement; a 3.96 multiplier); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758 (VM), slip op. at 4 (S.D.N.Y. July 18, 2011) (awarding fee equal to a 4.7 multiplier); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier, "well within the range awarded by courts in this Circuit"); *see also In re Rite Aid Corp.*

*Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding 25% of $126.6 million settlement, a 6.96 multiplier); *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005) (awarding fee equal to a 4.7 multiplier).

Fees representing multiples above a lodestar are awarded to reflect the contingency risk and other relevant enhancement factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors[.]"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar[.]").

Co-Lead Counsel's lodestar is based on counsel's current hourly rates, which are comparable to those in the legal community for similar services by attorneys of reasonably comparable skill, experience, and reputation. Co-Lead Counsel's rates here range from $740 to $1,295 for partners, $675 for of-counsel, $495 to $750 for associates, and $290 to $395 for paralegals. Joint Decl. ¶ 55. The rates for staff attorneys, who focused on document review and deposition preparation, range from $455 to $650.

Here, Co-Lead Counsel carefully and efficiently staffed the Action from the beginning. The result of this staffing by Co-Lead Counsel was that associates and staff attorneys with lower hourly rates performed the bulk of the day-to-day work on the case, as opposed to more expensive partners. Additionally, the staff attorneys assisting Co-Lead Counsel on this matter are skilled attorneys who made meaningful, substantive contributions, beyond solely conducting document

8

review, including preparing deposition and mediation materials. *Id.* ¶ 4, 33–34. For all these reasons, the lodestar "cross-check" supports the reasonableness of the requested fee.

*         *         *

In sum, Co-Lead Counsel's requested fee award is well within the range of what courts regularly award in comparable class actions, whether calculated as a percentage of the fund or in relation to Co-Lead Counsel's lodestar.

### C. The Requested Fee Is Fair and Reasonable When Applying the Second Circuit's Factors

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. As discussed below, these factors and the analyses above demonstrate that Co-Lead Counsel's requested fee is reasonable.

#### 1. The Time and Labor Expended

The substantial time and effort expended by Co-Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Joint Declaration, Co-Lead Counsel, among other things:

- conducted a comprehensive investigation of the claims and potential claims against GreenSky and the other Defendants;

- researched and drafted two detailed amended complaints;

- successfully opposed Defendants' motion to dismiss;

- engaged in rigorous and expedited fact discovery, which included the analysis of more than 5.3 million pages of documents produced by Defendants and non-parties; consultation with experts; three depositions of representatives of Lead Plaintiffs; three fact depositions of key employees of the Underwriter Defendants; and

9

preparation for six additional depositions, including of key officers of GreenSky;

- moved for class certification; and
- engaged in extensive settlement negotiations with Defendants' Counsel, including the exchange of mediation submissions and two all-day mediation sessions.

Joint Decl. ¶¶ 55–56. As noted above and further detailed in the Joint Declaration, Co-Lead Counsel expended more than 7,093 hours prosecuting this Action with a lodestar value of $4,716,463.50. *Id.* ¶ 55. At all times, Co-Lead Counsel took care to staff the matter efficiently and to avoid unnecessary duplication of effort

### 2.  The Magnitude and Complexity of the Action Support the Fee

The magnitude and complexity of the Action also support the requested fee. Courts have long recognized that even garden variety securities class action litigation is "notably difficult and notoriously uncertain." *In re FLAG Telecom*, 2010 WL 4537550, at *27 (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)). Co-Lead Counsel's pre-filing investigation was thorough. Co-Lead Counsel reviewed and analyzed numerous documents filed by GreenSky with the SEC, including the Offering Documents for the Company's IPO; conducted an in-depth investigation of GreenSky's business model; prepared to interview, attempted to contact, and interviewed individuals from a list of former employees of GreenSky that Co-Lead Counsel researched and compiled through its own investigation; and reviewed and analyzed public statements made and distributed by the GreenSky Defendants, including, but not limited to, conference calls, earnings announcements, and wire and press releases. *Id.* ¶ 4, 13–39, 55, 57–58.

The claims in this Action presented multiple complex issues. Prosecuting this Action required obtaining and analyzing a large body of evidence. Co-Lead Counsel's investigation, as described above, provided the basis for detailed factual allegations that GreenSky's management decided to transition out of the solar industry and expand into the elective healthcare market by at

10

least early 2016, well before the Company's May 2018 IPO, and that the GreenSky Defendants'

statements at the time of the IPO were false in light of these contemporaneous facts. *Id.* ¶ 57–58.

Co-Lead Counsel expended substantial time and effort memorializing and then summarizing and

organizing the information obtained from its investigation, as well as aligning first-hand witness

accounts with information disclosed in the Company's SEC filings and press releases, so that Lead

Plaintiffs could allege, among other things, that: (i) following GreenSky's decision to exit the solar

industry, the Company began to aggressively reduce its relationships with solar merchants; (ii) as

a result, the percentage of solar transactions drastically dropped from almost 20% of GreenSky's

total business by volume in 2016, to 4% by the third quarter of 2018; and (iii) given that this

material shift was well underway by the first quarter of 2018—along with the corresponding ma-

terial trend of declining average transaction fees—Defendants were required to include this infor-

mation in the May 2018 Offering Documents, which were issued well after the end of that quarter

and included discussion of, among other things, the decrease in transaction fees earned per dollar

originated, factors contributing to the transaction fee rate, and the Company's expansion into elec-

tive healthcare. *Id.* ¶ 15. In addition, Co-Lead Counsel's analysis of the Offering Documents and

related investigation provided the basis for detailed factual allegations that the Offering Docu-

ments failed to disclose: (i) the outsized role that solar transaction fee rates had played in elevating

GreenSky's overall transaction fee rates and the impact of GreenSky's shifting merchant mix on

its transaction fee revenue model; (ii) the significance of merchant mix to the Company's profita-

bility and EBITDA; and (iii) that risks created by GreenSky's change in strategy, which should

have been disclosed to investors, had already come to fruition. Indeed, Lead Plaintiffs alleged, the

undisclosed risks posed by the expensive and risky decision to shift away from the profitable solar

business were already having a significant, negative impact on GreenSky's average transaction fee rate, profitability, and EBITDA in the months leading up to the IPO. *Id.*

Moreover, the issues of materiality, falsity, loss causation, and damages were, and would continue to be, complex and contentious issues in this Action as is evidenced by the vast differences between the positions taken by the Settling Parties and their respective experts. *Id.* ¶ 57–58.

The magnitude and complexity of the legal issues is further evidenced by the extensive filings already in the record. Defendants filed lengthy, multi-issue motions to dismiss the SAC. Lead Plaintiffs were required to address and refute each of their arguments relating to falsity, materiality, and standing. *Id.* Co-Lead Counsel undertook to create a compelling record in the face of all of these complexities, with a goal of proving Defendants' liability—not a light burden.

### 3. Risks Assumed in Pursuing the Action

Courts within the Second Circuit have long recognized that the risk associated with a case undertaken on a contingency basis is an important factor in determining an appropriate fee award:

> Lead Counsel undertook this Action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute the Action without a guarantee of compensation or even the recovery of expenses. Unlike counsel for Defendants, who is paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began, and would have received no compensation or expenses had this case not been successful.

*City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) (hereinafter "*City of Providence*"). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Tchrs.' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *City of Providence*, 2014 WL 1883494, at *14 (same); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re*

*Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not only the risk of no payment, but also the risk of under-payment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

The risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. As the court in *Xcel Energy*, 364 F. Supp. 2d at 994, recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." Even plaintiffs who survive and succeed at procedural hurdles as contentious and as heavily litigated as motions to dismiss and a motion for class certification—even summary judgment or trial itself—may find their judgment overturned on appeal. *See, e.g.*, *Dukes v. Wal-Mart Stores, Inc.*, 964 F. Supp. 2d 1115 (N.D. Cal. 2013) (class certification granted in part, af-firmed on appeal and rehearing *en banc*, then reversed by U.S. Supreme Court after a decade of litigation, then denied by district court upon resubmission).

Here, Co-Lead Counsel pursued Lead Plaintiffs' claims against Defendants in this complex litigation with no guarantee of ever being compensated for the investment of time and money that the case would require. In undertaking this responsibility, Co-Lead Counsel dedicated substantial attorney and professional resources to the prosecution of the litigation, and paid the considerable expenses which a case such as this entails. Not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. The financial burden

13

on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. As set forth below, Co-Lead Counsel received no compensation and, in total, incurred $200,786.46 in expenses in prosecuting this Action for the benefit of the Class. Co-Lead Counsel also bore the risk that no recovery would be achieved. As discussed herein, this Action presented a number of risks and uncertainties which could have prevented any recovery whatsoever. Despite the vigorous and competent efforts of Co-Lead Counsel, success in contingent-fee litigation, such as this, is never assured.

The Settlement of $27,500,000 (plus interest) provides the Class an immediate and substantial benefit and eliminates the significant risks of continued litigation under circumstances where a favorable outcome could not be assured. "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05-MDL-01695(CM), 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007). Co-Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee. *See In re FLAG Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 4. The Quality of Representation Supports the Requested Fee

The quality of the representation here is evidenced most clearly by the result obtained. *See Goldberger*, 209 F.3d at 55; *In re Veeco Instruments*, 2007 WL 4115808, at *7; *In re Glob. Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Co-Lead Counsel are two firms that specialize in complex securities litigation with successful track records in cases throughout the country. *See* Joint Decl. ¶ 62–63; Ex. E (Cohen Milstein firm resume); Ex. F (Scott + Scott

14

firm resume). The quality of Co-Lead Counsel's efforts in the litigation to date, together with their substantial experience in securities class actions and their commitment to the litigation, provided Co-Lead Counsel with the ability to negotiate the $27,500,000 Settlement. *See Tchrs.' Ret. Sys. of La.*, 2004 WL 1087261, at *6 (the skill and prior experience of counsel in the field is relevant to determining fair compensation).

Moreover, the quality of the opposition faced by Co-Lead Counsel should also be taken into consideration in assessing the quality of counsel's performance.[3] Here, Defendants in this Action were represented by very skilled counsel. The GreenSky Defendants and the Underwriter Defendants were represented by three highly respected firms, each of which has significant experience in defending complex litigation in general and securities litigation in particular, namely Cravath, Swaine & Moore LLP, Susman Godfrey LLP, and Willkie Farr & Gallagher LLP. In the face of this capable defense team, Co-Lead Counsel was nonetheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that are favorable to the Class. *See* Joint Decl. ¶ 63.

### 5. Second Circuit Precedent Supports the 25% Fee as a Reasonable Percentage of the Total Recovery

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *In re Comverse Tech. Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL

---

[3] *See, e.g.*, *In re Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *In re Veeco Instruments*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work.") (citation omitted).

2653354, at *3 (E.D.N.Y. June 24, 2010) (citation omitted). As discussed in detail in Part I.A. above, the requested 25% fee is well within the range of percentage fees that courts in this District have awarded in comparable cases.

### 6. Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. *See In re FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Co-Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *see also Maley*,186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citation omitted). This is particularly true here where Co-Lead Counsel had undertaken significant and risky work. Nevertheless, Co-Lead Counsel has obtained a $27,500,000 all-cash Settlement Fund that will compensate investors who have purchased GreenSky Class A common stock pursuant and/or traceable to GreenSky's IPO. This factor supports Co-Lead Counsel's fee and expense application.

### D. The Approval of Lead Plaintiffs, as Well as the Reaction of the Class to Date, Support the Requested Fee

Lead Plaintiffs were actively involved in the prosecution and settlement of this Action and fully support the requested fee. *See* Northeast Carpenters Decl. ¶¶ 6, 10; El Paso Decl. ¶¶ 6, 10; CPERS Decl. ¶¶ 6, 10. Lead Plaintiffs are the type of sophisticated and financially interested institutional investor that Congress envisioned serving as a fiduciary for the Class when it enacted

the PSLRA.[4] Thus, their endorsement of the fee request supports its approval as fair and reasonable. *See, e.g.*, *In re Veeco Instruments*, 2007 WL 4115808, at *8 ("public policy considerations support the award in this case because the Lead Plaintiff …– a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

The reaction of the Class to date also supports the requested fee. As of today, the Claims Administrator has mailed 14,318 copies of the Notice Packet to potential Class Members (Epiq Decl. ¶ 10), which informed them, among other things, that Co-Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund. Epiq Decl. Ex. A ¶ 6. To date, no objection to this fee request has been received. Joint Decl. ¶ 65.

## II. Co-Lead Counsel's Expenses Are Reasonable and Should Be Approved

Co-Lead Counsel requests reimbursement of Litigation Expenses reasonably incurred on behalf of the Class that are properly recovered by counsel. *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895(DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'") (citation omitted). Co-Lead Counsel incurred $200,786.46 in Litigation Expenses. The

---

[4] The PSLRA was intended to encourage institutional investors like Lead Plaintiffs to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731. Congress believed that these institutions would be in the best position to monitor the prosecution and to assess the reasonableness of counsel's fee requests.

expenses for which Co-Lead Counsel seeks reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.[5] The Notice informed potential Class Members that Co-Lead Counsel would apply for reimbursement of expenses in an amount not to exceed $250,000. Epiq Decl. Ex. A ¶ 6. To date, there has been no objection to the reimbursement request, and reimbursement should be approved. Joint Decl. ¶ 71.

## III. Lead Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. § 77z-1(a)(4)

Lead Plaintiffs also seek approval for reimbursement of $16,092.70 in costs and expenses incurred by them directly relating to their representation of the Class. In particular, Northeast Carpenters requests $4,103.20 (Northeast Carpenters Decl. ¶ 13); El Paso requests $1,891.76 (El Paso Decl. ¶ 13); and CPERS requests $10,097.74 (CPERS Decl. ¶ 13). The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 77z-1(a)(4). Numerous courts have approved such awards under the PSLRA to compensate class representatives for the time and effort they spent on behalf of the class, and the Second Circuit has affirmed a district court's award of costs to representative plaintiffs totaling over $453,000. *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*, 772 F.3d 125, 133 (2d Cir. 2014) (affirming district court's award of costs totaling over $453,000 to representative plaintiffs); *City of Roseville Emps.' Ret. Sys. v. Energy Sols., Inc.*, No. 1:09-cv-08633-JGK (S.D.N.Y. Mar. 14, 2013) (Dkt. No. 112) (awarding three Lead Plaintiffs expenses in the amounts of $2,168.15, $2,525.00, and $1,750.00); *In re Direxion Shares ETF Trust*, No. 09-cv-

---

[5] These expenses include, among others, expert fees, document management/litigation support, computerized research, mediation costs, travel expenses, photocopying, telephone and facsimile charges, postage and delivery expenses, and filing fees. *See* Joint Decl. ¶ 72.

8011-KBF (S.D.N.Y. May 10, 2013) (Dkt. No. 201) (awarding Lead Plaintiffs costs totaling $27,600); *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-02237 (JSR), 2008 WL 9019514, at *2 (S.D.N.Y. Nov. 25, 2008) (awarding class representative costs totaling $7,303.08).

As set forth in the Northeast Carpenters, El Paso, and CPERS Declarations, Lead Plaintiffs took an active role in supervising the prosecution of the Action, including (i) regularly communicating with Co-Lead Counsel regarding the posture and progress of the Action; (ii) reviewing and/or discussing all significant pleadings and motions filed in the Action; (iii) giving extensive deposition testimony; (iv) searching for, reviewing, and producing documents requested by Defendants; (v) reviewing and/or discussing significant decisions in the Action, including the decisions to mediate and settle the case; and (vi) actively participating in the mediation that led to the Settlement. Northeast Carpenters Decl. ¶ 6; El Paso Decl. ¶ 6; CPERS Decl. ¶ 6. Pursuant to the PSLRA, Lead Plaintiffs request $16,092.70 based on the value of the 142.75 hours that Lead Plaintiffs expended participating in and managing this litigation on behalf of the Class. These are precisely the types of activities that courts have found support awards to class representatives.[6] The Notice sufficiently informed potential Class Members that such expenses would be sought and included among Co-Lead Counsel's Litigation Expenses. Epiq Decl. Ex. A ¶ 6; *see also In re Bank of Am.*, 772 F.3d at 132-33 (affirming district court's holding of sufficient notice, finding that

---

[6] *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141(DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to institutional lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"); *In re FLAG Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to lead plaintiffs for time spent on the litigation); *In re Veeco Instruments*, 2007 WL 4115808, at *12 (characterizing such awards as "routine[]" in this Circuit) (citation omitted); *see also In re Xcel*, 364 F. Supp. 2d at 1000 (awarding $100,000 collectively to lead plaintiffs who "fully discharged their PSLRA obligations and have been actively involved throughout the litigation [including] … communicat[ing] with counsel … [and] review[ing] counsels' submissions").

comparable notice "unequivocally conveys the relevant information to the respective class members"). No member of the Class has voiced any objection to the request for costs.

## CONCLUSION

For the foregoing reasons, Co-Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the Settlement Fund, $200,786.46 in reimbursement for the reasonable Litigation Expenses Co-Lead Counsel incurred in connection with the prosecution of the claims on behalf of the Class, and $16,092.70 in reimbursement for the reasonable costs and expenses Lead Plaintiffs incurred directly related to the prosecution of this Action.

Dated: September 14, 2021                    Respectfully submitted,

                                             /s/ Steven J. Toll

                                             COHEN MILSTEIN SELLERS & TOLL PLLC
                                             Steven J. Toll (admitted *pro hac vice*)
                                             S. Douglas Bunch (SB-3028)
                                             Jan Messerschmidt (admitted *pro hac vice*)
                                             1100 New York Avenue, N.W. │ Fifth Floor
                                             Washington, D.C. 20005
                                             Tel.: (202) 408-4600
                                             Fax: (202) 408-4699
                                             stoll@cohenmilstein.com
                                             dbunch@cohenmilstein.com
                                             jmesserschmidt@cohenmilstein.com

                                             Jessica (Ji Eun) Kim (5326129)
                                             88 Pine Street │ 14th Floor
                                             New York, NY 10005
                                             Tel.: (212) 838-7797
                                             Fax: (212) 838-7745
                                             jekim@cohenmilstein.com

                                             Manuel J. Dominguez (admitted *pro hac vice*)
                                             2925 PGA Boulevard, Suite 200
                                             Palm Beach Gardens, FL 33410
                                             Tel.: (561) 515-1400
                                             Fax: (561) 515-1401
                                             jdominguez@cohenmilstein.com

                                             SCOTT + SCOTT ATTORNEYS AT LAW LLP
                                             Max Schwartz (MS-2517)
                                             Tom Laughlin (TL-8888)
                                             230 Park Avenue, 17th Floor
                                             New York, NY 10169
                                             Tel.: (212) 223-6444
                                             Fax: (212) 223-6334
                                             mschwartz@scott-scott.com
                                             tlaughlin@scott-scott.com

                                             *Attorneys for Lead Plaintiffs Northeast Carpenters Annuity Fund, El Paso Firemen & Policemen's Pension Fund, and the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge*

21